IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CYNTHIA F. TONEY, A/K/A
CYNTHIA F. PASSMORE,

        PLAINTIFF,

v.

MEDICAL DATA SYSTEMS, INC.
d/b/a MEDICAL REVENUE
SERVICES, INC.,

        DEFENDANT

CASE NO. 2:06-cv-949

## DEFENDANT'S MOTION TO STAY PROCEEDINGS

Defendant Medical Data Systems, Inc. ("MDS") respectfully moves this Court to grant this Motion to Stay Proceedings in *Toney v. Medical Data Systems, Inc.*, case number 2:06-cv-00949, pending the timely resolution of similar issues involved in a previously-filed case currently pending on appeal to the U.S. District Court for the Middle District of Alabama before the Honorable Harold Albritton, which may affect the resolution of this case. Additionally, MDS requests this Stay because MDS was forced to hire new counsel in this matter on July 17, 2007 due to former counsel's inattention to, inaction in, and mismanagement of this matter, which only recently became known to MDS. In further support of this Motion, MDS shows this Court the following:

I.    **A substantially similar matter is currently on appeal to the District Court**

1.   The issues in this case are substantially similar to a previously filed case currently on appeal from the United States Bankruptcy Court for the Middle District of Alabama to the United States District Court for the Middle District of Alabama, *Cambron v. Medical Data Systems, Inc.*, case numbers 1:07-cv-369 and 1:07-cv-370. This case raises similar

arguments and claims under the Fair Debt Collection Practices Act as those in *Cambron*.
This case involves the same allegedly improper debt collection letter sent by MDS to the
plaintiff in *Cambron*.

2.  *Cambron* began in the United States Bankruptcy Court and was tried to conclusion before
the Honorable William R. Sawyer on March 15, 2007. Opposing counsel filed *Cambron*
first in time among all of the related pending cases that involve similar issues, including
the instant litigation.

3.  At the trial level, Bankruptcy Judge William R. Sawyer issued proposed findings of fact
and conclusions of law that favored Plaintiff.

4.  MDS filed timely objections to Judge Sawyer's proposed findings of fact and conclusions
of law pursuant to Rule 9033 of the Federal Rules of Bankruptcy Procedure. Full copies
of Judge William's Proposed Report and Recommendations as well as MDS's Objections
and Plaintiff's Responses thereto, as filed in *Cambron* and currently pending before
Judge Albritton in the United States District Court for the Middle District of Alabama,
are attached as Exhibit A.

5.  As a result, *Cambron* is currently under *de novo* review before the Honorable Harold
Albritton in the United States District Court for the Middle District of Alabama.

6.  Given the similarity of the legal issues involved in *Cambron* and this matter, a decision in
*Cambron* by Judge Albritton will provide significant information and direction to the
parties and will likely affect the chances of settlement in this matter and the other related
matters.

7.  Additionally, a stay is appropriate in this matter for the following four reasons: (A) there
is a tangible risk of inconsistent judgments; (B) failure to stay this matter pending a

- 2 -

decision in *Cambron* will waste judicial resources if inconsistent decisions are rendered; (C) staying this matter will increase the ability of the parties to seriously consider whether settlement is appropriate in all the remaining, related cases, including this matter; and (D) not only will MDS suffer great prejudice if this matter is not stayed, but also a stay will not prejudice Plaintiff.

**A.      This Stay is appropriate given the real risk of inconsistent judgments**

8.   In considering whether to grant a stay, the general guiding principle is to avoid duplicate litigation. *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551 (11th Cir. 1986) (explaining the rationale for this principle is to conserve judicial resources and comprehensively dispose of cases).

9.   Presently, there is a very real risk of inconsistent judgments in these matters unless this matter is stayed pending the outcome in *Cambron*.  While these cases are not absolutely dependent on one another, their similarities will inevitably cause additional appeals in the event of inconsistent judgments.  Valuable judicial resources and time could be conserved by staying this action pending the outcome in *Cambron*.

**B.      This Stay is appropriate to prevent a waste of judicial resources by preventing the rendering of inconsistent decisions**

10.  Another risk present if this matter is not stayed is that if *Cambron* is inconsistent with any resolution of this matter, additional judicial resources will be expended trying to resolve such judgments, a result which can be completely avoided by issuing a stay pending a decision in *Cambron.*

11.  Significantly, Judge Williams of the Bankruptcy Court for the Middle District of Alabama previously issued a stay in all of the cases pending before him that involve related legal issues to this litigation and *Cambron* pending the resolution of *Cambron,*

because Judge Williams recognized the risk of inconsistent judgments may lead to waste of judicial resources.

C.    **Staying this matter will increase the ability of the parties to seriously consider whether settlement is appropriate in all the remaining, related cases, including this matter, pending *Cambron's* outcome**

12. Judge Williams, in staying all related matters pending in his court, recognized the significant possibility of future resolution of these matters without litigation by waiting until after *Cambron* is finally resolved.

13. Given the state of the *Cambron* appeal and the magnitude of pending, related cases, this litigation is not easily resolved at this point in time.

14. Depending on the outcome in *Cambron*, and the timeliness thereof, mediation may become helpful in resolving all of the pending cases against MDS, including this litigation. (See Exhibit A, Settlement Report, attached as Exhibit C, ¶ 12).   The likelihood of settlement may dramatically increase if this Motion to Stay Proceedings is granted, thereby staying further action in this matter pending the outcome in *Cambron*.

D.    **MDS will suffer great prejudice if this matter is not stayed and to date, no extensions have been requested or granted to MDS in this matter**

15. Given the unique and specific circumstances involved here, including the inattention to and inaction in this matter by MDS's former counsel, the recent retention of new counsel, the fact that the Bankruptcy Court stayed all related actions pending before it, and new counsel's immediate need to become educated in not only this case, but more than twenty other cases related to the *Cambron* matter that are also in a similar state of disarray due to the lack of action by former counsel, there is a great risk of prejudice against MDS if this Motion to Stay is not granted.

- 4 -

16. Also, considering that opposing counsel is also serving as counsel in the 24 additional

cases, opposing counsel should not be permitted to take advantage of former counsel's

lack of action in this matter in order to force settlement or otherwise gain an advantage

over MDS's newly-retained counsel. MDS should not be doomed to failure because of

former counsel's conduct.

## II.    MDS was forced to hire new counsel in this matter due to prior counsel's failure to attend to this matter

17. MDS retained Paul, Hastings, Janofsky & Walker LLP as lead counsel in this matter on

July 17, 2007. On July 18, 2007, Paul Hastings hired Christian & Small LLP as local

counsel in Alabama to assist with this matter. Local counsel has filed a notice of

appearance in this matter and will continue to assist Paul Hastings until it can seek pro

hac vice admission in this matter from this Court.

18. On July 19, 2007, MDS, through Paul Hastings, conveyed to previous lead counsel in this

matter, Russel McGill ("Mr. McGill"), that he was to immediately withdraw from this

case and would no longer be representing MDS due to his failure to attend to this matter

and others. Mr. McGill agreed to withdraw.

19. Specifically, in the past week, MDS became aware of Mr. McGill's failure in this case,

and others, to comply with various court orders, respond to discovery requests, respond to

Plaintiff's motions, or to take other action on behalf of MDS.

20. Mr. McGill was counsel of record in numerous bankruptcy cases that are related to this

matter and *Cambron.* The additional actions are currently pending in the United States

Bankruptcy Court for the Middle District of Alabama and the United States District Court

for the Middle District of Alabama. Until July 19, 2007, Mr. McGill was lead counsel in

all of these cases. A list of most of the docket numbers pertaining to these additional

cases is attached as Exhibit B.

21. Mr. McGill's conduct should not be imputed to MDS, especially considering once

revealed, MDS immediately retained new counsel and requested that Mr. McGill

withdraw from this case and all other cases he was handling for MDS in Alabama.

22. MDS's forced and immediate retention of new counsel supports granting this Motion to

Stay Proceedings.

23. Furthermore, MDS directs this Court's attention to the fact that not one extension has

been requested or granted thus far in this case.

24. For all of the foregoing reasons, the Motion to Stay Proceedings should be granted.


Respectfully submitted this  $\underline{2\,4}$  day of July, 2007.


James C. Huckaby, Jr.
J. Kirkman Garrett
*Local Counsel for Defendant Medical Data Systems, Inc.*


OF COUNSEL:

CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203
Telephone:(205) 795-6588
Facsimile: (205) 328-7234

    -- AND --

John G. Parker
Georgia Bar No. 562425
Stefanie H. Jackman
Georgia Bar No. 335652
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
600 Peachtree Street, N.E.
Suite 2400
Atlanta, Georgia 30308-2222
Tel. (404) 815-2400
Fax (404) 815-2424

## CERTIFICATE OF SERVICE

I hereby certify that on this 2-4 day of July, 2007, I electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Michael D. Brock, Esq.
Gary Wyatt Stout, Esq.
Walter Allen Blakeney, Esq.
David Gerald Poston, Esq.
BROCK & STOUT
PO Drawer 311167
Enterprise, AL 36331-1167
brockstout@enter.twcbc.com
walter@circlecitylaw.com
david@circlecitylaw.com

OF COUNSEL

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                                    Case No. 05-11879
                                                         Chapter 7
JAMES R. CAMBRON and
WENDY L. CAMBRON,

        Debtors.


WILLIAM C. CARN, III,                                    Adv. Pro. 06-1057 ✓
BANKRUPTCY TRUSTEE,

        Plaintiff,

    v.

MEDICAL DATA SYSTEMS, INC.,

        Defendant.


WILLIAM C. CARN, III,                                    Adv. Pro. 06-1058
BANKRUPTCY TRUSTEE,

        Plaintiff,

    v.

MEDICAL DATA SYSTEMS, INC.,

        Defendant .


**REPORT AND RECOMMENDATION OF THE UNITED STATES**
**BANKRUPTCY JUDGE WILLIAM R. SAWYER**

    These consolidated Adversary Proceedings came before the Court for trial on March 15,

2007. Plaintiff William C. Carn, III, the Trustee in bankruptcy, was present by counsel David G.

Poston and Michael Brock. Defendant Medical Data Systems, Inc., was present by its Chief

Operating Officer Gary Ball and by counsel Russell McGill. The parties have filed briefs which

the undersigned has found helpful. (Adv. Pro. No. 06-1057, Docs. 30, 32). The Court heard

evidence and the arguments of counsel and took the matter under advisement.

## I. PROPOSED FINDINGS OF FACT

On April 19, 2005, Medical Revenue Services, a unit of Defendant Medical Data

Systems, Inc., wrote James R. Cambron a letter demanding payment of medical bills totaling

$1,875.59. (Pl.'s Ex. A).[1]  Two of the five individual debts allegedly owed were for services

rendered at Flowers Hospital in March of 1997, more than eight years prior to the date of the

letter. This is significant in that the statute of limitations to collect an unsecured debt in

Alabama is only six years. Thus, of the $1,875.59 allegedly owed, $1,694.23 was uncollectible

because the statute of limitations had expired.

On May 24, 2005, Medical Revenue Services wrote Wendy L. Cambron an almost

identical collection letter as that sent to James Cambron. The letter addressed to Wendy

Cambron demanded payment of a $175.00 medical bill. (Pl.'s Ex. B). The debt was for services

allegedly rendered at Flowers Hospital on August 27, 2003.

Both letters contained the same opening paragraph. The first paragraph states as follows:

> Medical Revenue Service is a collection agency, retained to represent
> the below named creditor.  Since you have failed to pay this
> obligation in full, we now must determine your ability to repay this
> debt. The information we may be seeking, if available, to determine
> what further collection effort to take is:
>
> 1.) Real estate ownership/equity      4.) Your source of income
> 2.) Personal property assets          5.) Automobile ownership
> 3.) Savings, checking balances        6.) Verification of employment

---

[1]  The full text of the letters are provided in an Appendix to this Memorandum.

(Pl.'s Exs. A, B).

The Plaintiff contends that this communication is misleading in that it implies that

nonpayment of the bill will result in the seizure of property or garnishment of wages. As the

creditor had not obtained judgment on the debts in question, and as the debts were unsecured

obligations, the creditor had no immediate right to take any action with respect to the Cambrons'

wages or property. Indeed, about 90% of the amount allegedly owed was more than six years

old and therefore, uncollectible as a matter of law. With respect to the 10% of the debt which

was not stale, the evidence showed that Medical Data had no intention to take that action.

Indeed, the evidence is clear that it was the intention of Medical Data to attempt to make

telephonic contact with the Cambrons and press them to pay these debts. If those efforts were

unsuccessful, the debt was referred back to the original creditor, which in this case was Flowers

Hospital.

Medical Data has its principal office in Sebring, Florida, and describes itself as a

"secondary" debt collector. That is, it does not receive referrals of debts until collection has first

been attempted by another agency. Its efforts to collect debts appear to consist of two things.

First, it sends a letter and then it follows up with telephone calls. Gary Ball, Medical Data's

Chief Operating Officer, testified that they would not send the letters unless it was required by

the Fair Debt Collection Practices Act, as he feels that the most effective means of collecting

debts is by way of the telephone.

In response to questions about collecting a debt after expiration of the statute of

limitations, Ball testified that he felt that the debtors have a moral obligation to repay a debt

which survives the statute of limitations. Ball does not believe that he has any obligation to

-3-

disclose the fact that the debts he is attempting to collect are beyond the statute of limitations. Nor apparently, does he believe that he must tell debtors that he may not seize their property until after he takes judgment, an action he has no intention to take.

The question of whether the first paragraph of the letters in question is deceptive is a close one. There is nothing in the letters that is demonstrably false. Ball's claim that information on the debtors' wages and property is needed to evaluate further collection efforts is not, in and of itself, wholly implausible. However, there are several troublesome facts here. Medical Data did not order credit reports or consult property records, state motor vehicle records, or other sources which would have provided the same information. In the experience of the undersigned, financially stressed individuals frequently do not voluntarily provide such information unless legally obligated to do so. Moreover, when such information is provided by an uncounseled debtor, the information is frequently incomplete or inaccurate. Ball testified that Medical Data mails approximately 1.8 million such letters each year. However, Medical Data provided no evidence as to how often debtors respond to such letters with accurate information. Given the evidence adduced at trial, it strains credibility to believe that the true purpose of the language in question is to obtain accurate information on a debtors' assets and wages. Rather, it appears that the purpose, and surely the effect of these letters, is to coerce payment by giving a false impression that the debtors' wages and assets are in jeopardy.

-4-

## II. PROPOSED CONCLUSIONS OF LAW

### *A. Procedural Setting*

This is an action under the Fair Debt Collection Practices Act. 15 U.S.C. § 1692k. The

Plaintiff seeks damages in the amount of $1,000.00 in each Adversary Proceeding, plus

attorney's fees and costs. 15 U.S.C. § 1692k(a).

James R. Cambron and Wendy L. Cambron filed a joint petition in bankruptcy pursuant

to Chapter 7 of the Bankruptcy Code on September 8, 2005. (Case No. 05-11879, Doc. 1). The

claims of James and Wendy Cambron are property of their bankruptcy estates. 11 U.S.C. § 541.

As these claims are property of the estate, this Court has jurisdiction to hear these Adversary

Proceedings pursuant to 28 U.S.C. § 1334. These claims are "related to" the Cambrons'

bankruptcy filing. William C. Carn, III, the Chapter 7 Trustee, has been substituted as named

Plaintiff for James and Wendy Cambron.[2]

In general terms, an action is a core proceeding if it is one that could not be brought but

for the existence of a bankruptcy case. 28 U.S.C. § 157(b); <u>see also</u>, <u>The Whiting-Turner</u>

<u>Contracting Co. V. Electric Machinery Enterprises, Inc. (In re Electric Machinery Enterprises,</u>

<u>Inc.)</u>, __ F.3d __ , 2007 WL 548781 (11th Cir. Feb. 23, 2007) (holding that a proceeding is core

"if the proceeding is one that would arise only in bankruptcy"). As these Fair Debt Collection

Practices Act claims do not depend on a bankruptcy filing for their existence, these are not core

proceedings. As these are non-core proceedings, the undersigned Bankruptcy Judge makes

---

[2] The Court conditionally dismissed Adversary Proceeding No.06-1057 on the grounds
that it had not been brought by the proper party in interest. (06-1057, Docs. 9, 10). In response,
the Chapter 7 Trustee William C. Carn, III, entered the case as Plaintiff. (06-1057, Doc. 11). As
the same reasoning applies to Adversary Proceeding No. 06-1058, Trustee Carn is likewise
substituted as named Plaintiff in Adversary Proceeding No. 06-1058.

proposed findings of fact and conclusions of law in accordance with the provisions of 28 U.S.C.

§ 157(c)(1) and directs the Clerk of the Bankruptcy Court to file the same with the District

Court. By way of a separate order, a schedule for the filing of objections pursuant to Rule 9033,

FED. R. BANKR. P. is established.

### B. FDCPA Claims

The Plaintiff makes claims under both 15 U.S.C. § 1692e(5) and (10). While the same

set of facts support each claim, the undersigned with analyze the claims separately. Although

the Court concludes that the Plaintiff has established both claims, it will discuss the e(10) claim

first because, in its view, it is the stronger claim.

### 1. The § 1692e(10) Claim[3]

Congress has determined that "there is abundant evidence of the use of abusive,

deception, and unfair debt collection practices by many debt collectors. Abusive debt collection

practices contribute to the number of personal bankruptcies, to marital instability, of the loss of

jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress further stated that

"it is the purpose of this subchapter to eliminate abusive debt collection practices by debt

collectors." 15 U.S.C. § 1692(e). In furtherance of this purpose, Congress enacted the "Fair

Debt Collection Practices Act," which provides, in part, as follows:

---

[3] For purposes of clarity, the claims made pursuant to 11 U.S.C. § 1692e(10) will be
referred to as the e(10) claims, and the claims made pursuant to 11 U.S.C. § 1692e(5) will be
referred to as the e(5) claims. The e(5) claims are considered in Part II(B)(2) below.

> A debt collector may not use any false, deception, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

The issue here is whether the letters in question are deceptive. The United States Court of Appeals for the Eleventh Circuit has held that courts making this determination should use the "least sophisticated consumer" standard. Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985).

> That law was not "made for the protection of experts, but for the public--that vast multitude which includes the ignorant, the unthinking and the credulous," and the "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."

Id. at 1172-73 (internal citations omitted); see also, Kimber v. Fed. Financial Corp., 668 F.Supp. 1480, 1487-89 (M.D. Ala. 1987) (Thompson, J.) (holding that bringing suit to collect a debt barred by the statute of limitations was deceptive within the meaning of the Fair Debt Collection Practices Act); Thompson v. D.A.N. Joint Venture III, L.P., 2007 WL 496754 (M.D. Ala. Feb. 13, 2007) (Moorer, Mag. J.) (to same effect).

The Plaintiff argues that the language in question is deceptive because it falsely implies that the debtors' assets and wages may be in jeopardy. They argue that the purpose of this language is to unlawfully coerce payment. Gary Ball testified that the purpose of this language

was to attempt to obtain information on the debtors, reasoning that debtors who are employed and have assets are more likely to pay their debts. The undersigned finds that the language in question is deceptive and that the explanation advanced by Medical Data is unconvincing. An unsophisticated consumer would be deceived by the language in the letters.

A debtor with competent counsel would know that a debt is uncollectible if the statute of limitations has run. A counseled debtor would also know that the holder of an unsecured claim may not seize property until judgment has been taken in a court of law. Thus, the ambiguity in the first paragraph of the collection letters would cause no harm to a properly counseled debtor. However, the law is clear that the Court, in determining whether a given communication is misleading, for purposes of an e(10) claim, must apply the "least sophisticated consumer" standard. Applying that standard here, the Court finds that the communication from Medical Data is misleading. An unsophisticated consumer would conclude that his wages and property are in jeopardy and for that reason, would be coerced into paying the debt in violation of the Fair Debt Collection Practices Act.

Medical Data advanced an argument that the language in question is not deceptive. Ball testified that the information as to wages and property is useful to Medical Data in its determination as to what further action to take. If a debtor has a job and property, he is more likely to pay the debt and for that reason should be further pressed to pay. This reasoning is circular. A debtor without income and without property would not feel coerced to pay as he has nothing to lose. Indeed, it is only those debtors with jobs and property who Medical Data would seek to mislead.

-8-

The Plaintiff argues that Medical Data's claim–that they need the information for their collection purposes–is without merit. Ball admitted that they had not consulted credit reports or property records, nor had they consulted any other records which might have provided the information requested in the first paragraph of the letter in question. That Medical Data had not taken any such action suggests that their claim is a pretext and that their true purpose was to unlawfully coerce payment.

### 2. The § 1692e(5) Claim

Plaintiff also alleges a violation of 15 U.S.C. § 1692e(5), which prohibits a debt collector from threatening to take action which cannot legally be taken. As the letters in question do not, strictly speaking, threaten anything, there is no express violation of this provision. However, the overarching problem here is one of deception and not of express threats to take action. For this reason, the undersigned is of the view that the claims are better considered under e(10) than under e(5). It should also be noted that the Eleventh Circuit does not apply the "least sophisticated consumer" standard to e(10) claims and for this reason, the Plaintiff's burden is somewhat heavier for an e(5) claim than is the case for an e(10) claim.

While the undersigned is of the view that the Plaintiff's claims here are best cast in terms of e(10), the question remains whether the Plaintiff has also made out a claim under e(5). There is case law for the proposition that deceptive language in a collection letter which suggests that such action will be taken may constitute such a violation. Mailloux v. Arrow Financial Services, LLC, 204 F.R.D. 38, 41-42 (E.D.N.Y. 2001) (certifying class status where a collection letter deceptively implied that collection action which could not lawfully be taken would be taken and finding a violation of § 1692e(5)). The facts in Mailloux are similar to the facts here in that the

-9-

letter inquired into the debtor's income, checking account balances, employment, real estate ownership, and automobile ownership. The court in <u>Mailloux</u> found that letter, which was very similar to the letters here, to be in violation of e(5). Therefore, the undersigned concludes, in the alternative, that the evidence establishes a violation of § 1692e(5), as well as a violation of e(10).

### C. Damages

Having found violations of the Fair Debt Collection Practices Act, the Court should next consider an award of damages. As the Plaintiff does not request actual damages, none are awarded. <u>See</u> 15 U.S.C. § 1692k(a)(1) (allowing an award of actual damages). In addition, the Court may award "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). Having heard the evidence and having considered the arguments of counsel, the Court is of the view that an award of damages in the amount of $1,000.00 for each claim is appropriate, for a total of $2,000.00. In other words, the claim originally held by James Cambron and the claim originally held by Wendy Cambron are allowed separately. It further appears that an award of attorney's fees is appropriate. <u>See</u> 15 U.S.C. § 1692k(a)(3).

### III. CONCLUSION

Having considered the evidence, the undersigned finds that the language in question in the letters, applying the least sophisticated consumer standard, is deceptive within the meaning of § 1692e(10). The effect of the subject language is to create apprehension that the debtors' assets and wages are in jeopardy and thereby unlawfully coerce payment of a debt. It is recommended that judgment be entered in favor of the Plaintiff in the amount of $1,000.00 each for each of two claims, for a total of $2,000.00  In addition, it is further recommended that

-10-

Plaintiff be awarded attorney's fees.  The undersigned will order Plaintiff's counsel to file an

Affidavit in support of their claim for attorney's fees within 15 days.  Defendant will be given 15

days to respond.


    Done this the 5th day of April, 2007.


                                        /s/ William R. Sawyer
                                        United States Bankruptcy Judge

**Medical Revenue Services**
P.O. Box 1149
Sebring FL 33871

| Reference | Total Amount Due |
|-----------|------------------|
| F9708100109 | $1874.59 |

Toll Free Number
(800) 315-6050



CHECK CARD USING FOR PAYMENT

☐ MasterCard  ☐ VISA  ☐ DISCOVER

CARD NUMBER

AMOUNT                    EXP. DATE

SIGNATURE

**RETURN SERVICE REQUESTED**
04/19/2005

med9øxAł2ĐP0Ał07KE·0ł4004
JAMES R CAMBRON
PO BOX 464
DALEVILLE AL 36322-0464

MAKE CHECK PAYABLE AND REMIT TO:

Medical Revenue Services
PO BOX 1149
SEBRING FL 33871-1149

Page 1 of 1

CHECK HERE IF ADDRESS OR INSURANCE INFORMATION IS
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE

▼ DETACH HERE ▼ AND RETURN TOP PORTION WITH YOUR PAYMENT

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:

1.) Real estate ownership/equity
2.) Personal property assets
3.) Savings, checking balances
4.) Your source of income
5.) Automobile ownership
6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to your account, include the reference number with your payment. We also accept "check by telephone" for your convenience. If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb

| Account # | Client Name | Service Date | Balance | Patient Name |
|-----------|-------------|--------------|---------|--------------|
| F9708500163 | Flowers Hospital | 03/26/1997 | 307.68 | Lehr, Timmy J |
| F9708100109 | Flowers Hospital | 03/22/1997 | 1388.55 | Lehr, Timmy J |
| F0307000545 | Flowers Hospital | 03/13/2003 | 58.77 | Cambron, James R |
| F0402500112 | Flowers Hospital | 01/25/2004 | 55.74 | Cambron, James R |
| F0402400129 | Flowers Hospital | 01/24/2004 | 65.85 | Cambron, James R |

TOTAL BALANCE: $1874.59



PLAINTIFF'S
EXHIBIT
4

PL1

**Medical Revenue Services**
P.O. Box 1149
Sebring FL 33871

| Reference | Total Amount Due |
|---|---|
| F0323900637 | $175.00 |

Toll Free Number
(800) 315-6050

RETURN SERVICE REQUESTED
05/24/2005

| CHECK CARD USING FOR PAYMENT |
|---|
| CARD NUMBER |
| AMOUNT | EXP. DATE |
| SIGNATURE |

wadPaxA13OXCA1ODJV·00773b

WENDY L CAMBRON
PO BOX 464
DALEVILLE AL 36322-0464

MAKE CHECK PAYABLE AND REMIT TO:

Medical Revenue Services
PO BOX 1149
SEBRING FL 33871-1149



I..II.II...II..I.I.II.I.II..I.I.II..I.I.II.I..I

CHECK HERE IF ADDRESS OR INSURANCE INFORMATION IS
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE

Page 1 of 1
▼ DETACH HERE ▼ AND RETURN TOP PORTION WITH YOUR PAYMENT

---

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:

1.) Real estate ownership/equity        4.) Your source of income
2.) Personal property assets            5.) Automobile ownership
3.) Savings, checking balances          6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to your account, include the reference number with your payment. We also accept "check by telephone" for your convenience. If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb

---

| Account # | Client Name | Service Date | Balance | Patient Name |
|---|---|---|---|---|
| F0323900637 | Flowers Hospital | 08/27/2003 | 175.00 | Cambron, Wendy L |

TOTAL BALANCE: $175.00



PLAINTIFF'S
EXHIBIT
B

PL1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                          Case No. 05-11879
                                               Chapter 7
JAMES R. CAMBRON and
WENDY L. CAMBRON,

      Debtors.

WILLIAM C. CARN, III,                          Adv. Pro. 06-1057 ✓
BANKRUPTCY TRUSTEE,

      Plaintiff,

   v.

MEDICAL DATA SYSTEMS, INC.,

      Defendant.

WILLIAM C. CARN, III,                          Adv. Pro. 06-1058
BANKRUPTCY TRUSTEE,

      Plaintiff,

   v.

MEDICAL DATA SYSTEMS, INC.,

      Defendant .

## ORDER

It is ORDERED that the parties are DIRECTED to file any objections to the Report and

Recommendation on or before the close of business on April 20, 2007. Any objections filed

must be specific. Frivolous, conclusive or general objections will not be considered by the

District Court. The parties are advised that the Report and Recommendation is not a final order

of the Court and, therefore, it is not appealable.

34

Failure to file written objections to the proposed finding and recommendations in the

Report and Recommendation shall bar the party from a *de novo* determination by the District

Court of issues covered in the report and shall bar the party from attacking on appeal factual

findings in the report accepted or adopted by the District Court except upon grounds of plain

error or manifest injustice.

It is further ORDERED that counsel for the Plaintiffs shall file an Affidavit in support of

their claims for attorneys' fees and costs on or before the close of business on April 20, 2007.

The Defendant shall file any objections to the Plaintiff's request for attorney's fees and costs on

or before the close of business on May 4, 2007.


Done this the 5th day of April, 2007.


/s/ William R. Sawyer
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| In re | ) | Case No. 05-11879 |
| | ) | Chapter 7 |
| JAMES R. CAMBRON and | ) | |
| WENDY L. CAMBRON, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| WILLIAM C. CARN, III, | ) | Adv. Pro. 06-1057 |
| BANKRUPTCY TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MEDICAL DATA SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| WILLIAM C. CARN, III, | ) | Adv. Pro. 06-1058 |
| BANKRUPTCY TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MEDICAL DATA SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT MEDICAL DATA SYSTEM, INC.'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THIS COURT

Defendant Medical Data Systems, Inc. ("MDS" or "Defendant") hereby submits its

objections to the U.S. Bankruptcy Court for the Middle District of Alabama's ("bankruptcy

court") April 5, 2007 Report and Recommendation ("Proposed Order") on Plaintiff William C.

Carn, III's ("Plaintiff") complaint alleging various violations of the Fair Debt Collection

Practices Act ("FDCPA") by MDS. In its Proposed Order, the bankruptcy court preliminarily

held that various communications sent by MDS to James Cambron ("Mr. Cambron") and Wendy

LEGAL_US_E # 74877242.1

- 1 -

Cambron ("Mrs. Cambron") (collectively, "Debtors" or "Cambrons") violated §§ 1692e(5) and

e(10) of the FDCPA because such communications were allegedly misleading and deceptive.

Defendant submits the following objections to the Proposed Order in an effort to persuade this

Court to amend the bankruptcy court's Proposed Order and hold as follows: (1) the

communications sent by MDS to the Cambrons did not constitute threats under the FDCPA; (2)

merely acting to collect a debt which is time-barred is not deceptive under the FDCPA; and (3)

Mailloux v. Arrow Financial Services LLC, 204 F.R.D. 38 (E.D.N.Y. 2001) is distinguishable

from this case and should not be afforded any weight because this decision lacked both legal and

factual merit. Defendant respectfully requests that this Court dismiss Plaintiff's complaint and

revise the bankruptcy court's Proposed Order accordingly.

## I.    JURISDICTION AND VENUE

This Court has jurisdiction of this Objection pursuant to 28 U.S.C. §§ 157 and 1334.

Venue of these cases and this Objection is proper in this district pursuant to 28 U.S.C. §§ 1408

and 1409.

## II.    DEFENDANT'S OBJECTIONS TO THE BANKRUPTCY COURT'S PROPOSED STATEMENT OF FACTS

1.      On page 2 of the Proposed Findings of Fact, the Proposed Order states that MDS

sent both James and Wendy Cambron identical letters that "demanded payment" of various

medical bills. MDS objects to the characterization of these letters as "demanding payment." See

Proposed Order p. 2, attached as "Exhibit A." Nowhere in MDS's letters to Debtors is there any

sort of demand for payment from the Cambrons. See April 19, 2005 letter from MDS to James

Cambron, attached as "Exhibit B." To the contrary, the letters merely informed the Cambrons of

the steps MDS possibly would take to evaluate whether the Cambrons could pay their debts and

further notified the Cambrons how they could voluntarily pay their debts in full. See Exhibit B.

LEGAL_US_E # 74877242.1

- 2 -

2.    On page 4 of the Proposed Findings of Fact, MDS objects to the statement that

MDS's letters sought to deceive the Cambrons into believing that their wages and property were

in jeopardy. See Exhibit A. In no way did MDS's letters to the Cambrons threaten to take any

legal action whatsoever against their wages or property. In fact, the express text of the letters

stated that MDS only sought to collect information about the Cambrons' personal property and

financial assets to determine their ability to repay their debts and what, if any, further legal action

to take. As will be developed further in the case discussion below, this is a far cry from an

express threat to garnish wages or seize property, however, the facts as stated in the Proposed

Order strongly imply that was the Defendant's purpose and the effect of its letter without any

substantial justification for that interpretation in the text of the letters.

### III.    OBJECTIONS TO THE BANKRUPTCY COURT'S PROPOSED CONCLUSIONS OF    LAW AND CITATION TO AUTHORITIES

#### A.    MDS Did Not Violate § 1692e(5) Of The FDCPA Because MDS's Letters To The Cambrons Were Not Threats Under The FDCPA And Mailloux Lacks Sufficient Legal And Factual Merit To Be Properly Relied Upon By The Bankruptcy Court.

While the bankruptcy court stated that it believed Plaintiff's §1692e(10) claim was the

stronger of Plaintiff's claims, Defendant will address Plaintiff's claims in reverse order because

if the statements contained in MDS's letters are found not to violate § 1692e(5) of the FDCPA,

those same statements cannot violate § 1692e(10) as false representations or deceptive practices.

See Robinson v. Transworld Systems, Inc., 876 F. Supp. 385, 393 (N.D.N.Y. 1995).

Accordingly, MDS's letter to Debtors did not violate § 1692e(5) because: (1) the letters did not

constitute threats within the meaning of the FDCPA; and (2) the Proposed Order's sole reliance

on Mailloux in support of its holding that MDS violated § 1692e(5) was in error as that case

lacks any legal or factual merit and is distinguishable.

1.    **MDS's letters to Debtors did not constitute "threats" within the meaning of § 1692e(5) of the FDCPA and therefore, the Proposed Order erred in determining that the letters were deceptive and misleading.**

Section 1692e(5) of the FDCPA forbids a debt collector from <u>threatening</u> to take any action that cannot legally be taken or is not intended to be taken. 15 U.S.C. § 1692e(5) (2006) (emphasis added). Courts confronting issues arising under this section first must determine whether a communication from a debt collector constitutes a "threat." <u>See</u> <u>Ferguson v. Credit Mgmt. Control, Inc.</u>, 140 F. Supp. 2d 1293, 1299 (M.D. Fla. 2001) (citing various cases for this principle). Only once the court determines that the debt collector's communication constitutes a threat does the court then determine whether the debt collector could legally take the threatened action or intended to take that action. <u>See</u> <u>id.</u>

The FDCPA does not define what constitutes a "threat. In determining whether language can be construed as threatening legal action in violation of § 1692e(5), courts will look to the facts of the case and the language used in the communication. <u>See, e.g.</u>, <u>Madonna v. Academy Collection Serv. Inc.</u>, 1997 U.S. Dist. LEXIS 13315, *16-29 (D. Conn. Aug. 12, 1997) (holding that no violation occurred where language in a debt collection letter merely referred to remedies available to the creditor and did "not suggest that legal action *will* be taken") (emphasis in original). The Eleventh Circuit Court of Appeals has held that the relative sophistication of a debtor is irrelevant in determining whether a debt collector actually "threatened" to take an action that the debt collector never intended to take. <u>Jeter v. Credit Bureau, Inc.</u>, 760 F.2d 1168, 1175 (11th Cir. 1985).

Generally, the threat to take an action that will not or cannot be taken must be explicit. <u>See</u> <u>Robinson v. Transworld Systems, Inc.</u>, 876 F. Supp 385, 392 (N.D.N.Y. 1995). Federal case law provides various examples of the type of language contained in collection letters that

generally is held to constitute a "threat" under the FDCPA. For example, communications

containing a threat to sue or to take imminent legal action constitute threats under the FDCPA.

E.g., Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 25 (2d Cir. 1989) (language

contained in a collection letter stating "We Will At Any Time After 48 Hours Take Action As

Necessary And Appropriate To Secure Payment In Full . . . Pay This Amount Now If Action Is

To Be Stopped" threatened legal action and therefore was a threat under the FDCPA); Nance v.

Friedman, 2000 U.S. Dist. LEXIS 16897, *1-2 (N.D. Ill. Nov. 6, 2000) (letter threatening

possible imminent litigation although the debt collector may not have had authority to file suit

when it mailed the letter constituted a threat under the FDCPA). The letters at issue here contain

no such language. See Exhibit B.

Additionally, a threat to garnish wages and/or seize assets is a threatening communication

under the FDCPA. E.g., Van Westrienen v. AmeriContinental Collection Corp., 94 F. Supp. 2d

1087, 1099-1102 (D. Or. 2000) (collection letter threatening to garnish wages and/or seize

property within five days was a threatening communication and deceptive under the FDCPA

because such acts could not legally be taken within five days under Oregon law). Similarly, a

threat to contact a debtor's neighbors or employer regarding his debt can constitute a threatening

communication under the FDCPA. Rutyna v. Collection Accounts Terminal, Inc., 478 F. Supp.

980, 981-82 (N.D. Ill. 1979). Lastly, express threats to transfer a debtor's account to an attorney

for enforcement constitute threatening communications. E.g., United States v. Nat'l Fin. Servs.

Inc., 820 F. Supp 228, 233 (D. Md. 1993) (language contained in a letter stating that the debtor's

account "will be transferred to an attorney if it is unpaid after the deadline date" and "remember

your attorney will want to be paid" constituted threats of legal action under the FDCPA);

Schimmel v. Slaughter, 975 F. Supp. 1357, 1362-63 (N.D. Ga. 1997) (falsely implying that an

LEGAL_US_E # 74877242.1

- 5 -

account had been turned over to an attorney caused a clear-cut violation of the FDCPA). The letters at issue here contain no such language. See Exhibit B.

If a letter does not contain any threatening language, it is deemed merely informative and therefore, cannot violate § 1692e(5) of the FDCPA. See, e.g., Wade v. Regional Credit Assoc., 87 F.3d 1098, 1099 (9th Cir. 1996). The Ninth Circuit Court of Appeals held that a collection letter that merely stated the name of the creditor, the amount due, requested payment in full, and disclosed the location and telephone number where payment could be made was merely informative. Id. Accordingly, the letter did not violate the FDCPA as it was not a threatening communication to the debtor. Id.[1]

A district court in Kansas heard a case under the FDCPA that involved a series of collection letters sent to a debtor, some of which contained similar language to that in MDS's letters to Debtors, and held that the letters did not violate the FDCPA. See generally Bieber v. Associated Collection Servs. Inc., 631 F. Supp 1410 (D. Kan. 1986). In Bieber v. Associated Collection Services, Incorporated, the defendant, a debt collection agency, sent a series of collection letters to the plaintiff, which caused the plaintiff to bring suit, alleging that various statements contained in those letters stating that the plaintiff's wages could be garnished and that legal action would be commenced if the debt was not paid in full violated §§ 1692e(4), e(5), and 1692d. Id. at 1412. The defendant sent the first letter to the plaintiff on December 31, 1983, which stated that the plaintiff's account had been referred to the defendant for "*immediate* collection" and demanded "payment *in full* today." Id. at 1412 (emphasis in original). A second

---

[1] Furthermore, in the Eleventh Circuit, any argument that the inclusion of language disclosing that a collection letter is being sent in an attempt to satisfy a debt and therefore, constitutes a threat to take action under § 1692e(5) has been rejected as being without merit as such language is required by the FDCPA to appear in all communications from a debt collector to a debtor. Ferguson v. Credit Mgmt. Control, Inc., 140 F. Supp. 2d 1293, 1302 (M.D. Fla. 2001).

letter went out on January 25, 1984, stating that immediate collection was required and without

payment in full immediately, legal action "may be filed against you." Id. at 1413. After

receiving another account for the same debtor, the defendant sent a third letter to the plaintiff on

May 17, 1984 that bore similar language to the MDS letter.

> "We remind you for the last time that you have not corresponded with us
> regarding the above account. Sometimes drastic measures are taken to collect
> accounts which could have been avoided with the debtor's cooperation. We are
> proceeding with a thorough and complete investigation concerning your financial
> background. This investigation will list all property, occupation, employment,
> and financial resources, etc., so that our client will be in a position to bring this
> claim to an early conclusion." Id.

The defendant then sent a fourth letter to the plaintiff on June 14, 1984, stating that unless

the plaintiff paid the account in full all at once, legal action would be recommended to the

defendant's customer. Id. Subsequently, the defendant returned the plaintiff's account to the

customer and the customer instituted legal proceedings against the debtor. Id. On August 27,

1984, approximately eight months after sending its first letter to the plaintiff, the defendant sent a

final letter to the plaintiff, stating that the defendant had returned the plaintiff's account to the

defendant's customer and would request that suit be filed within five days. Id.

Despite the fact that suit was brought against the plaintiff more than eight months after

the defendant's first letter demanding immediate payment in full and subsequent letters

discussing the possibility of legal action, the court in Bieber held that the defendant did not make

any threats in violation of the FDCPA in any of its letters because the defendant never threatened

to actually do anything in its letters to the plaintiff. Id. at 1416. The defendant always stated that

it "would recommend," or "could institute" legal proceedings, which the court held was not the

same as making threats to actually do so. Id. Furthermore, the August letter sent to the plaintiff

did not constitute a threat under the FDCPA because it merely stated that the defendant "would

request" that suit be filed within five days. Id. The court granted summary judgment in favor of

LEGAL_US_E # 74877242.1

- 7 -

the defendant on all of the plaintiff's claims under the FDCPA. Id.[2] The single letter sent by

MDS to each of the Cambrons was obviously far less strident and much more neutral in tone

than the multiple letters in the Bieber case. Obviously, if those letters did not constitute a threat

under the FDCPA, MDS's letters cannot.

MDS's letters to the Cambrons did not constitute threats under the FDCPA, but rather,

were merely informative letters. MDS's letters did not contain any threats to commence legal

action or that the Cambrons' accounts would be referred to an attorney if they did not pay their

debts in full, unlike the letters at issue in both Pipiles and National Financial Services, Inc. Nor

did the letters establish any time period for the Cambrons to meet their debt obligations. Instead,

the letters merely invited the Cambrons to pay their debts.[3] See Exhibit B.

While MDS's letters do state that certain information may be gathered during MDS's

investigation of the Cambrons' ability to pay their debts, in contrast to both Van Westrienen and

Rutyna, MDS's letters do not, in any way, state that the sources of that information will be

informed of the debt or that MDS would be contacting those sources in order to enforce the debt

against the Cambrons. Instead, the letters expressly stated that the information would be used

only to assess the Cambrons' ability to repay their debts and help MDS determine what further

collection action, if any, should occur. See Exhibit B. The tone of the letter suggests that if no

assets are discovered, no further collection actions will be taken as the accounts will not be

collectable.

---

[2] At no point did the court take issue with the language in the defendant's third letter discussing its intention to
proceed with a full investigation of the plaintiff's assets.

[3] As established in Ferguson, the language in MDS's letters to the effect that the letters were an attempt to collect a
debt cannot be construed as a threat as that language is required by the FDCPA to appear in all of MDS's collection
letters.

LEGAL_US_B # 74877242.1

- 8 -

Moreover, MDS's letters contain far less explicit language then the language in the letters at issue in <u>Bieber</u>, in which the court still found no threats under the FDCPA and granted summary judgment in favor of the debt collector. In no way do MDS's letters even imply an intent to pursue legal action, garnish wages, or suggest that MDS would recommend referring the Cambron accounts to an attorney. <u>See</u> Exhibit B. As in <u>Wade</u>, MDS's letters to the Cambrons only listed the creditor on the Cambron accounts, the amount due on those accounts, and described how the Cambrons could pay their debts in full. <u>See</u> Exhibit B. There is no mention of any specific legal action that MDS intended to take in order to enforce the Cambrons' debts against them. In contrast, the letter expressly stated that MDS was only beginning the process of determining if the Cambrons could even afford to pay their debts. In light of <u>Bieber</u> and <u>Wade</u>, the lack of any express intention by MDS to take any specific action against the Cambrons compels the conclusion that MDS's letter was merely informative and did not constitute a threat under the FDCPA. Accordingly, the bankruptcy court's analysis in its Proposed Order of how MDS's letter violated § 1692e(5) of the FDCPA without first establishing that the letter contained any threat towards Mr. Cambron constituted an error.

> **2.    The bankruptcy court's reliance on Mailloux is misplaced and inappropriate as that case is distinguishable and does not provide an appropriate precedent for the bankruptcy court to follow due to that decision's lack of legal and factual merit.**

In finding that MDS violated § 1692e(5) of the FDCPA, the bankruptcy court relied on <u>Mailloux v. Arrow Financial Services, Inc.</u>, 204 F.R.D. 38, 41-42 (E.D.N.Y. 2001) for the proposition that the language in MDS's letters stating that MDS may seek various information about the Cambrons violated § 1692e(5). [<u>See</u> Exhibit A, pp. 9-10]. MDS asserts that the bankruptcy court erroneously relied upon <u>Mailloux</u> and should not have accorded that decision

any weight, let alone relied on it as the sole case in support of its holding that MDS violated §

1692e(5), for the following three reasons.

First, the <u>Mailloux</u> court was not tasked with determining whether the defendant violated

§ 1692e(5) of the FDCPA. Instead, in that case, the court was charged only with determining

whether to grant the plaintiff's motion for class certification. <u>See generally Mailloux</u>, 204

F.R.D. 38. The court's "holding" that the letter threatened to take actions that legally could not

be taken was made in the context of determining whether the typicality requirement was satisfied

by the plaintiff's claims and not whether the defendant violated the FDCPA. <u>Id</u>.

Second, the <u>Mailloux</u> court provided absolutely no legal reasoning to support how it

determined there was a violation of § 1692e(5) of the FDCPA. The court simply concluded,

without any analysis, that the defendants violated § 1692e(5) by threatening to take an action that

could not legally be taken. <u>Mailloux</u>, 204 F.R.D. at 42. The court did not even specify what

action the defendants allegedly threatened that they allegedly could not take. <u>See id</u>.

Third, no other court has <u>ever</u> cited the <u>Mailloux</u> decision as authority for the proposition

the bankruptcy court based its Proposed Order on nor is this decision binding precedent on this

Court. Therefore, given that the <u>Mailloux</u> court made a determination it was not charged to

make, and arguably, not qualified to make, provided no legal analysis to support its holding, and

is of no precedential value, the bankruptcy court erred in making the Proposed Order wholly

reliant upon this case and this Court should disregard <u>Mailloux</u>.

In the alternative, if this Court is not inclined to disregard <u>Mailloux</u>, MDS asserts that it is

distinguishable from the facts of this case. The letter at issue in <u>Mailloux</u> stated that the account

"[was] currently <u>being investigated</u> to determine <u>what action will be necessary</u> to recover the past

due balance." <u>Id</u>. at 40 (emphasis added). In contrast, MDS's letter did not say an investigation

was underway, but rather, that certain information "may" be sought, "if available," to "determine what further collection effort to take." Unlike Mailloux, an investigation of the Cambrons was not imminent, or even certain to occur, when MDS sent the letters and had not necessarily even begun when the Cambrons received the letters. Furthermore, MDS's letters implied that an investigation might not even occur if the information sought by MDS was not available and that the information sought by MDS, if available, would not necessarily be utilized.

Additionally, the letter in Mailloux made it expressly clear that further efforts would be used to recover the debt when the letter said that the investigation was to determine "what action will be necessary" to recover the debt. 204 F.R.D. at 40 (emphasis added). In contrast, MDS's letters mentioned only the possibility of "future collection effort[s]" but such efforts, if any, would be largely determined by whether MDS was able to uncover any assets of the Cambrons. If MDS determined that the Cambrons did not have any assets, it is a fair and reasonable interpretation of MDS's letters that no further collection efforts would even ensue. Therefore, the weight and significance afforded to the Mailloux decision in the Proposed Order is inappropriate given that decision's lack of legal and factual merit.

**B.    MDS Did Not Violate § 1692e(10) Of The FDCPA Because Acting To Collect A Time-Barred Debt By Seeking Voluntarily Repayment From Mr. Cambron Without Resorting To The Use Of Legal Remedies Is Not Deceptive Under The Act.**

MDS did not violate § 1692e(10) in attempting to collect on Mr. Cambron's time-barred debt because MDS's letter did not threaten any legal action against Mr. Cambron on that debt. While the Proposed Order cites Kimber v. Federal Financial Corporation, 668 F. Supp. 1480 (M.D. Ala. 1987) for the proposition that attempting to collect on a time-barred debt constitutes a deceptive practice under the FDCPA, Defendant submits that the bankruptcy court failed to properly analyze and apply Kimber. In contrast to the Proposed Order's treatment of this issue,

the question of whether a debt collector violates the FDCPA and engages in a deceptive act by attempting to collect a time-barred debt is significantly more complex.

First, before addressing whether <u>Kimber</u> is even applicable to this case and its proper legal implications, it is important to note that a significant number of courts, many of which cite to <u>Kimber</u>, hold that whether a debt collector's attempt to collect a time-barred debt constitutes a violation of the FDCPA is determined by whether the forum state interprets its own statute of limitations as extinguishing the underlying debt or only as limiting available judicial remedies. <u>Compare Klewer v. Cavalry Investments, LLC</u>, 2002 U.S. Dist. LEXIS 1778, *8-11 (D. Wis. Jan, 30, 2002) (holding that Wisconsin's six year statute of limitations meant to extinguish a debt and therefore, attempting to collect on a time-barred debt constituted a violation of the FDCPA) <u>with Shorty v. Capital One</u>, 90 F. Supp. 2d 1330, 1332 (D.N.M. 2000) (in finding that a debt collector's attempt to collect a time-barred debt did not violate the FDCPA, the court noted that New Mexico's statute of limitations merely sought to limit available legal remedies, not to extinguish the underlying obligation); <u>Perretta v. Capital Acquisitions & Mgmt Co.</u>, 2003 U.S. Dist. LEXIS 10070, *10 (N.D. Ca. May 5, 2003) (holding that an attempt to collect a time-barred debt alone is insufficient to state a cause of action because the California statute of limitations does not seek to extinguish a debt but only to limit available legal remedies); <u>Wallace v. Capital One Bank</u>, 168 F. Supp. 2d 526, 528 (D. Md. 2001) (Maryland's statute of limitations serves only to limit available legal remedies and does not extinguish the underlying debt). When the applicable statute of limitations applies only to limit judicial remedies, creditors are entitled to pursue time-barred debts through non-judicial means, provided they otherwise comply with the FDCPA. <u>Johnson v. Capital One Bank</u>, 2000 U.S. Dist. LEXIS 13311, *6-7 (D. Tex. May 17, 2000).

Alabama interprets its statute of limitations as procedural and only limiting available

remedies, not as extinguishing the underlying debt itself. Ex parte Liberty Nat'l Life Ins. Co.,

825 So. 2d 758, 765 (Ala. 2002); accord Green v. Dixon, 727 So.2d 781, 784 (Ala. 1998)

("'statutes of limitations affect the remedy'" (quoting Odom v. Averett, 27 So. 2d 479, 480

(1946)); Jefferson County Sav. Bank v. Ben F. Barbour Plumbing & Elec. Co., 68 So. 43, 46

(1915) ("Statutes of limitation go to the remedy, not the rights of parties."); see Moore v. Liberty

Nat'l Ins. Co., 108 F. Supp. 2d 1266, 1275 (N.D. Ala. 2000) ("While a statute of limitations is a

procedural device that sets forth the time period within which an action is deemed to have

accrued and that is capable of being waived or tolled, a rule of repose is substantive doctrine of

the State, eliminating a cause of action, irrespective of its date of accrual.").

With this in mind, it is significant that few courts interpret Kimber as the bankruptcy

court did in its Proposed Order as barring any and all attempts to collect upon a time-barred debt.

In fact, Kimber itself did not hold as such. In Kimber, the court held that a debt collector

violated the FDCPA by filing a lawsuit to collect on a debt that appeared time-barred without

conducting a reasonable inquiry as to whether the limitations period was tolled. Id. at 1487.

While the court rejected the argument that because the Alabama statute of limitations only

sought to limit available remedies and, therefore, there was no violation of the FDCPA, clearly

influencing the court's decision in Kimber was the fact that the debt collector, an attorney,

shirked his duties under Rule 11 of the Federal Rules of Civil Procedure, which demand an

attorney conduct a reasonable investigation into whether a claim is well-grounded in law and fact

prior to filing suit. See id. at 1488 ("the fact that a defense is affirmative has not relieved

counsel of their Rule 11 responsibilities . . ." and further noting that sanctions can be appropriate

against an attorney under Rule 11 where the attorney filed a suit when the attorney knew or

LEGAL_US_E # 74877242.1

- 13 -

should have known that the suit was time-barred); accord Goins v. JBC & Assocs., 352 F. Supp.

2d 262 (D. Conn. 2005) (holding that the fact that the statute of limitations is an affirmative

defense does not relieve an attorney, acting as a debt collector, of his professional responsibility

to only pursue valid claims and thus, the attorney violated the FDCPA by threatening to sue on a

time-barred debt).

In the absence of an attorney filing a suit that he knows or reasonably should know is

time-barred and, in violation of his Rule 11 duties, the majority of courts confronting the Kimber

decision limit that decision as applicable only to cases where a debt collector threatens actual

litigation or other legal action against a debtor but permit a debt collector to continue to seek

voluntary repayment from the debtor. Aronson v. Commercial Financial Services, Inc., 1997

U.S. Dist. LEXIS 23534, *1-2 (W.D. Pa. Dec. 22, 1997) (limiting Kimber as holding only that

filing or threatening to file a lawsuit or take further action upon a claim that the debt collector

knows is barred by the statute of limitations violates the FDCPA); accord Freyermuth v. Credit

Bureau Servs., 248 F.3d 767, 771 (8th Cir. 2001) (declining to extend Kimber and holding that in

the absence of a threat of litigation or actual litigation, there is no violation of the FDCPA when

a debt collector attempts to collect a time-barred debt that is otherwise valid); Wallace v. Capital

One Bank, 168 F. Supp. 2d 526, 528 (D. Md. 2001) (holding that a letter seeking no more than a

voluntary repayment of a time-barred debt does not violate the FDCPA and rejecting the

plaintiff's argument that the debt collector should have to notify the debtor that the debt is time-

barred because of the possibility that a voluntary payment might revive the expired debt); Shorty

v. Capital One, 90 F. Supp. 2d 1330, 1332 (D.N.M. 2000) (holding that in the absence of a threat

of litigation or further collection efforts, the FDCPA is not violated by a debt collector's attempts to collect on a time-barred debt).[4]

In fact, Thompson v. D.A.N. Joint Venture III, LP, relied on by the bankruptcy court in its Proposed Order, implicitly supports this exact interpretation of Kimber. In Thompson, the U.S. District Court for the Middle District of Alabama held that a debt collector's failure to conduct a reasonable inquiry prior to filing suit (taking legal action) as to whether a debt was time-barred was an unfair and unconscionable means of collecting the debt. 2007 WL 496754, *4 (M.D. Ala. Feb. 13, 2007); accord Klewer v. Cavalry Investments, LLC, 2002 U.S. Dist. LEXIS 1778 (W.D. Wis. Jan. 30, 2002) (holding that when a debt collector sought payment of a time-barred debt and certified to the debtor in a collection letter that after an appropriate investigation, the collector determined the debt to be valid, enforceable, and within the statute of

---

[4] Few cases have held that an attempt to collect a time-barred debt constituted a violation of the FDCPA in the absence of an express threat of litigation and the few that are distinguishable from this case. First, in Stepney v. Outsourcing Solutions, Inc., 1997 U.S. Dist. LEXIS 18264, *3, 14 (N.D. Ill. Nov. 4, 1997), despite acknowledging that a collection letter sent to a debtor did not mention or threaten a lawsuit or any further action upon the debt, because the letter promised "no further collection action" if the time-barred debt was paid in full, the court held that the plaintiff had sufficiently stated a claim alleging a violation of the FDCPA. However, it is important to note that the court in Stepney was confronted with the issue of whether Kimber in fact was limited to letters threatening legal action and whether the letter at issue did threaten legal action but failed to expressly address these issues because the case involved merely whether the plaintiff's case should be dismissed for failure to state a claim. Id. at *13.

While Defendant's letter does mention that an investigation may be undertaken to determine what further collection efforts to take, if any, this is a far cry from Stepney, in which the letter expressly stated that there would be no further collection action if the debt was paid in full, implying that some actions already had commenced and making it more likely that a debtor would interpret the letter as threatening to resort to litigation. Additionally, this case involved only whether the plaintiff managed to state a claim for relief under the FDCPA and is an unpublished decision from a district court in another circuit and therefore, should not be afforded significant weight by this Court.

Second, in Taylor v. Unifund, 1999 U.S. Dist. LEXIS 13651, *3-4 (N.D. Ill. 1999), the judge apparently extended Kimber and Stepney, without any legal discussion or reasoning, to hold that a creditor engaged in fraudulent misrepresentation by trying to collect a time-barred debt even when no lawsuit to collect the debt had been filed or threatened nor other collection actions threatened. This Court should not afford Taylor any weight as the judge provided no legal reasoning to support its holding and this is another unpublished decision from the same district as Stepney.

limitations, the court held that the collector violated the FDCPA because the collector attempted to enforce a debt he knew or should have known was no longer enforceable).

Determining whether a letter threatens litigation or further collection actions is often a question of fact. Courts have understood "further collection actions" that are violative of the FDCPA as threatening the use of other legal remedies, besides filing suit, to collect upon a time-barred debt. E.g., Johnson v. Capital One Bank, 2000 U.S. Dist. LEXIS 13311, *2, 6-7 (W.D. TX. 2000) (holding that a collection letter threatening "to assign an account to a collector with instructions to liquidate the balance" did not violate the FDCPA despite that fact that the debt was time-barred even though those instructions constituted further collection efforts). While the Johnson court acknowledged that Shorty held that "further collections efforts" upon a time-barred debt could result in a violation of the FDCPA, the Johnson court held that it would not speculate as to what kinds of further collection efforts would be violative of the FDCPA under Shorty because that case did not provide any guidance on the issue. Id. at *6. When a collection letter is neither harassing or threatening, the court in Johnson held that the mere threat of amorphous "further collection efforts" was not enough to give rise to a violation of the FDCPA. Id. at *6-7.

In contrast, a collection letter that stated "you may wish to settle this matter before we seek appropriate relief before a court of proper jurisdiction by a qualified attorney" constituted an express threat of litigation upon a time-barred debt and therefore, violated the FDCPA. Goins v. JBC & Assocs., 352 F. Supp. 2d 262, 217-72 (D. Conn. 2005). Similarly, a letter threatening that if the debtor did not "work with" the debt collector, "further steps would be taken" to enforce a time-barred debt violated the FDCPA. Perretta v. Capital Acquisitions & Mgmt. Co., 2003 U.S. Dist. LEXIS 10070, *14-16 (N.D. Cal. May 5, 2003). Significantly, in Perretta, the

debt collector already had threatened to report the debtor to various credit bureaus, which the court found permissible under the FDCPA despite the fact that the debt was time-barred. See id. at *14. However, in the court's view, the language in the debt collector's letter begged the question of what additional steps, beyond reporting the debtor to the credit bureau, the debt collector planned to take and that an unsophisticated debtor could reasonably interpret those steps to include legal action. Id. at *15. Therefore, the court held that the letter was no longer consistent with efforts to seek voluntary repayment from the debtor and therefore, denied the defendant's motion to dismiss and held that the plaintiff established a sufficient cause of action under the FDCPA. Id. at *16.

Without so much as any discussion of the principles discussed above, it was an error for the bankruptcy court to hold that under Kimber, MDS violated the FDCPA by attempting to collect on a time-barred debt as the correct answer is dependent on two independent but interrelated elements: (1) whether Alabama's statute of limitations is interpreted to extinguish the underlying debt or merely to limit available remedies; and (2) whether MDS's letter actually threatened legal action to collect upon the time-barred debt or merely sought to obtain voluntary repayment. As to the first element, it is clear that the Alabama statute of limitations seeks merely to limit available judicial remedies, not extinguish the underlying debt.[5]

As to second element of this analysis, MDS's letter to Mr. Cambron sought only voluntary repayment of his debt and did not threaten any litigation or further legal collection actions against Mr. Cambron. In Thompson, the Middle District of Alabama implicitly agreed

---

[5] The court in Kimber expressly acknowledged this interpretation of the Alabama statute of limitations but again, held to the contrary despite that acknowledgment because the time-barred suit was filed by an attorney with separate and distinct legal responsibilities under Rule 11, which other debt collectors are not subject to. See 668 F. Supp. at 1488 ("the fact that a defense is affirmative has not relieved counsel of their Rule 11 responsibilities in other contexts.").

with the <u>Aronson</u> decision and its progeny, which limited <u>Kimber</u> to preclude only the pursuit of

a time-barred debt by resorting to the use of specific legal action, including filing suit, but still

allowing a debt collector to utilize other methods for obtaining voluntary repayment from a

debtor. While MDS's letter stated that further collection efforts were possible, this statement did

not threaten any particular action against Mr. Cambron and could not possibly be understood as

doing so because any possible future collection efforts were wholly dependent on the results of

MDS's investigation into Mr. Cambron's ability to repay his debts. <u>See</u> Exhibit B.

      Unlike <u>Goins</u> and <u>Peretta,</u> which involved more direct assertions of legal action against

the debtors if they did not pay their debts in full, this case is more appropriately analyzed under

<u>Johnson</u>, which understood the phrase "further collection efforts" to mean using legal action to

obtain payment of a time-barred debt but not including the use of other methods for securing

voluntary repayment from the debtor, such as instructing a debt collector to liquidate the debtor's

account. All MDS sought to accomplish in its letter to Mr. Cambron was to inform him that it

had acquired his account, would act to determine if Mr. Cambron could pay his debts,

communicated how MDS might go about making that determination, and let Mr. Cambron know

how he could voluntarily repay his debt. <u>See</u> Exhibit B.

      Moreover, unlike <u>Kimber,</u> here, there is no evidence that MDS knew or should have

known that Mr. Cambron's debt was time-barred, as MDS is not an attorney subject to the

additional investigative duties imposed upon attorneys under Rule 11. Additionally, until MDS

determined that it would take legal action against Mr. Cambron, MDS had no duty to investigate

whether Mr. Cambron's debt was time-barred. <u>See</u> <u>Thompson</u>, <u>Aronson</u>, <u>Shorty</u>, <u>Peretta</u>,

<u>Johnson</u>, <u>Goins</u>, <u>Klewer</u>, <u>Wallace</u>, and <u>Freyermuth</u>. Accordingly, in light of the numerous

federal district court decisions, involving similar circumstances, and which held that acting to

collect a time-barred debt is not a *per se* violation of the FDCPA, this Court should revise the bankruptcy court's Proposed Order and hold that Defendant did not violate § 1692e(10) of the FDCPA by seeking to obtain Mr. Cambron's voluntary repayment of his time-barred debt.

## IV.   CONCLUSION

Based on the foregoing, Defendant respectfully requests that this Court amend the bankruptcy court's Proposed Order in accordance with the aforementioned arguments and enter an Order dismissing Plaintiff's claims against Defendant under the FDCPA, award Defendant its reasonable and necessary attorney's fees and litigation expenses against Plaintiff and her counsel, and granting Defendant such other and further relief as this Court deems appropriate.

Submitted this 20th day of April, 2007.

OF COUNSEL

John G. Parker
(Georgia Bar No. 562425)
Stefanie H. Jackman
(Georgia Bar No. 335652)

*Co-Counsel for Defendant*
*Medical Data Systems, Inc.*

PAUL, HASTINGS, JANOFSKY
& WALKER LLP
600 Peachtree Street, N.E.
Suite 2400
Atlanta, Georgia 30308-2222
Tel. (404) 815-2400
Fax (404) 815-2424

Russel A. McGill (MCG009)
BRUNSON & ASSOCIATES, Attorneys P.A.
301 Broad Street
P.O. Box 1189
Gadsden, AL 35902-1189
Tel. (256) 546-9205
Fax (256) 546-8091

*Counsel For Defendant*
*Medical Data Systems, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| In re | ) | Case No. 05-11879 |
| | ) | Chapter 7 |
| JAMES R. CAMBRON and | ) | |
| WENDY L. CAMBRON, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| WILLIAM C. CARN, III, | ) | Adv. Pro. 06-1057 |
| BANKRUPTCY TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MEDICAL DATA SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| WILLIAM C. CARN, III, | ) | Adv. Pro. 06-1058 |
| BANKRUPTCY TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MEDICAL DATA SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of **DEFENDANT MEDICAL DATA**

**SYSTEM, INC.'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF**

**THIS COURT** by depositing the same in the United States mail in a postage prepaid envelope

addressed to:

LEGAL_US_E # 74877242.1

- 1 -

David G. Poston, Esq.
Michael Brock, Esq. and
Gary Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330

This 20th day of April, 2007.

_____
Russel A. McGill (MCG009)
BRUNSON & ASSOCIATES, Attorneys P.A.
301 Broad Street
P.O. Box 1189
Gadsden, AL 35902-1189
Tel. (256) 546-9205
Fax (256) 546-8091

*Counsel For Defendant*
*Medical Data Systems, Inc.*

04/05/2007  13:31    18633824515              MEDICAL DATA SYSTEMS      NO.2080  P. 2/14
Apr. 5. 2007  1:11AM    Brock & Stout                                              PAGE  02

*Ruling*

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                    Case No. 05-11879
                                         Chapter 7
JAMES R. CAMBRON and
WENDY L. CAMBRON,

    Debtors.


WILLIAM C. CARN, III,                    Adv. Pro. 06-1057
BANKRUPTCY TRUSTEE,

    Plaintiff,

    v.

MEDICAL DATA SYSTEMS, INC.,

    Defendant.


WILLIAM C. CARN, III,                    Adv. Pro. 06-1058
BANKRUPTCY TRUSTEE,

    Plaintiff,

    v.

MEDICAL DATA SYSTEMS, INC.,

    Defendant.


## REPORT AND RECOMMENDATION OF THE UNITED STATES
## BANKRUPTCY JUDGE WILLIAM R. SAWYER

These consolidated Adversary Proceedings came before the Court for trial on March 15,

2007. Plaintiff William C. Carn, III, the Trustee in bankruptcy, was present by counsel David G.

Poston and Michael Brock. Defendant Medical Data Systems, Inc., was present by its Chief

Operating Officer Gary Ball and by counsel Russell McGill. The parties have filed briefs which

04/05/2007  13:31    18633824515                    MEDICAL DATA SYSTEMS    NO.2680  P. 3/14
Apr. 5. 2007  1:11AM    Brock & Stout                                        PAGE    03

the undersigned has found helpful. (Adv. Pro. No. 06-1057, Docs. 30, 32). The Court heard

evidence and the arguments of counsel and took the matter under advisement.

## I. PROPOSED FINDINGS OF FACT

On April 19, 2005, Medical Revenue Services, a unit of Defendant Medical Data

Systems, Inc., wrote James R. Cambron a letter demanding payment of medical bills totaling

$1,875.59. (Pl.'s Ex. A).[1] Two of the five individual debts allegedly owed were for services

rendered at Flowers Hospital in March of 1997, more than eight years prior to the date of the

letter. This is significant in that the statute of limitations to collect an unsecured debt in

Alabama is only six years. Thus, of the $1,875.59 allegedly owed, $1,694.23 was uncollectible

because the statute of limitations had expired.

On May 24, 2005, Medical Revenue Services wrote Wendy L. Cambron an almost

identical collection letter as that sent to James Cambron. The letter addressed to Wendy

Cambron demanded payment of a $175.00 medical bill. (Pl.'s Ex. B). The debt was for services

allegedly rendered at Flowers Hospital on August 27, 2003.

Both letters contained the same opening paragraph. The first paragraph states as follows:

> Medical Revenue Service is a collection agency, retained to represent
> the below named creditor. Since you have failed to pay this
> obligation in full, we now must determine your ability to repay this
> debt. The information we may be seeking, if available, to determine
> what further collection effort to take is:

> 1.) Real estate ownership/equity        4.) Your source of income
> 2.) Personal property assets            5.) Automobile ownership
> 3.) Savings, checking balances          6.) Verification of employment

---

[1] The full text of the letters are provided in an Appendix to this Memorandum.

-2-

04/05/2007  13:31  18633824515                MEDICAL DATA SYSTEMS    NO.2680  P. 4/14
Apr. 5. 2007 11:11AM    Brock & Stout                                        PAGE 04

(Pl.'s Exs. A, B).

The Plaintiff contends that this communication is misleading in that it implies that nonpayment of the bill will result in the seizure of property or garnishment of wages. As the creditor had not obtained judgment on the debts in question, and as the debts were unsecured obligations, the creditor had no immediate right to take any action with respect to the Cambrons' wages or property. Indeed, about 90% of the amount allegedly owed was more than six years old and therefore, uncollectible as a matter of law. With respect to the 10% of the debt which was not stale, the evidence showed that Medical Data had no intention to take that action. Indeed, the evidence is clear that it was the intention of Medical Data to attempt to make telephonic contact with the Cambrons and press them to pay these debts. If those efforts were unsuccessful, the debt was referred back to the original creditor, which in this case was Flowers Hospital.

Medical Data has its principal office in Sebring, Florida, and describes itself as a "secondary" debt collector. That is, it does not receive referrals of debts until collection has first been attempted by another agency. Its efforts to collect debts appear to consist of two things. First, it sends a letter and then it follows up with telephone calls. Gary Ball, Medical Data's Chief Operating Officer, testified that they would not send the letters unless it was required by the Fair Debt Collection Practices Act, as he feels that the most effective means of collecting debts is by way of the telephone.

In response to questions about collecting a debt after expiration of the statute of limitations, Ball testified that he felt that the debtors have a moral obligation to repay a debt which survives the statute of limitations. Ball does not believe that he has any obligation to

-3-

disclose the fact that the debts he is attempting to collect are beyond the statute of limitations. Nor apparently, does he believe that he must tell debtors that he may not seize their property until after he takes judgment, an action he has no intention to take.

The question of whether the first paragraph of the letters in question is deceptive is a close one. There is nothing in the letters that is demonstrably false. Ball's claim that information on the debtors' wages and property is needed to evaluate further collection efforts is not, in and of itself, wholly implausible. However, there are several troublesome facts here. Medical Data did not order credit reports or consult property records, state motor vehicle records, or other sources which would have provided the same information. In the experience of the undersigned, financially stressed individuals frequently do not voluntarily provide such information unless legally obligated to do so. Moreover, when such information is provided by an uncounseled debtor, the information is frequently incomplete or inaccurate. Ball testified that Medical Data mails approximately 1.8 million such letters each year. However, Medical Data provided no evidence as to how often debtors respond to such letters with accurate information. Given the evidence adduced at trial, it strains credibility to believe that the true purpose of the language in question is to obtain accurate information on a debtors' assets and wages. Rather, it appears that the purpose, and surely the effect of these letters, is to coerce payment by giving a false impression that the debtors' wages and assets are in jeopardy.

-4-

04/05/2007  13:31    18533824515                MEDICAL DATA SYSTEMS              PAGE  06
Apr. 5. 2007  1:12AM    Brock & Stout                                   NO.2680  P. 6/14

## II. PROPOSED CONCLUSIONS OF LAW

### A. Procedural Setting

This is an action under the Fair Debt Collection Practices Act. 15 U.S.C. § 1692k. The

Plaintiff seeks damages in the amount of $1,000.00 in each Adversary Proceeding, plus

attorney's fees and costs. 15 U.S.C. § 1692k(a).

James R. Cambron and Wendy L. Cambron filed a joint petition in bankruptcy pursuant

to Chapter 7 of the Bankruptcy Code on September 8, 2005. (Case No. 05-11879, Doc. 1). The

claims of James and Wendy Cambron are property of their bankruptcy estates. 11 U.S.C. § 541.

As these claims are property of the estate, this Court has jurisdiction to hear these Adversary

Proceedings pursuant to 28 U.S.C. § 1334. These claims are "related to" the Cambrons'

bankruptcy filing. William C. Carn, III, the Chapter 7 Trustee, has been substituted as named

Plaintiff for James and Wendy Cambron.[2]

In general terms, an action is a core proceeding if it is one that could not be brought but

for the existence of a bankruptcy case. 28 U.S.C. § 157(b); see also, The Whiting-Turner

Contracting Co. V. Electric Machinery Enterprises, Inc. (In re Electric Machinery Enterprises,

Inc.), __ F.3d __ , 2007 WL 548781 (11th Cir. Feb. 23, 2007) (holding that a proceeding is core

"if the proceeding is one that would arise only in bankruptcy"). As these Fair Debt Collection

Practices Act claims do not depend on a bankruptcy filing for their existence, these are not core

proceedings. As these are non-core proceedings, the undersigned Bankruptcy Judge makes

---

[2] The Court conditionally dismissed Adversary Proceeding No.06-1057 on the grounds
that it had not been brought by the proper party in interest. (06-1057, Docs. 9, 10). In response,
the Chapter 7 Trustee William C. Carn, III, entered the case as Plaintiff. (06-1057, Doc. 11). As
the same reasoning applies to Adversary Proceeding No. 06-1058, Trustee Carn is likewise
substituted as named Plaintiff in Adversary Proceeding No. 06-1058.

04/05/2007  13:31    18633824515          MEDICAL DATA SYSTEMS    NO.2080    P. 7/14    PAGE  07
Apr. 5. 2007 11:12AM    Brock & Stout

proposed findings of fact and conclusions of law in accordance with the provisions of 28 U.S.C.
§ 157(c)(1) and directs the Clerk of the Bankruptcy Court to file the same with the District
Court. By way of a separate order, a schedule for the filing of objections pursuant to Rule 9033,
FED. R. BANKR. P. is established.

### B. FDCPA Claims

The Plaintiff makes claims under both 15 U.S.C. § 1692e(5) and (10). While the same
set of facts support each claim, the undersigned with analyze the claims separately. Although
the Court concludes that the Plaintiff has established both claims, it will discuss the e(10) claim
first because, in its view, it is the stronger claim.

### 1. The § 1692e(10) Claim[1]

Congress has determined that "there is abundant evidence of the use of abusive,
deception, and unfair debt collection practices by many debt collectors. Abusive debt collection
practices contribute to the number of personal bankruptcies, to marital instability, of the loss of
jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress further states that
"it is the purpose of this subchapter to eliminate abusive debt collection practices by debt
collectors." 15 U.S.C. § 1692(e). In furtherance of this purpose, Congress enacted the "Fair
Debt Collection Practices Act," which provides, in part, as follows:

---

[1] For purposes of clarity, the claims made pursuant to 11 U.S.C. § 1692e(10) will be
referred to as the e(10) claims, and the claims made pursuant to 11 U.S.C. § 1692e(5) will be
referred to as the e(5) claims. The e(5) claims are considered in Part II(B)(2) below.

A debt collector may not use any false, deception, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

* * *

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

The issue here is whether the letters in question are deceptive. The United States Court of Appeals for the Eleventh Circuit has held that courts making this determination should use the "least sophisticated consumer" standard. Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985).

> That law was not "made for the protection of experts, but for the public–that vast multitude which includes the ignorant, the unthinking and the credulous," and the "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.

Id. at 1172-73 (internal citations omitted); see also, Kimber v. Fed. Financial Corp., 668 F. Supp. 1480, 1487-89 (M.D. Ala. 1987) (Thompson, J.) (holding that bringing suit to collect a debt barred by the statute of limitations was deceptive within the meaning of the Fair Debt Collection Practices Act); Thompson v. D.A.N. Joint Venture III, L.P., 2007 WL 496754 (M.D. Ala. Feb. 13, 2007) (Moorer, Mag. J.) (to same effect).

The Plaintiff argues that the language in question is deceptive because it falsely implies that the debtors' assets and wages may be in jeopardy. They argue that the purpose of this language is to unlawfully coerce payment. Gary Ball testified that the purpose of this language

-7-

was to attempt to obtain information on the debtors, reasoning that debtors who are employed and have assets are more likely to pay their debts. The undersigned finds that the language in question is deceptive and that the explanation advanced by Medical Data is unconvincing. An unsophisticated consumer would be deceived by the language in the letters.

A debtor with competent counsel would know that a debt is uncollectible if the statute of limitations has run. A counseled debtor would also know that the holder of an unsecured claim may not seize property until judgment has been taken in a court of law. Thus, the ambiguity in the first paragraph of the collection letters would cause no harm to a properly counseled debtor. However, the law is clear that the Court, in determining whether a given communication is misleading, for purposes of an e(10) claim, must apply the "least sophisticated consumer" standard. Applying that standard here, the Court finds that the communication from Medical Data is misleading. An unsophisticated consumer would conclude that his wages and property are in jeopardy and for that reason, would be coerced into paying the debt in violation of the Fair Debt Collection Practices Act.

Medical Data advanced an argument that the language in question is not deceptive. Ball testified that the information as to wages and property is useful to Medical Data in its determination as to what further action to take. If a debtor has a job and property, he is more likely to pay the debt and for that reason should be further pressed to pay. This reasoning is circular. A debtor without income and without property would not feel coerced to pay as he has nothing to lose. Indeed, it is only those debtors with jobs and property who Medical Data would seek to mislead.

-8-

04/05/2007  13:31    18533824515                    MEDICAL DATA SYSTEMS                    PAGE  10
Apr. 5, 2007 11:13AM    Brock & Stout                                            No.2680  P. 10/14

The Plaintiff argues that Medical Data's claim—that they need the information for their collection purposes—is without merit. Ball admitted that they had not consulted credit reports or property records, nor had they consulted any other records which might have provided the information requested in the first paragraph of the letter in question. That Medical Data has not taken any such action suggests that their claim is a pretext and that their true purpose was to unlawfully coerce payment.

### 2. The § 1692e(5) Claim

Plaintiff also alleges a violation of 15 U.S.C. § 1692e(5), which prohibits a debt collector from threatening to take action which cannot legally be taken. As the letters in question do not, strictly speaking, threaten anything, there is no express violation of this provision. However, the overarching problem here is one of deception and not of express threats to take action. For this reason, the undersigned is of the view that the claims are better considered under e(10) than under e(5). It should also be noted that the Eleventh Circuit does not apply the "least sophisticated consumer" standard to e(10) claims and for this reason, the Plaintiff's burden is somewhat heavier for an e(5) claim than is the case for an e(10) claim.

While the undersigned is of the view that the Plaintiff's claims here are best cast in terms of e(10), the question remains whether the Plaintiff has also made out a claim under e(5). There is case law for the proposition that deceptive language in a collection letter which suggests that such action will be taken may constitute such a violation. Mailloux v. Arrow Financial Services, LLC, 204 F.R.D. 38, 41-42 (E.D.N.Y. 2001) (certifying class status where a collection letter deceptively implied that collection action which could not lawfully be taken would be taken and finding a violation of § 1692e(5)). The facts in Mailloux are similar to the facts here in that the

-9-

04/05/2007  13:31   18533824515                    MEDICAL DATA SYSTEMS   nu.2000  ,    PAGE  11
Apr. 5. 2007 11:14AM    Brock & Stout

letter inquired into the debtor's income, checking account balances, employment, real estate ownership, and automobile ownership. The court in Mailloux found that letter, which was very similar to the letters here, to be in violation of e(5). Therefore, the undersigned concludes, in the alternative, that the evidence establishes a violation of § 1692e(5), as well as a violation of e(10).

### C. Damages

Having found violations of the Fair Debt Collection Practices Act, the Court should next consider an award of damages. As the Plaintiff does not request actual damages, none are awarded. See 15 U.S.C. § 1692k(a)(1) (allowing an award of actual damages). In addition the Court may award "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). Having heard the evidence and having considered the arguments of counsel, the Court is of the view that an award of damages in the amount of $1,000.00 for each claim is appropriate, for a total of $2,000.00. In other words, the claim originally held by James Cambron and the claim originally held by Wendy Cambron are allowed separately. It further appears that an award of attorney's fees is appropriate. See 15 U.S.C. § 1692k(a)(3).

### III. CONCLUSION

Having considered the evidence, the undersigned finds that the language in question in the letters, applying the least sophisticated consumer standard, is deceptive within the meaning of § 1692e(10). The effect of the subject language is to create apprehension that the debtor's assets and wages are in jeopardy and thereby unlawfully coerce payment of a debt. It is recommended that judgment be entered in favor of the Plaintiff in the amount of $1,000.00 each for each of two claims, for a total of $2,000.00. In addition, it is further recommended that

-10-

04/05/2007  13:31   18633824515                    MEDICAL DATA SYSTEMS      nu.∠uov   r.  PAGE  12
Apr. 5. 2007 ;1:14AM   Brock & Stout

Plaintiff be awarded attorney's fees. The undersigned will order Plaintiff's counsel to file : n

Affidavit in support of their claim for attorney's fees within 15 days. Defendant will be gi· en 15

days to respond.


Done this the 5th day of April, 2007.


                                    /s/ William R. Sawyer
                                    United States Bankruptcy Judg )

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 05-11879
                                                         Chapter 7
JAMES R. CAMBRON and
WENDY L. CAMBRON,

          Debtors.

WILLIAM C. CARN, III,                                    Adv. Pro. 06-1057
BANKRUPTCY TRUSTEE,

          Plaintiff,

     v.

MEDICAL DATA SYSTEMS, INC.,

          Defendant.

WILLIAM C. CARN, III,                                    Adv. Pro. 06-1058
BANKRUPTCY TRUSTEE,

          Plaintiff,

     v.

MEDICAL DATA SYSTEMS, INC.,

          Defendant .

## ORDER

It is ORDERED that the parties are DIRECTED to file any objections to the Report and

Recommendation on or before the close of business on April 20, 2007. Any objections filed

must be specific. Frivolous, conclusive or general objections will not be considered by the

District Court. The parties are advised that the Report and Recommendation is not a final order

of the Court and, therefore, it is not appealable.

Failure to file written objections to the proposed finding and recommendations in the Report and Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.

It is further ORDERED that counsel for the Plaintiffs shall file an Affidavit in support of their claims for attorneys' fees and costs on or before the close of business on April 20, 2007. The Defendant shall file any objections to the Plaintiff's request for attorney's fees and costs on or before the close of business on May 4, 2007.

Done this the 5th day of April, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge

2

05/16/2005  13:04    8633140269                MDSI                          PAGE  06

**Medical Revenue Services**                Reference          Total Amount Due
P.O. Box 1149                               F9708100109        $1874.59
Sebring FL 33871                            Toll Free Number
                                            (800) 315-6050

RETURN SERVICE REQUESTED
04/19/2005



ᵐᵉᵈˀᵃˣᴬ²²⁰ᴾ⁰ᴬᴸᵁ⁷ᴷᴱ·⁰¹⁴⁰⁰⁴

JAMES R CAMBRON                             MAKE CHECK PAYABLE AND REMIT TO:
PO BOX 464
DALEVILLE AL 36322-0464                     Medical Revenue Services
                                            PO BOX 1149
                                            SEBRING FL 33871-1149

lIıllıllıllıllıldılllıllıllılllılll



☐ CHECK HERE IF ADDRESS OR INSURANCE INFORMATION IS          Page 1 of 1
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE        ▼ DETACH HERE AND RETURN TOP PORTION WITH YOUR PAYMENT

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:

1.) Real estate ownership/equity          4.) Your source of income
2.) Personal property assets              5.) Automobile ownership
3.) Savings, checking balances           6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will; obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to your account, include the reference number with your payment. We also accept "check by telephone" for your convenience. If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb

| Account# | Client Name | Service Date | Balance | Patient Name |
|----------|-------------|--------------|---------|--------------|
| F9708500163 | Flowers Hospital | 03/26/1997 | 307.68 | Lehr, Timmy J |
| F9708100109 | Flowers Hospital | 03/22/1997 | 1386.55 | Lehr, Timmy J |
| F0307000545 | Flowers Hospital | 03/13/2003 | 58.77 | Cambron, James R |
| F0402500112 | Flowers Hospital | 01/25/2004 | 55.74 | Cambron, James R |
| F0402400129 | Flowers Hospital | 01/24/2004 | 65.85 | Cambron, James R |

TOTAL BALANCE: $1874.59

PL1

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

IN RE:                                    )
                                          )
JAMES R. CAMBRON,        &                )    BANKRUPTCY CASE NO.:
WENDY L. CAMBRON,                         )    05-11879
                                          )    CHAPTER 7 CASE
       DEBTORS.                           )
*********************************************************************

WILLIAM C. CARN, III,                     )
CHAPTER 7 TRUSTEE,                        )
                                          )
       PLAINTIFF,                         )    A.P. #: 06-1057
                                          )
WENDY CAMBRON,                            )
                                          )
       PLAINTIFF,                         )    A.P. #: 06-1058
                                          )
vs.                                       )
                                          )
MEDICAL DATA SYSTEMS, INC.,               )
D/B/A MEDICAL REVENUE SERVICES, INC,      )
                                          )
       DEFENDANT.                         )

---

**NON-CORE FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON REVIEW FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

**RESPONSE OF PLAINTIFFS, WILLIAM C. CARN, III, TRUSTEE
AND WENDY CAMBRON**

---

David G. Poston, Esq.
Attorney for William C. Carn, III,
and Wendy Cambron

OF COUNSEL:
Brock & Stout, LLC.
Post Office Drawer 311167
Enterprise, Alabama 36331
Telephone: (334) 671-5555
Facsimile: (334) 671-2689

1

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     A.    The Bankruptcy Court's Findings of Fact should be adopted in full . . . . . . . . . . 9

     B.    The Plaintiff's 15 U.S.C. § 1692(e)(10) claim arises as a separate and distinct
           cause of action from the 15 U.S.C. § 1692e(5) claim . . . . . . . . . . . . . . . . . . . . . . 9

     C.    The Bankruptcy Court was correct in finding that the Defendant's form debt
           collection letter was false, deceptive or misleading to the least sophisticated
           consumer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     D.    The Bankruptcy Court correctly found that the Defendant's form debt
           collection letter threatened action that was not intended or that was illegal . . . . 13

     E.    The Bankruptcy Court's citations of Mailloux and Kimber are not essential to the
           outcome of this case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

           1. Mailloux . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

           2. Kimber . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF CITATIONS

**Cases**

*Beiber v. Associated Collection Svc. Inc.*, 631 F. Supp. 1410 (D. Kan. 1986) . . . . . . . . . . . . . . 15

*Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60 (2d Cir. 1993) . . . . . . . . . . . . . . . . . 13

*Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Jeter v. Credit Bureau*, 760 F.2d 1168, 1172-1173 (11th Cir. 1985) . . . . . . . . . . . . . . . 10, 11, 17

*Kimber v. Fed. Financial Corp.*, 668 F. Supp 1480 (M.D. Ala. 1987) . . . . . . . . . . 6, 8, 16, 17, 18

*Mailloux v. Arrow Financial Services, Inc.*, 204 F.R.D. 38 (E.D.N.Y. 2001) . . . . . . . . 6, 8, 16, 17

*Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22 , 25-26 (2d Cir. 1989) . . . . . . . . . . . . . 13

*Randolph v. IMBS, Inc.*, 368 F. 3d 726, 730 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rivera v. Amalgamated Debt Collection Servs.*, 2006 U.S. Dist. LEXIS 75001 (D. Fla. 2006) . 12

*Robinson v. Transworld Systems, Inc.*, 876 F. Supp. 385 (N.D.N.Y. 1995) . . . . . . . . . . . . . 10, 13

*Rosa v. Gaynor*, 784 F. Supp. 1, 5 (D. Conn. 1989) (Cabranes, J.) . . . . . . . . . . . . . . . . . . . . . . . 12

*Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Schweizer v. Trans Union Corp.*, 136 F.3d 233, 237  (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 12

*Trans World Accounts, Inc. v. F.T.C.*, 594 F.2d 212, 215 (9th Cir. 1979) . . . . . . . . . . . . . . . . . 12

*Tyrell v. Robert Kaye & Assocs., P.A.*, 2004 U.S. Dist. LEXIS 16263 (D. Fla. 2004) . . . . . . . . 12

*United States v. National Financial Services, Inc.*, 98 F.3d 131, 138 (4th Cir. 1996) . . . . . . . . 13

*Wade v.Regional Credit Assoc.*, 87 F.3d 1098 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

**Statutes**

15 U.S.C. § 1692e .......................................................... 12

15 U.S.C. § 1692e(5) ................................... 6, 8, 9, 10, 11, 13, 14, 15, 16, 18

15 U.S.C. § 1692e(10) ..................................... 6, 8, 9, 10, 11, 12, 17, 18

28 U.S.C. § 157 ........................................................... 5

28 U.S.C. § 157(b)(2) ...................................................... 5

28 U.S.C. § 1334 .......................................................... 5

F.R.B.P., Rule 9033 ....................................................... 5

F.R.B.P., Rule 9033(d) ..................................................... 7

F.D.C.P.A. § 807(10)-2 .................................................... 12

Merriam-Webster's Online Dictionary ........................................ 9

## STATEMENT OF JURISDICTION

Bankruptcy Court jurisdiction is conferred by 28 U.S.C. §§ 157 and 1334.  The issues

relating to the Adversary Proceeding are "related to" the Cambrons' Chapter 7 Bankruptcy Case.

The Bankruptcy Court found that this was not a core proceeding as that term is defined by 28

U.S.C. § 157(b)(2).[1]  If this matter is not a core proceeding, the outcome is also governed by Rule

9033 of the Federal Rules of Bankruptcy Procedure.

---

[1]28 U.S.C. § 157(b)(2)(O) defines one aspect of a core proceeding as "other proceedings
affecting the liquidation of the assets of the estate . . . ."  Because the damage award from this
FDCPA lawsuit is an asset of the bankruptcy estate, arguably this matter is "core" and therefore
subject to a final order as allowed by 28 U.S.C. § 157(b)(1).

## STATEMENT OF ISSUES:

A.   Did the Defendant's PL1 letter "demand payment" as found by the Bankruptcy Court in its findings of fact?

B.   Is the Plaintiff's 15 U.S.C. § 1692e(10) claim co-dependent on the 15 U.S.C. § 1692e(5) claim.[2]

C.   Is the Defendant's form debt collection letter false, deceptive or misleading to the least sophisticated consumer.

D.   Did the Bankruptcy Court err by finding the Defendant's form debt collection letter as threatening action that was not intended or that was illegal?

E.   Is the Bankruptcy Court's citation of Kimber and Mailloux essential to the outcome of this case?

---

[2]The Plaintiff's 15 U.S.C. § 1692e(10) claim will be referred to as the e(10) claim and the 15 U.S.C. § 1692e(5) claim will be referred to as the e(5) claim.

## STANDARD OF REVIEW

If this matter is determined to be non-core in nature, the Standard of Review is governed

by Federal Rule of Bankruptcy Procedure 9033(d).[3]

---

[3]Rule 9033(d) provides: The district judge shall make a de novo review upon the record
or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or
conclusions of law to which specific written objection has been made in accordance with this
rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions
of law, receive further evidence, or recommit the matter to the bankruptcy judge with
instructions.

## SUMMARY OF ARGUMENT

The Bankruptcy Court Report and Recommendation in this case is well reasoned and legally sound. Nevertheless, the Defendant takes issue with a number of items in the Bankruptcy Court's decision, including the Proposed Statement of Facts, the cases cited by the Bankruptcy Court, and the conclusions of law. The Defendant's objections are not well founded and the Bankruptcy Court's Findings of Fact and Conclusions of Law must be adopted in total.

Initially, the Bankruptcy Court was correct in finding that the Defendant's PL1 letter was a demand for payment. The word "demand" is not essential to finding that the letter asserts a requirement on the recipient.

The Plaintiff's e(10) and e(5) claims arise apart from one another and are not co-dependent. There is no evidence, either in the pleading or testimony, to suggest that the e(10) claim depends on the e(5) claim. In one stroke, the Defendant argues that a failure of the e(5) claim is a failure of the e(10) claim. Neither the statutory scheme nor the reported decisions support the Defendant's contention. That is, there is no co-dependancy between the subsections in question. Likewise, the Bankruptcy Court had little difficulty finding the PL1 letters to be false, deceptive and misleading as well as implicitly threatening illegal action..

In its proposed findings, the Bankruptcy Court looked at several FDCPA opinions. In one instance, the Bankruptcy Court cited the Mailloux case as factually similar. Mailloux v. Arrow Financial Services, Inc., 204 F.R.D. 38 (E.D.N.Y. 2001). In the other instance, the Kimber decision is mentioned only in passing by the Bankruptcy Court and holds little significance in the outcome of this case. Kimber v. Fed. Financial Corp., 668 F. Supp 1480 (M.D. Ala. 1987).

**A.    The Bankruptcy Court's Findings of Fact Should be Adopted in Full**

At the conclusion of trial, the Bankruptcy Court, in a thoughtful analysis of all evidence and testimony found the PL1 letter to be a demand for payment and violations of e(10) and e(5). The Defendant, however, objects to the Bankruptcy Court's Proposed Statement of Facts and the characterization of the PL 1 letters as "demanding payment." Although the Plaintiff is unable to discern whether the Defendant objects to the word "demanding" or "payment," the Plaintiff assumes that the Defendant objects to the word "demand." Merriam-Webster's Online Dictionary defines "demand" as:

> 1 : to ask or call for with authority : claim as due or just
> 2 : to call for urgently, peremptorily, or insistently
> 3 a : to ask authoritatively or earnestly to be informed of
>   b : to require to come :
> 4 : to call for as useful or necessary

Merriam.-Webster. Online Dictionary, http://www.m-w.com/dictionary/demand

It also defines "obligation", in relevant part as "something one is bound to do." Id. at

http://www.m-w.com/dictionary/obligation.

Defendant's PL1 letter refers to the amount that Defendant claims Plaintiffs owe as an "obligation", thereby implying that Plaintiffs are bound to pay. The Defendant's PL1 letter is asking and/or calling for the Plaintiffs to pay this debt. The Defendant's authority comes from its status as a collection agency. For this reason, the Bankruptcy Court correctly stated that Defendant's PL1 letter demands payment.

**B.    The Plaintiff's 15 U.S.C. § 1692e(10) claim arises as a separate and distinct cause of action from the 15 U.S.C. § 1692e(5) claim.**

The Defendant argues that the Plaintiff's e(10) claim is solely dependant on his e(5)

claim. Defendant's Objection at p. 3. As grounds for this proposition, the Defendant cites the

New York Bankruptcy Court's decision of Robinson v. Transworld Systems, Inc., 876 F. Supp.

385 (N.D.N.Y. 1995). On this point, the Plaintiff disagrees in the strongest possible sense. The

Plaintiff's case in chief was based on two separate theories. The Plaintiff's primary argument

was that the Defendant's PL1 letter was false, deceptive and misleading to the "least

sophisticated consumer" because it provided the perception that the defendant might seize real

property or personal property assets if the consumer refused to pay the debt. 15 U.S.C. §

1692e(10). The Plaintiff's second theory centered around the proposition that the Defendant

threatened action that was illegal or that was not intended. 15 U.S.C. §1692e(5). Unlike

Robinson, the Plaintiff's claims are not co-dependant. It so happens that the Bankruptcy Court

found that the Defendant violated both code provisions. Both theories, however, operate

independently of one another.

The legal standard in determining whether the Defendant's PL1 letter was false, deceptive

or misleading under §1692e(10) is whether the "least sophisticated consumer" could have been

deceived or misled. The "least sophisticated consumer" is "the public ... that vast multitude

which includes the ignorant, the unthinking, and the credulous." Jeter v. Credit Bureau, 760 F.2d

1168, 1172-1173 (11th Cir. 1985). See also Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir.

1993)(defining the least sophisticated consumer as a naive, credulous, gullible, ignorant,

unthinking, person of "below-average sophistication or intelligence" "with a rudimentary

amount of information about the world and a willingness to read a collection notice with some

care.")

In its proposed legal conclusions, the Bankruptcy Court correctly applied the "least sophisticated consumer" standard to the Defendant's PL1 letter and found it violated 15 U.S.C. §1692e(10). The Defendant does not and cannot argue the application of the least sophisticated consumer standard. The only manner in which the Defendant questions the e(10) claim is by alleging that the e(10) violation cannot occur in the absence of the e(5) violation. Although both claims might arise from the same facts, they may also be mutually exclusive. The text of these sections bears this out. 15 U.S.C. § 1692e(5) relates to "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(10) speaks to "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer." The plain meaning of the two subsection provides a distinction as to the possibility of two violations.

While it may be possible for one act to violate the two subsections, it does not follow that e(10) is completely passive and dependant on e(5). The essence of the Defendant's argument is that the PL1 letter is not a threat. Therefore, if the PL1 letter is not a treat, then no e(5) violation occurred and no e(10) violation occurred. A plain reading of the statute shows that Congress anticipated and provided separate treatment of e(5) from e(10).

Besides the obvious statutory distinctions, the "least sophisticated consumer" applies to e(10), but not e(5). Jeter v. Credit Bureau, 760 F.2d 1168, 1172-1173 (11th Cir. 1985). The legal distinction as specified in Jeter is sufficient to show that the merits of one claim are not automatically dependant on another. Id.

Finally, in analyzing the two separate violations, the Bankruptcy Court set out independent reasoning for the e(10) and e(5) claims. Specifically, the Bankruptcy Court found

the PL1 letter threatened action it could not take and also found it deceptive in the eyes of the least sophisticated consumer.

**C.    The Bankruptcy Court was correct in finding that the Defendant's form debt collection letter was false, deceptive or misleading to the least sophisticated consumer.**

Any deceptive or misleading statement in connection with the collection of a debt violates the FDCPA. Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996);  Clomon  v. Jackson, 988 F.2d 1314, 1320 (2d Cir. 1993); Randolph v. IMBS, Inc., 368 F. 3d 726, 730 (7th Cir. 2004) ("Debt collectors may not make false claims, period"), citing Russell v. Equifax A.R.S., 74 F.3d 30 at 33. Rivera v. Amalgamated Debt Collection Servs., 2006 U.S. Dist. LEXIS 75001 (D. Fla. 2006)("any violation of the statute establishes civil liability ..."); Tyrell v. Robert Kaye & Assocs., P.A., 2004 U.S. Dist. LEXIS 16263 (D. Fla. 2004) ("A single violation of § 1692e is therefore sufficient to establish civil liability ... [citations omitted]").

15 U.S.C. § 1692e states that "[a] collection agency may not engage in any false, deceptive or misleading representations or means in collection with the collection of any debt." As such, it is deceptive or misleading for a collection agency to create a "false sense of urgency." Schweizer v. Trans Union Corp., 136 F.3d 233, 237  (2d Cir. 1998); Rosa v. Gaynor, 784 F. Supp. 1, 5 (D. Conn. 1989) (Cabranes, J.); Trans World Accounts, Inc. v. F.T.C., 594 F.2d 212, 215 (9th Cir. 1979); Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50106 (1988): §807(10)- 2.

In applying the "least sophisticated consumer", the Bankruptcy Court correctly applied the required legal standard to the § 1692e(10) violation in its findings. That Court found that "[a]n unsophisticated consumer would conclude that his wages and property are in jeopardy

Page 12 of 18

and...would be coerced into paying the debt in violation of the Fair Debt Collection Practices

Act." Report and Recommendation at 8.

**D.    The Bankruptcy Court correctly found that the Defendant's form debt collection
letter threatened action that was not intended or that was illegal.**

A collection agency may not threaten to take any act which it does not intend to take, is

not able to take, or which is illegal.   15 U.S.C. § 1692e(5); Bentley v. Great Lakes Collection

Bureau, Inc., 6 F.3d 60 (2d Cir. 1993); Even the threat that a third party might litigate is also

inappropriate for a collection agency. Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22 ,

25-26 (2d Cir. 1989) (only action then contemplated was attempt at telephone contact); Bentley

v. Great Lakes Collection Bureau, 6 F.3d 60, 26 (2d Cir. 1993) (implied legal action was

imminent when not in fact the case); United States v. National Financial Services, Inc., 98 F.3d

131, 138 (4th Cir. 1996) (false implication of legal action). The Defendant argues that the PL1

letter was not threatening and, therefore, not in violation of § 1692e(5).   The Defendant

accurately states that in determining a threat, the court should look to the facts of the case and the

language used in the communication. The Bankruptcy Court, in analyzing the PL1 letter, found

it to contain an implied threat.

The Defendant, however, suggests the language must be explicit in order to constitute a

threat. And, because the threat must be explicit, the Defendant argues, the PL1 letter does not

violate e(5). The Defendant's argument does not accurately set forth the correct legal standard.

Robinson v. Transworld Systems, Inc., 876 F. Supp. 385 (N.D.N.Y. 1995). In Robinson, the

Court found the letters non-threatening. Id. at 393. The Robinson Court also found that the

record in that case contained no proof that the defendant either threatened to file a lawsuit or that

it did not intend to file such lawsuit. Id.

In the instant case, the PL1 letter mentions a host of assets subject to inquiry. The Defendant, however, never provided an explanation as to the purpose of the asset list. That is, why mention the exhaustive list of assets? The corporate representative testified that it is useful for collection. That may be so. But, it is also an implied threat. No where does the letter state that MDS will inquire about the assets. Instead, it is left to the consumer's imagination as to meaning and purpose of the asset list. Also, it is obvious that MDS at no point intended to file a lawsuit in Houston County, Alabama. This is especially true since the statute of limitation for such a lawsuit had run. Here the MDS letter implies that the enumerated assets including real estate, personal property, saving/checking accounts, income, and the Plaintiff's automobile are all in jeopardy.

Next, Defendant contends that <u>Wade v.Regional Credit Assoc.</u>, 87 F.3d 1098 (9th Cir. 1996), stands for the proposition that if a letter does not contain any threatening language it is deemed merely informative and cannot violate § 1692e(5). The Defendant would like to apply the ruling of the <u>Wade</u> court to this proceeding despite the drastic differences in the facts of the cases. The letter in <u>Wade</u> read as follows:

> WHY HAVEN'T WE HEARD FROM YOU?
> OUR RECORDS STILL SHOW THIS AMOUNT OWING.
> If not paid TODAY,
> it may STOP YOU FROM OBTAINING credit TOMORROW.
> PROTECT YOUR CREDIT REPUTATION.
> SEND PAYMENT TODAY.
> . . .
> DO NOT DISREGARD THIS NOTICE. YOUR CREDIT MAY BE
> ADVERSELY AFFECTED. CONTACT US IMMEDIATELY.

<u>Id</u>. At 1099.

The <u>Wade</u> Court found that the body of the letter in question contained no threats and was indeed informative. <u>Id</u>. At 1100. Nowhere in the opinion does <u>Wade</u> hold that a letter must

contain an explicit threat or else it is merely informative. The letter in <u>Wade</u> happened to contain no explicit threat and was also found to be informative. The <u>Wade</u> Court's decision on the e(5) violation was based solely on the letter in that specific case. The letter in <u>Wade</u> cannot be implied here.

Defendant once again compares apples to oranges when it compares the letters sent to the Plaintiffs in another FDCPA case, <u>Beiber v. Associated Collection Svc. Inc.</u>, 631 F. Supp. 1410 (D. Kan. 1986). In <u>Beiber</u> the court found no violation of § 1692e(5) because a lawsuit was indeed filed. <u>Id.</u> at 1416. That Court explicitly stated that "there has been no violation of subsection (5) because the threatened action – filing of a lawsuit – has been taken by defendant's client." <u>Id.</u> at 1416. The <u>Beiber</u> decision cannot be analogized to the instant case. MDS has not filed a lawsuit in Houston County, Alabama.

Even more importantly, the <u>Beiber</u> Court found that the collection letters "were not intended to mislead the Plaintiffs." <u>Id.</u> As correctly stated by Defendant, the court should look to the facts of the case and the language used in the communication. In this case, the Bankruptcy Court looked at the PL1 letter and found the letter implicitly threatened illegal or unintended action and were therefore in violation of § 1692e(5).

The Defendant claims that the PL1 letters "only listed the creditor on the accounts, the amount due on those accounts, and described how the Cambrons could pay off their debt in full." The Defendant neglects to mention that the letters include a list of assets for which there is no logical inference other than a threat of action against the assets. This fact in and of itself is enough to distinguish the instant case from the multitude of cases cited by the Defendant.

Next, Defendant claims that the PL1 letter sent to the Plaintiffs "expressly stated that MDS was only beginning the process of determining if the Cambrons could even afford to pay their debts." In fact, the letters do not implicitly or explicitly state such assertion. The Defendant seems to reference the phrase "we now must determine your ability to repay this debt." The phrase "we must determine," standing alone may seem harmless enough, but when viewed in the total context of the letter, the least sophisticated consumer would believe that the Defendant will investigate Plaintiffs' assets in order to forcibly collect on this debt.

The Defendant attempts to dissect each portion of the PL1 letter to show that there is no threat. Ironically enough, the disection of each title and each word supports confusion amongst reasonable minds. If reasonable minds differ, the least sophisticated consumer is confused. There can be no doubt that when the letter is read in its totality the tone of the letter is indeed threatening. It does not "merely invite the Cambrons to pay their debts" as Defendant contends. The least sophisticated consumer sees a list of assets about which Defendant wants information. The least sophisticated consumer believes that the Defendant may attempt to seize these assets in order to recover the amount of the debt. The Bankruptcy Court also reached this conslusion after reviewing all relevant legal and factual submissions.

**E.    The Bankruptcy Court's citations of <u>Mailloux</u> and <u>Kimber</u> are not essential to the outcome of this case.**

   **1.    <u>Mailloux</u>** - <u>Mailloux v. Arrow Financial Services, Inc.</u>, 204 F.R.D. 38 (E.D.N.Y. 2001)

The Defendant takes an odd position on the use of <u>Mailloux v. Arrow Financial Services, Inc.</u>, 204 F.R.D. 38 (E.D.N.Y. 2001). The Bankruptcy Court only cited <u>Mailloux</u> as factually similar to the Plaintiff's case in regards to the § 1692e(5) claim. The Bankruptcy Court found

the § 1692e(10) violations based entirely on other grounds.  First, the Defendant claims that the Mailloux case is "without merit" and then seemingly admits that Mailloux is good case law by seeking to distinguish that case from the case at hand.

The Defendant argues that the determination of FDCPA violation was made in the midst of a class certification.  The court in Mailloux found an FDCPA violation.  The Bankruptcy Court's findings of fact should not be dismissed merely because Mailloux occurred during a class certification.  Had there been no FDCPA violation, one may assume class certification would not have followed.

Because the Defendant doubts the validity of the Plaintiff's claims, most of its attempts to distinguish this case from Mailloux are hyper-technical arguments where the Defendant picks and chooses the slightest differences in wording between the two letters.  The Defendant, however, cannot defeat the message conveyed by the PL1 letter.  Here, read as a whole, the MDS letter can, and should, be seen as a threat to take action which cannot and is not intended to be taken.

    **2.**    **Kimber** - Kimber v. Fed. Financial Corp., 668 F. Supp 1480 (M.D. Ala. 1987)

The Defendant spends great effort discussing the merits of Kimber v. Fed. Financial Corp., 668 F. Supp 1480 (M.D. Ala. 1987).  Defendant argues vehemently regarding both the statute of limitations and attempts to collect time-barred debt.  In reality, Kimber is not an integral part of the Bankruptcy Court decision.  While the Bankruptcy Court refers to Kimber, its reference is not determinative of the "least sophisticated consumer" standard that the court correctly applies as controlling.  Jeter v. Credit Bureau, 760 F.2d 1168, 1172-1173 (11th Cir. 1985).

The key issue in the Bankruptcy Court opinion is the coercive and threatening language in the PL1 letter. Defendant's lengthy discussion of both the substance and the merits of <u>Kimber</u> are superfluous, and fail to address any relevant point in the Bankruptcy Court's Report. For the reasons stated above, the findings of the Bankruptcy Court must be upheld.

## CONCLUSION

In a well-reasoned and thoughtful analysis of 15 U.S.C. § 1692e(10) and e(5), the Bankruptcy Court concluded that the Defendant's PL1 letter violated the FDCPA. The Bankruptcy Court's Findings of Fact and conclusions of law should be adopted in total.

Respectfully submitted this 30th day of April, 2007.

BROCK & STOUT

David G. Poston, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330
334-671-5555
334-671-2689 Facsimile
Email: christal@circlecitylaw.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have this date served a copy of the foregoing upon Russel A. McGill, Esq., Attorney for Defendant, via electronic mail at rumcgi@sbswlegal.com , this 30th, day of April, 2007.

David G. Poston

Page 18 of 18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE ALABAMA MIDDLE DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLIAM C. CARN, III | ) | CASE NO. |
| CHAPTER 7 TRUSTEE, | ) | 1:07-cv-00369-WHA |
| | ) | |
| Plaintiff, | ) | USBC-MDAL CASE NO. |
| | ) | 06-01057-WRS |
| v. | ) | |
| | ) | |
| MEDICAL DATA SYSTEMS, INC. | ) | |
| | ) | |
| Defendant, | ) | |

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE REPORT AND RECOMMENDATIONS ISSUED BY THE BANKRUPTCY COURT

Defendant Medical Data Systems, Inc. ("MDS") respectfully submits this Reply Brief in support of its Objections To The Report And Recommendation issued by the Bankruptcy Court ("Objections"). In this case, Plaintiff William C. Carn ("Plaintiff") alleged various violations of the Fair Debt Collection Practices Act ("FDCPA") by MDS.

## I.    INTRODUCTION

In his response, Plaintiff attempts to avoid the issues raised by MDS's Objections by mischaracterizing MDS's arguments and then groundlessly asserting that the Bankruptcy Court's proposed order was correct, without offering any reason why. Rather than address MDS's argument that the language in its letter did not constitute a threat, Plaintiff completely avoided addressing this argument all together in his response and instead, tried to confuse and call into question the case law cited by MDS. However, the fact remains that MDS's letter was merely informative and sought only to verify whether James Cambron's ("Mr. Cambron") debt was collectible, a purpose clearly expressed in MDS's letter. Plaintiff does not contest that MDS's

letter did not establish a timeline for repayment or otherwise create a sense of urgency. Nor does

MDS's letter state or imply that legal action against Mr. Cambron was imminent in any way.

Because MDS's letter did not constitute a threat within the meaning of the FDCPA, MDS's letter

cannot violate § 1692e(5) as a matter of law.

Plaintiff also failed to address MDS's argument that it has the right under <u>Kimber</u> to seek

to collect upon a time-barred debt and therefore, did not violate either 1692e(5) or e(10) in

attempting to do so. This argument presents a significant issue that must be addressed in order to

fully decide this case because the Bankruptcy Court expressly acknowledged there was nothing

deceptive or misleading in MDS's letter and that the only justification for a violation of §

1692e(10) was that MDS's alleged purpose in sending the letter to Mr. Cambron (as determined

by the Bankruptcy Court and in direct contradiction to the stated purpose of the letter and Gary

Ball's testimony), was to collect upon an illegal debt. However, subsequent cases interpreting

and applying <u>Kimber</u> make it clear that MDS may seek to collect upon a time-barred debt using

means that do not threaten legal action, such as voluntary repayment by Mr. Cambron. As there

is no mention of any legal action of any type being taken against Mr. Cambron in MDS's letter,

it was not deceptive or misleading under § 1692e(10) for MDS to attempt to collect upon Mr.

Cambron's debt.

Neither the Bankruptcy Court nor Plaintiff are able to articulate specifically why and how

MDS's letter violated the FDCPA but rather, simply assert that it did and expect MDS and this

Court to accept that determination without question. This Court has the opportunity to engage in

a de novo review and determine for itself whether MDS's letter, which did not threaten any legal

action whatsoever against Mr. Cambron, violated the FDCPA. MDS's position is that its letter

did not contain any threats of legal action or threaten other adverse consequences against Mr.

LEGAL_US_E # 75253877.1

Cambron if he did not pay his debt and that MDS was entirely justified in seeking to collect upon

Mr. Cambron's debt by seeking voluntary repayment from Mr. Cambron. Such actions do not

violate the FDCPA as a matter of law.

MDS's reply argument will proceed as follows. First, MDS will reiterate its objection to

the Bankruptcy Court's proposed findings of fact because MDS's letter did not "demand

payment" and the Bankruptcy Court's characterization dramatically overstates the effect of the

letter. Second, MDS will argue that Plaintiff's claims under § 1692e(5) and e(10) are

interrelated because both causes of action rely upon the same statements and if those statements

do not impermissibly threaten Mr. Cambron, then they cannot also be misleading and deceptive.

Third, MDS will address Plaintiff's §1692e(5) argument independently and explain that MDS's

letter was merely informative and therefore, could not constitute a threat under the FDCPA.

Fourth, MDS will independently address Plaintiff's § 1692e(10) claim. In its proposed order, the

Bankruptcy Court expressly stated that MDS's letter was not false or misleading on its face and

that MDS's alleged liability under § 1692e(10) arose because MDS sought to collect upon a

time-barred debt. However, as argued in MDS's Objections and not contested by Plaintiff in his

response, MDS may seek voluntary repayment from Mr. Cambron even if his debt is time-

barred.

## II.   ARGUMENT

### A.   MDS's Letter Did Not Demand Payment And Therefore, The Bankruptcy Court's Findings Of Fact Should Not Be Adopted By This Court

MDS reiterates its objection to the Bankruptcy Court's characterization of MDS's letter

to Mr. Cambron as "demanding payment" in its proposed findings of fact. As Plaintiff argued in

its response to MDS's Objections, "demand" is defined as "to ask or call for with authority . . . to

call for urgently, peremptorily, or insistently . . . to require to come . . . [or] to call for as useful

-3-

LEGAL_US_E # 75253877.1

or necessary." [See Plaintiff's Response Brief, p. 9]. In no way did MDS's letter "demand" payment from Mr. Cambron. In contrast, the letter merely informed Mr. Cambron of a debt, which MDS believed Mr. Cambron legitimately owed, and informed Mr. Cambron of how to repay voluntarily that debt or, in the alternative, contest its validity. The letter did not express any indication that Mr. Cambron's debt was absolutely due and immediately owing. Instead, the letter expressly stated that Mr. Cambron had 30 days to contest the debt and require MDS to prove its validity. Nor did MDS's letter call for Mr. Cambron to pay his debt by any specific deadline. Therefore, MDS's letter did not "demand payment" in accordance with how the term "demand" is commonly understood and such a characterization dramatically overstates the effect of MDS's letter.

**B.    Plaintiff's § 1692e(10) Claim Does Not Arise As A Separate And Distinct Cause Of Action From Plaintiff's § 1692e(5) Claim Because The Two Are Interrelated**

In his response, Plaintiff argued that he asserted two independent theories of recovery under the FDCPA – one under § 1692e(10), arguing that the letter "created the perception that [MDS] might seize real property or personal property assets if [Plaintiff] refused to pay the debt," and another independent claim under § 1692e(5), arguing that the letter "threatened an action that was illegal or not intended." [See Plaintiff's Response, p. 10]. In doing so, Plaintiff argues that this is enough to distinguish this case from the facts of Robinson v. Transworld Systems, Inc., 876 F. Supp. 385 (N.D.N.Y. 1995).

MDS recognizes that § 1692e(5) and e(10) may, on their face, constitute independent causes of action under the FDCPA. However, the problem arises when the *same statements* are asserted as violating *both* code sections. In Robinson, the plaintiff argued for violations of both § 1692e(10) and § 1692e(5), arguing that the *same statements* allegedly violated *both* sections of

the FDCPA. <u>Id.</u> at 392-93. After concluding that the plaintiff did not threaten actions it did not intend to take, the court expressly held that having already ruled that there was no § 1692e(5) violation, "[t]herefore, these same statements cannot violate Section 1692e(10) as false representations or deceptive practices." <u>Id.</u> at 393.

Similarly to <u>Robinson</u>, Plaintiff contends that the language listing the possible information sources that MDS may look to in order to determine Mr. Cambron's ability to repay his debt constituted a violation of both § 1692e(5) and e(10). [<u>See</u> Plaintiff's Complaint ¶¶ 8-10]. Plaintiff does not contend that any other language in MDS's letter violated either of these code sections. Therefore, if this Court agrees with MDS that this language cited by Plaintiff in MDS's letter did not constitute a threat under the FDCPA but was merely informative, or, in the alternative, did not threaten an action that could not be legally taken, then under the express holding of <u>Robinson</u>, Plaintiff's § 1692e(10) must also fail because these same statements cannot be deceptive or misleading if they did not violate § 1692e(5).

**C.    The Bankruptcy Court Erroneously Held That MDS's Letter Violated § 1692e(5) Of The FDCPA Because The Letter Was Merely Informative and Did Not Constitute A Threat**

A "threat" is defined by Black's Law Dictionary as a "communicated intent to inflict harm or loss on another or on another's property . . . [or] an indication of an approaching menace [such as] the threat of bankruptcy." <u>Ferguson v. Credit Mgmt Control, Inc.</u>, 140 F. Supp. 2d 1293, 1299 n.11 (M.D. Fla. 2001) (citing BLACK'S LAW DICTIONARY 1489-90 (7th ed. 1999)). For example, for a collection notice to impermissibly threaten legal action, it must falsely communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made. <u>Combs v. Direct Marketing Credit Services, Inc.</u>, 1998 U.S. App. LEXIS 32670, *5 (7th Cir. Dec. 29, 1998) (internal citations omitted).

LEGAL_US_B # 75253877.1

Additionally, while MDS recognizes that threats can be made indirectly or obliquely, they still

must indicate that "legal action is underway or contemplated in the near future," a standard

which is simply more likely to be satisfied by an express threat that a specific action will be

taken. See id.; accord Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22 (2d Cir. 1989)

(holding that the clear import of language in a series of collection letters stating that "Notice Is

Hereby Given That This Item Has Already Been Referred for Collection Action;" "We Will At

Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment In

Full;" and "Pay This Amount Now If Action Is To Be Stopped" was that *some* type of legal

action had already been or was about to be initiated and could be averted from running its course

only by payment) (emphasis in original).

     MDS's letter did not threaten to take any specific action against Mr. Cambron but rather,

indicated that a variety of information *may* be sought, *if available,* to determine whether Mr.

Cambron *could* pay his debts without mentioning or implying that any specific action had or

would be taken against him. In fact, Gary Ball testified that MDS's purpose for seeking this

information was to determine if collection efforts were even possible. The Bankruptcy Court's

rather bold statement that the purpose and effect of MDS's letter was to coerce payment by

making Mr. Cambron believe that his wages and assets would be seized strains any reasonable

and credible interpretation of MDS's letter.

     Both Plaintiff and the Bankruptcy Court wrongfully interpreted MDS's letter as impliedly

threatening to seize Mr. Cambron's assets and garnish his wages, despite the fact that the true

purpose of MDS's asset investigation was clearly stated in the express language of the letter to

Mr. Cambron. In the letter, MDS expressly stated that the information would be used to

determine Mr. Cambron's ability to repay his debt while also affording Mr. Cambron the

-6-

opportunity to contest the validity of the debt, not that MDS was preparing to take any action
against Mr. Cambron's assets and wages. It is wholly unreasonable to interpret MDS's letter in a
manner that directly contradicts the express, written purpose of the letter in order to create an
implied threat by MDS.

A review of the case law cited by MDS in its Objections reveals that threatening
language used in various debt collection letters that were found to violate the FDCPA contained
much more concrete assertions of intent to take or recommend specific actions against the
debtor. [See MDS's Objections pp. 5-9].

Plaintiff attempts to distinguish Wade v. Regional Credit Assoc., 87 F.3d 1098 (9th Cir.
1996) by confusing MDS's argument as to the implications of this case. For one, in contrast to
Plaintiff's assertion, MDS did not assert in its Objections that Wade stood for the proposition
that if a letter does not contain any explicit threats, it must be found to be informative.[1] Instead,
MDS asserted that Wade stands for the proposition that a letter that does not contain any threats,
express or implied, is merely informative. See id. at 1100 (holding that the collection notice was
not a threat to take action that could not legally be taken in violation of § 1692e(5) because the
least sophisticated debtor would construe the notice as a prudential reminder, not as a threat to
take action). Plaintiff also failed to elaborate on the alleged "drastic factual differences" existing
between Wade and this case because, if anything, the letter at issue in Wade that was held not to
violate the FDCPA contained much stronger language than that contained in MDS's letter and
expressly demanded immediate payment.

---

[1] Specifically, in its Objections, MDS argued that "[i]f a letter does not contain any threatening
language, it is deemed merely informative and therefore, cannot violate [the FDCPA]." [See
MDS's Objections p. 6].

LEGAL_US_E # 75253877.1

Furthermore, in contrast to Plaintiff's assertions, Beiber v. Associated Collection Service, Inc., 631 F. Supp. 1410 (D. Kan. 1986) is not inapposite to the facts of this case. The fact that a third party eventually filed suit in Beiber was only one of many factors considered by that court in determining that a series of letters sent by the defendant, a debt collection agency, to the plaintiff did not violate the FDCPA. See id. at 1416. The court held that one of the letters sent by the defendant did not constitute a threat and was not otherwise deceptive under the FDCPA because it simply advised the plaintiffs that the defendant had requested suit be filed if the debt was not paid and did not expressly state that suit *would* be filed. Id. Similarly, the fact that an interoffice memo sent by the defendant to the plaintiff did not say legal action *would* be taken, but rather, only that permission had been given to legal counsel to take that action meant that the memo was not a threat and also did not violate the FDCPA. Id. While obviously an important factor for some of the letters, in no way was the fact that suit was filed dispositive on whether all of the letters sent to the plaintiff in Beiber violated the FDCPA. Two were rejected outright as not constituting threats at all and both contained much stronger language than MDS's letter.

Moreover, Plaintiff is inaccurate in suggesting that MDS's letter did not state why MDS may seek certain information about Mr. Cambron's assets and instead left Mr. Cambron to wonder why MDS may seek that information, therefore implying some sort of amorphous threat against Mr. Cambron. In truth, MDS's letter expressly stated the exact reason it might seek such information, if available – to determine whether Mr. Cambron could pay his debt. It is simply not a reasonable interpretation of MDS's letter to claim that it left Mr. Cambron to wonder why MDS may seek the information listed in the letter. This is an important factor for this Court to consider as Plaintiff is not necessarily correct that the least sophisticated consumer standard never applies to § 1692e(5) claims. See, e.g., Wade v. Regional Credit Assoc., 87 F.3d 1098,

1099-1100 (9th Cir. 1996) (applying the least sophisticated consumer standard to all claims

arising under § 1692e, including § 1692e(10) and e(5)); Clomon v. Jackson, 988 F.2d 1314, 1318

(2d. Cir. 1993) (same).[2]  While Plaintiff wants this Court to understand the least sophisticated

consumer to be "ignorant" and "unthinking," this understanding is not accurate.  Instead, courts

have carefully preserved the concept of reasonableness when applying the least sophisticated

consumer standard.  Clomon v. Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993) (citing Rosa v.

Gaynor, 784 F. Supp. 1, 3 (D. Conn. 1989) (holding that the FDCPA does not extend to every

bizarre or idiosyncratic interpretation of a collection notice but does reach a reasonable

interpretation of a notice by even the least sophisticated).  "Indeed, courts have consistently

applied the least sophisticated consumer standard in a manner that protects debt collectors

against liability for unreasonable misinterpretations of collection notices."  Clomon, 988 F.2d at

1319.  Even the "least sophisticated consumer" can be presumed to possess a rudimentary

amount of information about the world and a willingness to read a collection notice with some

care.  Id.  Therefore, it is not reasonable for Plaintiff or the Bankruptcy Court to interpret the

purpose of MDS's letter in direct contradiction to the expressed purpose in the letter.  Also, it is

inappropriate for Plaintiff and the Bankruptcy Court to read the letter as threatening to garnish

wages and seize assets when the letter expressly stated it first needed to determine if Mr.

Cambron had sufficient assets to cover his debt before beginning any collection efforts.

 Additionally, Plaintiff's assertion that Mailloux v. Arrow Financial Services, Inc., 204

F.R.D. 38 (E.D.N.Y. 2001) is not essential to the Bankruptcy Court's proposed order is

ludicrous.  [See Plaintiff's Response p. 16-17].  This case provided the sole justification for the

---

[2] This is especially so in light of Plaintiff arguing that the "least sophisticated consumer" would
be confused by the letter and find it "threatening", acknowledging the applicability of this
standard as a consideration in § 1692e(5) claims.  [See Plaintiff's Response p. 16].

Bankruptcy Court's determination that MDS violated § 1692e(5). As discussed in MDS's

Objections, this case is completely inappropriate to be relied upon in this manner. In addition to

the lack of legal reasoning by the court in <u>Mailloux</u> and its lack of precedential value, the court

in <u>Mailloux</u> was asked only to determine if class certification in a FDCPA case was appropriate.

Plaintiff's contention that the court would not have granted class certification "had there been no

FDCPA violation" is utterly ridiculous. In <u>Mailloux</u>, the court specifically acknowledged that it

must take the plaintiff's allegations as true and would not inquire into the underlying merits of

the plaintiff's complaint for the purposes of class certification. 204 F.R.D. at 40. Instead, the

court noted that class certification looks only to whether the proposed class is sufficiently

numerous, whether the class claims involved common questions of law or fact, whether the class

claims are typical in that they arise from the same course of events and involve the same legal

arguments, and whether the class representative will fairly and adequately represents the interests

of the class. <u>Id.</u> at 40- 43. The <u>Mailloux</u> court's "determination" of whether the defendant

violated § 1692e(5) was in the context of determining whether the typicality requirement was

satisfied, and while taking the plaintiff allegations as true for the purposes of class certification

only. <u>Id.</u> at 42. Therefore, this case hardly presents a factually similar circumstance as asserted

by Plaintiff and cannot provide the sole substantiation for the Bankruptcy Court's holding that

MDS violated § 1692e(5).

    In the alternative, as discussed in MDS's objections, should this Court not agree that

<u>Mailloux</u> should have no bearing on the outcome of this case, there is nothing "hyper-technical"

about the distinctions between this case and <u>Mailloux</u>. The letter at issue in <u>Mailloux</u> imparted a

sense of immediacy and urgency to pay that MDS's letter simply does not convey. MDS does

not state that any investigation is imminent or that payment must be received by any specified

LEGAL_US_E # 75253877.1

date. Instead, MDS merely alerted Mr. Cambron to the debt MDS believed he owed, how he could pay the debt at his convenience, and that MDS *may* act to determine if Mr. Cambron could pay his debt at all, depending on what assets MDS's investigation revealed, if any. This is a far cry from the letter in <u>Mailloux</u>, which stated the investigation into what actions will be necessary to recover the plaintiff's past due debt had already begun, that the decision to take adverse actions against the plaintiff already had been made, and that further collection efforts against the plaintiff were imminent. As discussed above, it is the lack of any sense of urgency or immediacy in MDS's letter which relieves it of any liability under the FDCPA. It is also this exact language which Plaintiff fails to contradict beyond merely stating that the Bankruptcy Court's "well-reasoned decision" found the letter to violate the FDCPA, and therefore, it must, regardless of the Bankruptcy Court's lack of support for its holding.

     **D.**    **The Bankruptcy Court Erroneously Determined That MDS's Letter Violated § 1692e(10) Because The Letter Sought To Collect Upon A Time-Barred Debt**

In its proposed order, the Bankruptcy Court expressly stated that "[t]here was nothing in [MDS's] letters that is demonstrably false." [<u>See</u> Proposed Order p. 4]. Therefore, the Bankruptcy Court focused on the purpose of MDS's letter, which it determined was unlawfully to coerce payment of a time-barred debt. [<u>See</u> Proposed Order pp. 7-9]. However, as discussed at length in MDS's objections to the proposed order, under <u>Kimber</u> and its progeny, it is wholly permissible for a debt collector to seek voluntary repayment of a time-barred debt and doing so is not deceptive or misleading under the FDCPA.[3] [<u>See</u> MDS's Objections, § III.B). Therefore,

---

[3] Plaintiff utterly failed to address MDS's argument on this point in the response and instead, merely stated that <u>Kimber</u> was not an "integral part of the Bankruptcy Court decision" when in fact, it constitutes the entire basis for that court's holding that MDS's purpose of attempting to collect upon an allegedly time-barred debt violated § 1692e(10). In light of the fact that <u>Kimber</u>
                  (continued...)

LEGAL_US_E # 75253877.1

even if Mr. Cambron would have felt that he needed to pay his debts in light of MDS's letter, as

long as MDS sought only voluntary repayment and did not resort to legal action against Mr.

Cambron, the letter did not violate § 1692e(10).

## III.    **CONCLUSION**

Based on the foregoing, MDS respectfully requests that this Court amend the Bankruptcy

Court's Proposed Order in accordance with the aforementioned arguments and enter an Order

dismissing Plaintiff's claims against Defendant under the FDCPA, award Defendant its

reasonable and necessary attorney's fees and litigation expenses against Plaintiff, and grant

Defendant such other and further relief as this Court deems appropriate.

Submitted this 29th day of May, 2007.

[Signature Page to Follow]

---

(...continued)

was one of only three cases cited by the Bankruptcy Court, it is difficult to understand Plaintiff's
argument that this case is not important to the resolution of this dispute. [See Plaintiff's
Response pp. 17-18].

LEGAL_US_E # 75253877.1

John G. Parker
(Georgia Bar No. 562425)
Stefanie H. Jackman
(Georgia Bar No. 335652)

*Co-Counsel for Defendant*
*Medical Data Systems, Inc.*

PAUL, HASTINGS, JANOFSKY &
WALKER LLP
600 Peachtree Street, N.E.
Suite 2400
Atlanta, Georgia  30308-2222
Tel. (404) 815-2400
Fax (404) 815-2424

Russel A. McGill (MCG009)
BRUNSON & ASSOCIATES, Attorneys P.A.
301 Broad Street
P.O. Box 1189
Gadsden, AL 35902-1189

*Counsel for Defendant*
*Medical Data Systems, Inc.*

- 13 -

IN THE UNITED STATES DISTRICT COURT
FOR THE ALABAMA MIDDLE DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLIAM C. CARN, III | ) | CASE NO. |
| CHAPTER 7 TRUSTEE, | ) | 1:07-cv-00369-WHA |
| | ) | |
| Plaintiff, | ) | USBC-MDAL CASE NO. |
| | ) | 06-01057-WRS |
| v. | ) | |
| | ) | |
| MEDICAL DATA SYSTEMS, INC. | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of **DEFENDANT'S REPLY TO**

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE REPORT AND**

**RECOMMENDATIONS ISSUED BY THE BANKRUPTCY COURT** by depositing the

same in the United States mail in a postage prepaid envelope addressed to:

David G. Poston, Esq.
Michael Brock, Esq. and
Gary Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330

This _____ day of May, 2007.

_____
Russel A. McGill (MCG009)
BRUNSON & ASSOCIATES, Attorneys P.A.
301 Broad Street
P.O. Box 1189
Gadsden, AL 35902-1189

*Counsel for Defendant*
Medical Data Systems, Inc.

LEGAL_US_E # 75253877.1

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| JAMES R CAMBRON    &<br>WENDY L. CAMBRON, | ) BANKRUPTCY CASE NO :<br>) 05-11879<br>) CHAPTER 7 CASE |
| Debtors. | ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| WILLIAM C. CARN, III.,<br>CHAPTER 7 TRUSTEE, | ) |
| | ) |
| Plaintiff, | ) A.P. #: 06-1057 |
| | ) |
| WENDY CAMBRON, | ) |
| | ) |
| Plaintiff, | ) A P # 06-1058 |
| | ) |
| vs. | ) |
| | ) |
| MEDICAL DATA SYSTEMS, INC.,<br>d/b/a MEDICAL REVENUE SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

---

**NON-CORE FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON REVIEW FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

**SECOND RESPONSE OF WILLIAM C. CARN, III, TRUSTEE IN BANKRUPTCY
ESTATE OF JAMES AND WENDY CAMBRON**

---

David G  Poston, Esq.
Attorney for William C  Carn, III

OF COUNSEL·
Brock & Stout, LLC.
Post Office Drawer 311167
Enterprise, Alabama 36331
Tel:    (334) 671-5555
Fax·    (334) 671-2689

### INTRODUCTION

On April, 5, 2007, the Bankruptcy Court entered its Report and Recommendation in this case. The Bankruptcy Court correctly found that the Defendant's PL1 form debt collection letter violated the Fair Debt Collection Practices Act (hereinafter "FDCPA") 15 U.S.C. § 1692 *et seq.* Although the Bankruptcy Court found the Section 1692e(10) violation to be more egregious than the Section 1692e(5) violation, a **single violation** is enough to trigger liability under the FDCPA. *Rivera v. Amalgamated Debt Collection Servs.*, 2006 U.S. Dist. LEXIS 75001 (D. Fla 2006) ("any violation of the statute establishes civil liability    "); *Tyrell v. Robert Kaye & Assocs.*, *P.A.*, 2004 U.S. Dist. LEXIS 16263 (D. Fla. 2004) ("A single violation of Section 1692e is therefore sufficient to establish civil liability ... [citations omitted]")

The Defendant cannot escape the tone created by its form debt collection letter. Buzz words such as "may" and "if," do not save the Defendant from liability under the FDCPA. When the consumer receives the PL1 letter, he is immediately bombarded with a host of assets available to the Defendant for its use in determining "your ability to repay this debt." The tone, in and of itself, is certainly intimidating to the least sophisticated consumer and leads to a wide variety of possibilities. Endless confusion, deception, and falsity abound with the Defendant's liberal use of the host of assets listed on the PL1 debt collection letter. Furthermore, the Defendant had no intention of seeking the available information. As the Defendant's representative testified, the information was available but too costly to the Defendant. That is, the information was available and the Defendant did not seek to obtain such information.

### SUMMARY OF ARGUMENT

The Plaintiff's argument may be summarized as follows:

1.    Conceivably, the Defendant could violate Section 1692e(10) without violating Section 1692e(5). That is, the claims arising from these subsections are mutually exclusive

2.    The tone of the Defendant's PL1 form debt collection letter is ominous and threatening.
Unlike the Defendant's characterization that the letter is merely informative, the letter in
fact exists solely for the purpose of collecting a debt.

3.    The text and meaning of 15 U.S.C § 1692e(5) does not exclusively require the threat to
take legal action. By its specific terms, Section 1692e(5) requires a threat to take any
action: (a) that cannot legally be taken **or** (b) that is not intended to be taken

4.    The Bankruptcy Court specifically held that the Defendant's form debt collection letter
was false, that the Defendant's form debt collection letter was deceptive and that the
Defendant's form debt collection letter was misleading

5.    The "demand" component in the Defendant's argument is immaterial to the outcome of
this matter. Likewise, the decision in *Kimber v. Fed. Financial Corp* , is also irrelevant to
the outcome of this matter. 668 F  Supp  1480 (M.D. Ala. 1987)

### ARGUMENT

A.    <u>The Defendant's violation of 15 U.S. §§ 1692e(10) arises separately and destinctly from
its violation of 15 U.S.C. § 1692e(5).</u>

In the Bankruptcy Court's proposed findings of fact and conclusions of law, Judge

Sawyer addressed 15 U.S.C. § 1692e(10) separately and independently of 15 U S C  §

1692e(5). Under the FDCPA, Section 1692e(10) and Section 1692e(5) stand independent of

one another  The plain reading of Section 1692e provides a laundry list of sixteen items as

**examples** of conduct that violate the FDCPA. 15 U.S.C § 1692e  Section 1692e(5) is very

concise. A debt collector violates e(5) by first making a threat to take any action which (1)

cannot legally be taken; **or** (2) that is not intended to be taken  15 U.S.C § 1692e(5)  By its

very terms, Section 1692e(10) is broader in scope because it prohibits not only false or

deceptive threats, but also "any false representation or deceptive means " *Id*  The Defendant

argues that the Section 1692e(10) violation must necessarily piggy-back the Section 1692e(5)

violation. To do so would limit the scope of the FDCPA as enacted by Congress

The Federal Trade Commission (FTC) is the primary enforcement agency of the FDCPA  15 U.S.C. §§ 1692l(a), 1692m. Congress specifically charged the FTC with enforcement and administration of the FDCPA. *See* 15 U.S.C  § 1692l. The FTC developed a Staff Commentary (hereinafter "the Commentary") on the FDCPA  53 Fed  Reg  50097-50110 (Dec  13, 1988). Although the FTC's construction of the FDCPA is not binding, its interpretation should be accorded considerable weight. *Chevron, U.S.A. v Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). Likewise, the Eleventh Circuit adopted the policy as outlined by the United States Supreme Court. *Pickens v. Collection Servs  of Athens, Inc*, 165 F. Supp. 2d 1376, 1381 (M.D. Ga. 2001).

The Commentary views Section 1692e(5) in a manner indicative of the plain text of that subsection, focusing almost entirely upon threats, the legality of the actions threatened, and the intent of the debt collector to take those actions  53 Fed  Reg  50106(1988)  The Commentary sets forth a well-reasoned explanation of the actions allowed and the actions prohibited.

As to Section 1692e(10), the Commentary states that "[t]he prohibition is so comprehensive that violation of any part of [Section 1692e] will usually also violate subsection 10." *Id.* It also states that "[Section 1692e(10)], which prohibits the 'use of any false representation or deceptive means' by a debt collector, is particularly broad and encompasses virtually every violation, including those not covered by the other subsections." *Id.* at 50105 Although each of the enumerated violations of Section 1692e may be encompassed within the scope of Section 1692e(10), it does not stand to reason that a violation of Section 1692e(10) requires a piggy-back violation of other Section 1692e components. Nowhere in the Commentary, however, does it state that claims arising from violations of multiple subsections are in any way dependant upon one another. On the contrary, it is clear that the Commentary views each and every violation as individual.

Defendant relies on *Robinson v. Transworld Systems Inc.*, for the proposition that the Plaintiff's Section 1692(e)10 claim is dependant upon Plaintiff's Section 1692(e)5 claim  876 F Supp. 385 (N D.N.Y 1995)  Although the Defendant relies heavily on the *Robinson* decision, *Robinson* has never been cited for the proposition that a Section 1692e(10) violation is co-dependent on a Section 1692e(5) violation  The cases citing *Robinson* evaluate (e)5 and e(10) claims individually.

In *Davis v. Commercial Check Control, Inc.*, 1999 U.S. Dist  LEXIS 1682 (N D  Ill  1999), a case citing *Robinson* for other points of law, independently evaluated the Section 1692(e)5 and (e)10 claims.  The *Robinson* court also reasoned that "[a]s the statements allege action that is not intended, the statements are also deceptive, thus violating Section 1692e and Section 1692e(10)." *Id.*  The *Robinson* court determined the validity of each violation using separate tests, without specific referral to the Section 1692e(5) claim  *Id.* at 18

The majority of courts evaluate Section 1692e(5) and e(10) claims separate and distinct from one another.  *See U.S. v. National Financial Services, Inc.*, 98 F 3d 131, 135-139 (4th Cir 1996); *Withers v. Eveland*, 988 F. Supp  942, 946-947 (E D. Va. 1997); *Davis v. Commercial Check Control, Inc.*, 1999 U.S. District LEXIS 1682, 19-20(N D. Ill. 1999); *Raimondi v McAllister & Associates, Inc.*, 50 F  Supp. 2d 825, 827 (N.D  Ill  1999); *Ferguson v. Credit Mgmt. Control, Inc.*, 140 F. Supp. 2d 1293, 1299-1303 (M.D  Fl  2001)

In *National Financial Services*, the court evaluated the Section (e)5 and (e)10 violations arising from the exact language and determined each violation on its own merits  *National Financial*, 98 F.3d at 135-139  The court in *National* held that "collection notices violate Section 1692e(5) if (1) a debtor would reasonably believe that the notices threaten legal action; and (2) the debt collector does not intend to take legal action. *Id.* at 135.  In contrast, the court undertook an entirely separate review of the Section 1692e(10) claim, finding in that case that "the test is the capacity of the statement to mislead; evidence of actual deception is

unnecessary." *Id.* at 139. The decision in *National Financial Services* serves as an example as to the distinction between subsections e(5) and e(10).

The Defendant's argument is not supported by the plain meaning of the FDCPA  The Defendant's argument fails because it attempts to reduce the scope of the e(10) coverage to a narrow reading of the e(5) coverage. Instead, as Congress intended, both e(5) and e(10) stand in concert with one another.

B.    The overall tone of the Defendant's form PL1 debt collection letter is misleading and creates a sense of falsity and deception to the least sophisticated consumer

When confronted with the Defendant's PL1 form debt collection letter, the unsophisticated consumer is bombarded with a host of assets at the Defendant's disposal  As such, the overall tone of the letter in and of itself, presents false, deceptive, and misleading representation or means in connection with the collection of a debt. *See Becker v Montgomery, Lynch*, 2003 U.S. Dist  LEXIS 24992 (N.D. Oh  2003); *Rutyna v. Collection Accounts Terminal, Inc.*, 478 F. Supp. 980, 982 (N D  Ill. 1979)  One court held that "[e]ven a disclaimer such as 'NO LEGAL ACTION HAS BEEN OR IS NOW BEING TAKEN AGAINST YOU' does not preclude liability, if in the context of the letter the debt collector is threatening to sue." *Bentley v. Great Lakes Collection Bureau*, 6 F 3d 60, 63 (2d Cir  1993)

The legal standard in determining whether the Defendant's debt collection letter was false, deceptive or misleading under Section 1692e(10) is whether the "least sophisticated consumer" could have been deceived or misled. The "least sophisticated consumer" is "the public ... that vast multitude which includes the ignorant, the unthinking, and the credulous." *Jeter v. Credit Bureau*, 760 F.2d 1168, 1172-1173 (11th Cir. 1985)  *See also Clomon v Jackson*, 988  F.2d 1314, 1318 (2d Cir. 1993) (defining the least sophisticated consumer as a naive, credulous, gullible, ignorant, unthinking, person of "below-average sophistication or intelligence" "with a rudimentary  amount of information about the world and a willingness to

read a collection notice with some care.")

Defendant's PL1 form debt collection letter to the Plaintiffs state in relevant part, as follows:

> "Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is·
>
> 1 ) Real estate ownership/equity    4.) Your source of income
> 2.) Personal property assets    5 ) Automotive ownership
> 3 ) Savings, checking balances    6 ) Verification of employment"

See attached Exhibit "1", Defendant's PL1 form debt collection letter

The Plaintiff have steadfastly maintained that the tone of the Defendant's collection letter was one of urgency and intimidation   Immediately, the unsophisticated consumer is presented with a host of assets at the Defendant's beckon call   On its face, the letter contains a sense of imminence. The Defendant goes so far to include the phrase "now" and "must "   The very inclusion of "now" and "must" leads to a strong sense of urgency in the collection letter   Alternatively, the Defendant argues that all of its ills are cured by the word "may "   In defining the word "may," one court found "that use of the word 'may' does nothing to cure the false impression that judgment has been obtained." *Gasser v  Allen County Claims and Adjustments Inc.*, 1983 U.S. Lexis 20361 (N. D  Oh. 1983).

In following the Defendant's rationale through to its final conclusion, all that is gained from the word "may," is the possibility of two possible outcomes. A debt collection letter is deceptive where it can be reasonably read to have multiple meanings, one of which is inaccurate. *Brown v  Card Serv. Ctr.*, 464 F.3d 450 (3rd Cir  2006). The holding in *Brown* echoes the FTC Commentary, which states·

> "A debt collector may not state that he will take an action unless he intends to take the action when the statement is made, or ordinarily takes the action in similar circumstances."

53 Fed  Reg  50106 (1988).

The Defendant does not escape liability by including the word "may" in its PL1 collection letter  In fact, the word "may" should not be viewed in isolation.  In reality, the phrase states, "may, if available."  The message conveyed by this phrase is that the Defendant will seek information obtainable as to all of the enumerated assets.

In this instance, information regarding specific assets are obtainable through public records.  Nonetheless, the Defendant took no steps to obtain this information  The Defendant's corporate representative, Gary Ball, testified that information regarding the Plaintiffs' real estate ownership was available  Trial Transcr  of Proceeding 22·13-15 and 23·20-22 (March 15, 2007) (attached hereto as Exhibit "2").  Gary Ball further testified that the Defendant did nothing over the preceding four years to determine the Plaintiff's ownership in real estate.  *Id.* at 23·23-25  Mr. Ball went on to testify that the Defendant did not attempt to obtain information on any of the listed assets in regard to the Plaintiff  *Id*  at 24·13-24

In *Brown v. Card Services Center*, the Third Circuit found that a collection agency that asserted that it could take an action that it had no intention of taking or had never or rarely taken in the past would constitute a deceptive practice under the FDCPA.  464 F.3d 450, 455 (3d Cir. 2006).  The same is the case in the current action.  Defendant had the Cambrons' account for four years and never sought the information listed in their collection letter during that time.

The phrase "may be seeking, if available" is false as it relates to the listed assets  The Defendant never sought these assets, despite the availability  As such, the collection letter is false and misleading and therefore in violation of Section 1692e(10)  There is nothing in the facts of this case to indicate that the Defendant ever intended to seek these assets.

The collection letter sent to the Cambrons also listed a number of assets which in total comprises all, or nearly all of the Cambrons' possessions and income  The Defendant's letter

stated that Defendant was seeking information regarding these assets  Under the "least

sophisticated consumer" approach, it is reasonable to believe that the assets are listed to

coerce payment  It is apparent that the "least sophisticated consumer" could understand the

tone of this letter to be one of coercion, urgency, and intimidation

C    15 U.S.C. § 1692e(5) does not exclusively require a threat to take legal action.  Instead,
     e(5) is violated if a Defendant threatens to take action not intended

         In its response, the Defendant states that the Defendant's PL1 letter does not "state or

imply that legal action against Mr. Cambron was imminent in any way "  Def 's Response at 2

The Defendant goes on to argue that the Defendant's "position is that its letter did not contain

any legal threats or threaten other adverse consequences against Mr. Cambron "  Def 's

response at 2-3.

         15 U.S.C. § 1692e(5) subjects a debt collector to a liability if it threatens to take any

action (1) that cannot legally be taken; or (2) that is not intended to be taken  Section 1692e(5)

prohibits both "[t]he threat to take any action that cannot legally be taken" and "[t]he threat to

take any action...that is not intended to be taken."  The imminence of legal action is immaterial

Also, the lack of "legal threats" and "adverse consequence" have no bearing on claims brought

under Section 1692e(5).  The Bankruptcy Court found the Defendant's form PL1 debt collection

letter contained a threat and that the Defendant had no intention of taking the action stated; to-

wit: The review of available information pertaining to the Debtors' personal assets.

D.    The Bankruptcy Court specifically held that the Defendant's PL1 form debt collection
      letter was false, deceptive and misleading.

         In the Defendant's response, the Defendant states that "[t]he Bankruptcy Court

expressly acknowledged there was nothing deceptive or misleading "  Defendant's response at

2. Certainly, this Honorable Court is capable of reviewing the Bankruptcy Court's Report and

Recommendation  The Plaintiff, however, draws this Court's attention to page four of the

Bankruptcy Court's Report and Recommendation when it found that "the purpose and surely

the effect of these letters, is to coerce payment by giving a false impression that the Debtor's

wages and assets are in jeopardy " The Bankruptcy Court goes on to state unequivocally, that

"[t]he undersigned finds that the language in question is deceptive and that the explanation

advanced by Medical Data is unconvincing. An unsophisticated consumer would be deceived

by the language in the letter." Report and Recommendation at 8. The Bankruptcy Court then

states that "the Court finds that the communication from Medical Data is misleading " Id  The

Bankruptcy Court's Report and Recommendation speaks for itself

E.    The Defendant's PL1 letter specifically makes a demand for payment

        The Defendant strains mightily to convince this Honorable Court that the Defendant's

PL1 form debt collection letter does not demand payment   Although the demand for payment is

not essential or material to this Court's finding, the letter speaks for itself  Again, this

Honorable Court can review that portion of the PL1 letter that states, "Please make your check

or money order payable to Medical Revenue Services." Defendant's PL1 letter. The PL1 letter

goes on to state, "This communication is from a debt collector and is an attempt to collect a

debt." Certainly the phrase "this is an attempt to collect a debt" is akin to a demand for

payment.

F.    The Bankruptcy Court's citation of *Kimber v. Fed. Financial Corp., 668 F. Supp. 1480*
      *(M.D. Ala. 1987)*, is not essential nor relevant to the outcome of this proceeding

        In its Report and Recommendation, the Bankruptcy Court cited the Middle District of

Alabama decision of *Kimber v. Fed  Financial Corp.*, 668 F  Supp  1480 (M D  Ala  1987)  The

*Kimber* decision was cited in the context of the Bankruptcy Court providing examples of e(10)

violations. The Bankruptcy Court did not find *Kimber* as a central component of its finding of

fact and conclusions of law. The *Kimber* decision was for illustrative purposes only. The issue

in this case is not whether the Defendant has a right to collect upon a time-barred debt.

Clearly, the *Kimber* decision does not hold that a debt collector is prohibited from collecting on a time-barred debt. The issue before this Honorable Court is whether the Defendant's PL1 form debt collection letter violated 15 U S C § 1692e(10) or e(5)

### CONCLUSION

The Bankruptcy Court correctly applied 15 U S.C § 1692e to the Defendant's debt collection letter by finding the letter violates Section 1692e(5) and e(10)   The Bankruptcy Court's Report and Recommendation should be adopted in total and enter judgment in favor of the Plaintiff.

Respectfully submitted,

BROCK & STOUT

David G. Poston, Esq.
Walter A. Blakeney, Esq
Michael D. Brock, Esq
Gary W. Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330
Tel· (334) 671-5555
Fax· (334) 671-2689
E-mail: christal02@circlecitylaw.com

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have this date served a copy of the foregoing upon Russel A. McGill, Esq , Attorney for Defendant, via electronic mail at rumcgi@sbswlegal.com, this __15th__ day of June, 2007.

David G. Poston, Esq.

Case 1:07-cv-00369-WHA   Document 7   Filed 06/15/2007   Page 12 of 12

**Medical Revenue Services**
P.O. Box 1149
Sebring FL 33871

| | |
|---|---|
| Reference | Total Amount Due |
| F9708100109 | $1874.59 |
| Toll Free Number | |
| (800) 315-6050 | |

CHECK CARD USING FOR PAYMENT



CARD NUMBER

AMOUNT      EXP DATE

SIGNATURE

**RETURN SERVICE REQUESTED**
04/19/2005

MAKE CHECK PAYABLE AND REMIT TO:

red?laxA12DP0A107KE-014004

JAMES R CAMBRON
PO BOX 464
DALEVILLE AL 36322-0464

Medical Revenue Services
PO BOX 1149
SEBRING FL 33871-1149

Page 1 of 1

☐ CHECK HERE IF ADDRESS OR INSURANCE INFORMATION IS
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE

▼ DETACH HERE ▲ AND RETURN TOP PORTION WITH YOUR PAYMENT

---

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:

1.) Real estate ownership/equity     4.) Your source of income
2.) Personal property assets        5.) Automobile ownership
3.) Savings, checking balances    6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to your account, include the reference number with your payment. We also accept "check by telephone" for your convenience. If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb

| Account # | Client Name | Service Date | Balance | Patient Name |
|---|---|---|---|---|
| F9708500163 | Flowers Hospital | 03/28/1997 | 307.88 | Lehr, Timmy J |
| F9708100109 | Flowers Hospital | 03/22/1997 | 1386.55 | Lehr, Timmy J |
| F0307000545 | Flowers Hospital | 03/13/2003 | 58.77 | Cambron, James R |
| F0402500112 | Flowers Hospital | 01/26/2004 | 55.74 | Cambron, James R |
| F0402400129 | Flowers Hospital | 01/24/2004 | 65.65 | Cambron, James R |

TOTAL BALANCE: $1874.59



PL1

**IN THE UNTIED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF ALABAMA
(MEDICAL REVENUE ADVERSARY PROCEEDINGS)**

| PLAINTIFF | A.P. NUMBER |
|---|---|
| MARIA Y. BEAN | A.P. #: 06-1093 |
| JONITA L. BERRY | A.P. # 06-1179 |
| SHNEQUA P. BONE | A.P. # 06-1206 |
| ROY BOSWELL | A.P.# 06-1088 |
| JERRY D. BROADWAY | A.P. #: 06-1085 |
| JEFFERY DIXON | A.P. #: 06-1165 |
| JOHN R. DYKES | A.P. #: 06-1094 |
| MATTHEW ELLSWORTH | A.P. #: 06-1089 |
| LERINDA EVANS | A.P. #: 06-1196 |
| ROBIN & CHARLES FOWLER | A.P. #: 06-1166 |
| PHALA GAY GULLEDGE | A.P. # 07-1030 |
| MICHAEL JOHNSON | A.P. # 06-1218 |
| AARON S.KELLY | A.P. #: 06-1164 |
| LORRIAN G.LAMPLEY | A.P. #: 06-1201 |
| SHARON MCCARTER | A.P. #: 06-1172 |
| LORETTA MCCLURE | A.P. #: 06-1174 |
| RICHARD B. PARRISH | A.P. #: 06-1163 |
| COURTNEY D. RAINWATER | A.P. # 06-1214 |
| CHELCIE N. RHODES | A.P. # 06-1225 |
| TRICIA D. VAUGHN | A.P. # 06-1192 |
| GREGORY L. WILLIAMS | A.P. # 07-1044 |
| CHRISTOPHER S. WINDHAM | A.P. #: 06-1171 |

**UNITED STATES DISTRICT COURT ALABAMA MIDDLE DISTRICT**

| PLAINTIFF | CASE NUMBER |
|---|---|
| LETICIA G. ANDREWS | 1:06-CV-00729 |
| CYNTHIA  F. TONEY | 2:06-CV-00949 |