IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

IN RE:                                          )
                                                )
CYNTHIA F. TONEY, A/K/A                         )
CYNTHIA F. PASSMORE,                            )
                                                )
        PLAINTIFF,                              )    CASE NUMBER: 2:06-CV-949
                                                )
vs.                                             )    **JURY DEMAND**
                                                )
MEDICAL DATA SYSTEMS, INC.,                     )
D/B/A MEDICAL REVENUE SERVICES, INC.,           )
                                                )
        DEFENDANT.                              )

## PLAINTIFF'S MOTION TO RESET DISPOSITIVE MOTION DEADLINE

COMES NOW, the Plaintiff, by and through the undersigned attorney, and moves this

Honorable Court to reset the dispositive motion deadline.  As grounds for this motion, the Plaintiff

states as follows:

1.    The Plaintiff filed the instant civil action on October 20, 2006.

2.    This civil action pertains to the Defendant's PL1 debt collection letter which is

      affixed to the Complaint and attached hereto as Exhibit "1."

3.    The Court entered a Uniform Scheduling Order on December 19, 2006.

4.    As part of the Uniform Scheduling Order, the Court set October 25, 2007 as the last

      day for any party to file dispositive motions.

5.    The instant case is founded in large part on the content of the Defendant's form

      debt collection letter identified as the "PL1" letter (Exhibit "1").  Specifically, the

      Plaintiff asserts that the "PL1" letter violates the Fair Debt Collection Practices Act.

6.    The undersigned and co-counsel previously tried a consolidated FDCPA action

      against the Defendant based solely on the PL1 letter. *Carn v. Medical Data*

*Systems, Inc., d/b/a Medical Revenue Services, Inc.* Adversary Proceeding case number 07-1057 and *Carn v. Medical Data Systems, Inc., d/b/a Medical Revenue Services, Inc.* Adversary Proceeding case number 07-1058, United States Bankruptcy Court, Middle District of Alabama.

7.     In resolution of the consolidated action, Judge William Sawyer issued a Report And Recommendation on April 5, 2007.  The Report and Recommendation is attached hereto as Exhibit "2."

8.     The Defendant objected to the Report and Recommendation in accordance with Federal Rule of Bankruptcy Procedure 9033(b).

9.     Because of the Defendant's Objection, the Report and Recommendation was forwarded to the United States District Court for the Middle District of Alabama, for a *de novo* review upon the record.  FED. R. BANKR. PRO. 9033(d).

10.     On December 4, 2007, the Honorable Harold W. Albritton entered a final judgment against the Defendant in the consolidated cases of *Carn v. Medical Data Systems, Inc., d/b/a Medical Revenue Services, Inc.* case number 1:07-cv-369-WHA and *Carn v. Medical Data Systems, Inc., d/b/a Medical Revenue Services, Inc.* case number 1:07-cv-370-WHA.  Furthermore, Judge Albritton, after conducting a *de novo* review of the record, overruled the Defendant's objection to Judge Sawyer's proposed findings and conclusions.  A copy of Judge Albritton's Memorandum Opinion is attached hereto as Exhibit "3."  A copy of the Final Judgement is attached hereto as Exhibit "4."

11.     In the Court's Memorandum Opinion regarding the PL1 debt collection letter, which is the primary basis of the instant lawsuit, Judge Albritton held that the PL1 collection letter violated the Fair Debt Collection Practices Act.

12.    Because of Judge Albritton's findings and conclusions in the matter of *Carn v.*

*Medical Data Systems, Inc., d/b/a Medical Revenue Services, Inc.* case numbers

1:07-cv-369 and 1:07-cv-370,  the Plaintiff requests this Honorable Court to reset

the deadline for filing dispositive motions.

13.    If permitted, the Plaintiff will assert a motion for summary judgment based upon

Judge Albritton's findings and conclusions.

14.    In the instant case, the trial has been stayed in accordance with this Honorable

Court's Order dated November 26, 2007, and identified on the record as Docket

Entry 37.

WHEREFORE, the Plaintiff moves this Honorable Court to reset the deadline for filing

dispositive motions and for all other relief that is just.

Respectfully submitted,

BROCK & STOUT

David G. Poston, Esq.
Walter A. Blakeney, Esq.
Michael D. Brock, Esq.
Gary W. Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330
334-671-5555
334-671-2689 Facsimile
Email: christal@circlecitylaw.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have this date served a copy of the foregoing upon
Stefanie H. Jackman, Esq., and J. Kirkman Garrett, Esq., Attorneys for Defendant, via electronic
mail at stefaniejackman@paulhastings.com and jkgarrett@csattorneys.com, this 14th day of
DEC        , 2007.

David G. Poston

**EXHIBIT "1"**

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:

1.) Real estate ownership/equity
2.) Personal property assets
3.) Savings, checking balances

4.) Your source of income
5.) Automobile ownership
6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to your account, include the reference number with your payment. We also accept "check by telephone" for your convenience. If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb

| Account # | Client Name | Service Date | Balance | Patient Name |
|-----------|-------------|--------------|---------|--------------|
| E0323100026 | Medical Center Enterprise | 08/19/2003 | 55.00 | Passmore, Cynthia F |
| E0333200036 | Medical Center Enterprise | 11/28/2003 | 75.00 | Passmore, Cynthia F |
| E0322400161 | Medical Center Enterprise | 08/12/2003 | 447.65 | Passmore, Cynthia F |

TOTAL BALANCE: $577.65

EXHIBIT "2"

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re

JAMES R. CAMBRON and
WENDY L. CAMBRON,

      Debtors.

Case No. 05-11879
Chapter 7

WILLIAM C. CARN, III,
BANKRUPTCY TRUSTEE,

      Plaintiff,

  v.

MEDICAL DATA SYSTEMS, INC.,

      Defendant.

Adv. Pro. 06-1057

WILLIAM C. CARN, III,
BANKRUPTCY TRUSTEE,

      Plaintiff,

  v.

MEDICAL DATA SYSTEMS, INC.,

      Defendant .

Adv. Pro. 06-1058

## REPORT AND RECOMMENDATION OF THE UNITED STATES BANKRUPTCY JUDGE WILLIAM R. SAWYER

These consolidated Adversary Proceedings came before the Court for trial on March 15,

2007.  Plaintiff William C. Carn, III, the Trustee in bankruptcy, was present by counsel David G.

Poston and Michael Brock.  Defendant Medical Data Systems, Inc., was present by its Chief

Operating Officer Gary Ball and by counsel Russell McGill.  The parties have filed briefs which

the undersigned has found helpful. (Adv. Pro. No. 06-1057, Docs. 30, 32). The Court heard

evidence and the arguments of counsel and took the matter under advisement.

## I. PROPOSED FINDINGS OF FACT

On April 19, 2005, Medical Revenue Services, a unit of Defendant Medical Data

Systems, Inc., wrote James R. Cambron a letter demanding payment of medical bills totaling

$1,875.59. (Pl.'s Ex. A).[1] Two of the five individual debts allegedly owed were for services

rendered at Flowers Hospital in March of 1997, more than eight years prior to the date of the

letter. This is significant in that the statute of limitations to collect an unsecured debt in

Alabama is only six years. Thus, of the $1,875.59 allegedly owed, $1,694.23 was uncollectible

because the statute of limitations had expired.

On May 24, 2005, Medical Revenue Services wrote Wendy L. Cambron an almost

identical collection letter as that sent to James Cambron. The letter addressed to Wendy

Cambron demanded payment of a $175.00 medical bill. (Pl.'s Ex. B). The debt was for services

allegedly rendered at Flowers Hospital on August 27, 2003.

Both letters contained the same opening paragraph. The first paragraph states as follows:

> Medical Revenue Service is a collection agency, retained to represent
> the below named creditor. Since you have failed to pay this
> obligation in full, we now must determine your ability to repay this
> debt. The information we may be seeking, if available, to determine
> what further collection effort to take is:
>
> 1.) Real estate ownership/equity     4.)  Your source of income
> 2.) Personal property assets         5.) Automobile ownership
> 3.) Savings, checking balances       6.) Verification of employment

---

[1] The full text of the letters are provided in an Appendix to this Memorandum.

(Pl.'s Exs. A, B).

The Plaintiff contends that this communication is misleading in that it implies that nonpayment of the bill will result in the seizure of property or garnishment of wages. As the creditor had not obtained judgment on the debts in question, and as the debts were unsecured obligations, the creditor had no immediate right to take any action with respect to the Cambrons' wages or property. Indeed, about 90% of the amount allegedly owed was more than six years old and therefore, uncollectible as a matter of law. With respect to the 10% of the debt which was not stale, the evidence showed that Medical Data had no intention to take that action. Indeed, the evidence is clear that it was the intention of Medical Data to attempt to make telephonic contact with the Cambrons and press them to pay these debts. If those efforts were unsuccessful, the debt was referred back to the original creditor, which in this case was Flowers Hospital.

Medical Data has its principal office in Sebring, Florida, and describes itself as a "secondary" debt collector. That is, it does not receive referrals of debts until collection has first been attempted by another agency. Its efforts to collect debts appear to consist of two things. First, it sends a letter and then it follows up with telephone calls. Gary Ball, Medical Data's Chief Operating Officer, testified that they would not send the letters unless it was required by the Fair Debt Collection Practices Act, as he feels that the most effective means of collecting debts is by way of the telephone.

In response to questions about collecting a debt after expiration of the statute of limitations, Ball testified that he felt that the debtors have a moral obligation to repay a debt which survives the statute of limitations. Ball does not believe that he has any obligation to

disclose the fact that the debts he is attempting to collect are beyond the statute of limitations. Nor apparently, does he believe that he must tell debtors that he may not seize their property until after he takes judgment, an action he has no intention to take.

The question of whether the first paragraph of the letters in question is deceptive is a close one. There is nothing in the letters that is demonstrably false. Ball's claim that information on the debtors' wages and property is needed to evaluate further collection efforts is not, in and of itself, wholly implausible. However, there are several troublesome facts here. Medical Data did not order credit reports or consult property records, state motor vehicle records, or other sources which would have provided the same information. In the experience of the undersigned, financially stressed individuals frequently do not voluntarily provide such information unless legally obligated to do so. Moreover, when such information is provided by an uncounseled debtor, the information is frequently incomplete or inaccurate. Ball testified that Medical Data mails approximately 1.8 million such letters each year. However, Medical Data provided no evidence as to how often debtors respond to such letters with accurate information. Given the evidence adduced at trial, it strains credibility to believe that the true purpose of the language in question is to obtain accurate information on a debtors' assets and wages. Rather, it appears that the purpose, and surely the effect of these letters, is to coerce payment by giving a false impression that the debtors' wages and assets are in jeopardy.

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  *Procedural Setting*

This is an action under the Fair Debt Collection Practices Act.  15 U.S.C. § 1692k.  The

Plaintiff seeks damages in the amount of $1,000.00 in each Adversary Proceeding, plus

attorney's fees and costs.  15 U.S.C. § 1692k(a).

James R. Cambron and Wendy L. Cambron filed a joint petition in bankruptcy pursuant

to Chapter 7 of the Bankruptcy Code on September 8, 2005.  (Case No. 05-11879, Doc. 1).  The

claims of James and Wendy Cambron are property of their bankruptcy estates.  11 U.S.C. § 541.

As these claims are property of the estate, this Court has jurisdiction to hear these Adversary

Proceedings pursuant to 28 U.S.C. § 1334.  These claims are "related to" the Cambrons'

bankruptcy filing.  William C. Carn, III, the Chapter 7 Trustee, has been substituted as named

Plaintiff for James and Wendy Cambron.[2]

In general terms, an action is a core proceeding if it is one that could not be brought but

for the existence of a bankruptcy case.  28 U.S.C. § 157(b); see also, The Whiting-Turner

Contracting Co. V. Electric Machinery Enterprises, Inc. (In re Electric Machinery Enterprises,

Inc.), __ F.3d __ , 2007 WL 548781 (11th Cir. Feb. 23, 2007) (holding that a proceeding is core

"if the proceeding is one that would arise only in bankruptcy").  As these Fair Debt Collection

Practices Act claims do not depend on a bankruptcy filing for their existence, these are not core

proceedings.  As these are non-core proceedings, the undersigned Bankruptcy Judge makes

---

[2]  The Court conditionally dismissed Adversary Proceeding No.06-1057 on the grounds
that it had not been brought by the proper party in interest.  (06-1057, Docs. 9, 10).  In response,
the Chapter 7 Trustee William C. Carn, III, entered the case as Plaintiff.  (06-1057, Doc. 11).  As
the same reasoning applies to Adversary Proceeding No. 06-1058, Trustee Carn is likewise
substituted as named Plaintiff in Adversary Proceeding No. 06-1058.

proposed findings of fact and conclusions of law in accordance with the provisions of 28 U.S.C.

§ 157(c)(1) and directs the Clerk of the Bankruptcy Court to file the same with the District

Court.  By way of a separate order, a schedule for the filing of objections pursuant to Rule 9033,

FED. R. BANKR. P. is established.

### B. FDCPA Claims

The Plaintiff makes claims under both 15 U.S.C. § 1692e(5) and (10).  While the same

set of facts support each claim, the undersigned with analyze the claims separately.  Although

the Court concludes that the Plaintiff has established both claims, it will discuss the e(10) claim

first because, in its view, it is the stronger claim.

### 1. The § 1692e(10) Claim[3]

Congress has determined that "there is abundant evidence of the use of abusive,

deception, and unfair debt collection practices by many debt collectors.  Abusive debt collection

practices contribute to the number of personal bankruptcies, to marital instability, of the loss of

jobs, and to invasions of individual privacy."  15 U.S.C. § 1692(a).  Congress further stated that

"it is the purpose of this subchapter to eliminate abusive debt collection practices by debt

collectors."  15 U.S.C. § 1692(e).  In furtherance of this purpose, Congress enacted the "Fair

Debt Collection Practices Act," which provides, in part, as follows:

---

[3] For purposes of clarity, the claims made pursuant to 11 U.S.C. § 1692e(10) will be referred to as the e(10) claims, and the claims made pursuant to 11 U.S.C. § 1692e(5) will be referred to as the e(5) claims.  The e(5) claims are considered in Part II(B)(2) below.

> A debt collector may not use any false, deception, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

The issue here is whether the letters in question are deceptive. The United States Court of Appeals for the Eleventh Circuit has held that courts making this determination should use the "least sophisticated consumer" standard. Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985).

> That law was not "made for the protection of experts, but for the public–that vast multitude which includes the ignorant, the unthinking and the credulous," and the "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.

Id. at 1172-73 (internal citations omitted); see also, Kimber v. Fed. Financial Corp., 668 F.Supp. 1480, 1487-89 (M.D. Ala. 1987) (Thompson, J.) (holding that bringing suit to collect a debt barred by the statute of limitations was deceptive within the meaning of the Fair Debt Collection Practices Act); Thompson v. D.A.N. Joint Venture III, L.P., 2007 WL 496754 (M.D. Ala. Feb. 13, 2007) (Moorer, Mag. J.) (to same effect).

The Plaintiff argues that the language in question is deceptive because it falsely implies that the debtors' assets and wages may be in jeopardy. They argue that the purpose of this language is to unlawfully coerce payment. Gary Ball testified that the purpose of this language

was to attempt to obtain information on the debtors, reasoning that debtors who are employed and have assets are more likely to pay their debts. The undersigned finds that the language in question is deceptive and that the explanation advanced by Medical Data is unconvincing. An unsophisticated consumer would be deceived by the language in the letters.

A debtor with competent counsel would know that a debt is uncollectible if the statute of limitations has run. A counseled debtor would also know that the holder of an unsecured claim may not seize property until judgment has been taken in a court of law. Thus, the ambiguity in the first paragraph of the collection letters would cause no harm to a properly counseled debtor. However, the law is clear that the Court, in determining whether a given communication is misleading, for purposes of an e(10) claim, must apply the "least sophisticated consumer" standard. Applying that standard here, the Court finds that the communication from Medical Data is misleading. An unsophisticated consumer would conclude that his wages and property are in jeopardy and for that reason, would be coerced into paying the debt in violation of the Fair Debt Collection Practices Act.

Medical Data advanced an argument that the language in question is not deceptive. Ball testified that the information as to wages and property is useful to Medical Data in its determination as to what further action to take. If a debtor has a job and property, he is more likely to pay the debt and for that reason should be further pressed to pay. This reasoning is circular. A debtor without income and without property would not feel coerced to pay as he has nothing to lose. Indeed, it is only those debtors with jobs and property who Medical Data would seek to mislead.

The Plaintiff argues that Medical Data's claim–that they need the information for their collection purposes–is without merit. Ball admitted that they had not consulted credit reports or property records, nor had they consulted any other records which might have provided the information requested in the first paragraph of the letter in question. That Medical Data had not taken any such action suggests that their claim is a pretext and that their true purpose was to unlawfully coerce payment.

### 2. The § 1692e(5) Claim

Plaintiff also alleges a violation of 15 U.S.C. § 1692e(5), which prohibits a debt collector from threatening to take action which cannot legally be taken. As the letters in question do not, strictly speaking, threaten anything, there is no express violation of this provision. However, the overarching problem here is one of deception and not of express threats to take action. For this reason, the undersigned is of the view that the claims are better considered under e(10) than under e(5). It should also be noted that the Eleventh Circuit does not apply the "least sophisticated consumer" standard to e(10) claims and for this reason, the Plaintiff's burden is somewhat heavier for an e(5) claim than is the case for an e(10) claim.

While the undersigned is of the view that the Plaintiff's claims here are best cast in terms of e(10), the question remains whether the Plaintiff has also made out a claim under e(5). There is case law for the proposition that deceptive language in a collection letter which suggests that such action will be taken may constitute such a violation. Mailloux v. Arrow Financial Services, LLC, 204 F.R.D. 38, 41-42 (E.D.N.Y. 2001) (certifying class status where a collection letter deceptively implied that collection action which could not lawfully be taken would be taken and finding a violation of § 1692e(5)). The facts in Mailloux are similar to the facts here in that the

-9-

letter inquired into the debtor's income, checking account balances, employment, real estate

ownership, and automobile ownership. The court in Mailloux found that letter, which was very

similar to the letters here, to be in violation of e(5). Therefore, the undersigned concludes, in the

alternative, that the evidence establishes a violation of § 1692e(5), as well as a violation of e(10).

### C. Damages

Having found violations of the Fair Debt Collection Practices Act, the Court should next

consider an award of damages. As the Plaintiff does not request actual damages, none are

awarded. See 15 U.S.C. § 1692k(a)(1) (allowing an award of actual damages). In addition, the

Court may award "such additional damages as the court may allow, but not exceeding $1,000."

15 U.S.C. § 1692k(a)(2)(A). Having heard the evidence and having considered the arguments of

counsel, the Court is of the view that an award of damages in the amount of $1,000.00 for each

claim is appropriate, for a total of $2,000.00. In other words, the claim originally held by James

Cambron and the claim originally held by Wendy Cambron are allowed separately. It further

appears that an award of attorney's fees is appropriate. See 15 U.S.C. § 1692k(a)(3).


### III. CONCLUSION

Having considered the evidence, the undersigned finds that the language in question in

the letters, applying the least sophisticated consumer standard, is deceptive within the meaning

of § 1692e(10). The effect of the subject language is to create apprehension that the debtors'

assets and wages are in jeopardy and thereby unlawfully coerce payment of a debt. It is

recommended that judgment be entered in favor of the Plaintiff in the amount of $1,000.00 each

for each of two claims, for a total of $2,000.00 In addition, it is further recommended that

-10-

Plaintiff be awarded attorney's fees.  The undersigned will order Plaintiff's counsel to file an

Affidavit in support of their claim for attorney's fees within 15 days.  Defendant will be given 15

days to respond.

Done this the 5th day of April, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge

**Medical Revenue Services**
P.O. Box 1149
Sebring FL 33871

| Reference | Total Amount Due |
|---|---|
| F9708100109 | $1874.59 |

Toll Free Number
(800) 315-6050

CHECK CARD USING FOR PAYMENT

CARD NUMBER

AMOUNT                    EXP. DATE

SIGNATURE

**RETURN SERVICE REQUESTED**
04/19/2005

med9axA12BP0A107KE·014004
JAMES R CAMBRON
PO BOX 464
DALEVILLE AL 36322-0464

MAKE CHECK PAYABLE AND REMIT TO

**Medical Revenue Services**
PO BOX 1149
SEBRING FL 33871-1149



CHECK HERE IF ADDRESS OR INSURANCE INFORMATION IS
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE

Page 1 of 1
DETACH HERE AND RETURN TOP PORTION WITH YOUR PAYMENT

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:

1.) Real estate ownership/equity
2.) Personal property assets
3.) Savings, checking balances
4.) Your source of income
5.) Automobile ownership
6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to your account, include the reference number with your payment. We also accept "check by telephone" for your convenience. If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb

| Account # | Client Name | Service Date | Balance | Patient Name |
|---|---|---|---|---|
| F9708500163 | Flowers Hospital | 03/26/1997 | 307.68 | Lehr, Timmy J |
| F9708100109 | Flowers Hospital | 03/22/1997 | 1386.55 | Lehr, Timmy J |
| F0307000545 | Flowers Hospital | 03/13/2003 | 58.77 | Cambron, James R |
| F0402500112 | Flowers Hospital | 01/25/2004 | 55.74 | Cambron, James R |
| F0402400129 | Flowers Hospital | 01/24/2004 | 65.85 | Cambron, James R |

TOTAL BALANCE: $1874.59

PLAINTIFF'S
EXHIBIT

4

PL1

**Medical Revenue Services**
P.O. Box 1149
Sebring FL 33871

| Reference | Total Amount Due |
|---|---|
| F0323900637 | $175.00 |

Toll Free Number
(800) 315-8050

**RETURN SERVICE REQUESTED**
05/24/2005



WENDY L CAMBRON
PO BOX 464
DALEVILLE AL 36322-0464



CHECK CARD USING FOR PAYMENT

CARD NUMBER

AMOUNT                          EXP. DATE

SIGNATURE

MAKE CHECK PAYABLE AND REMIT TO

Medical Revenue Services
PO BOX 1149
SEBRING FL 33871-1149

CHECK HERE IF ADDRESS OR INSURANCE INFORMATION IS
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE

Page 1 of 1
DETACH HERE AND RETURN TOP PORTION WITH YOUR PAYMENT

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:

1.) Real estate ownership/equity
2.) Personal property assets
3.) Savings, checking balances
4.) Your source of income
5.) Automobile ownership
6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to your account, include the reference number with your payment. We also accept "check by telephone" for your convenience. If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb



| Account # | Client Name | Service Date | Balance | Patient Name |
|---|---|---|---|---|
| F0323900637 | Flowers Hospital | 08/27/2003 | 175.00 | Cambron, Wendy L |

TOTAL BALANCE: $175.00



PLAINTIFF'S EXHIBIT
B

**EXHIBIT "3"**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

IN RE:                                              )
                                                    )        1:07-cv-00369-WHA
JAMES R. CAMBRON and                                )
WENDY L. CAMBRON                                    )        Case No. 05-11879
                                                    )        Chapter 7
                                                    )
                      Debtors.                      )
----------------------------------------------- )
WILLIAM C. CARN, III,                               )
BANKRUPTCY TRUSTEE,                                 )        Adv. Pro. 06-1057
                                                    )
                      Plaintiff,                    )
                                                    )
            v.                                      )
                                                    )
MEDICAL DATA SYSTEMS, INC.,                         )
                                                    )
                      Defendant.                    )
----------------------------------------------- )

## MEMORANDUM OPINION AND ORDER

### I. PROCEDURAL HISTORY

These causes are before the court on a Report and Recommendation ("R&R") of the

Chief United States Bankruptcy Judge pursuant to 28 U.S.C. § 157(c)(1)(2006):

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is
> otherwise related to a case under title 11. In such proceeding, the bankruptcy judge
> shall submit proposed findings of fact and conclusions of law to the district court,
> and any final order or judgment shall be entered by the district judge after
> considering the bankruptcy judge's proposed findings and conclusions and after
> reviewing de novo those matters to which any party has timely and specifically
> objected.

The bankruptcy judge consolidated and heard two non-core adversary proceedings which were

related to a case under Title 11 pending in his court.  Following an evidentiary hearing, he

entered his Report and Recommendation, with proposed findings of fact and conclusions of law.
Objections were filed by the Defendant.

The court has considered the proposed findings and conclusions and has reviewed de
novo those matters to which the Defendant has timely and specifically objected.  The court finds
no reason to take additional evidence, and has conducted the de novo review upon the record,
including a review of a transcript of the hearing before the bankruptcy judge. FED. R. BANKR. P.
9033(d);

## II. FACTS

On April 19, 2005, Medical Data Systems, Inc., d/b/a Medical Revenue Services
(hereinafter "MDS"), wrote James R. Cambron a letter regarding his medical debt totaling
$1,875.59. (Pl's. Ex. A).  Two of the five debts listed were for services allegedly rendered at
Flowers Hospital in March 1997, more than eight years prior to the date of the letter.  The statute
of limitations for collection of unsecured debt in Alabama is only six years. ALA. CODE § 6-2-34
(1975).  Of the $1,875.59 allegedly owed, over 90% of the total debt was time-barred by the
statute of limitations. On May 24, 2005, MDS sent an almost identical collection letter to Wendy
L. Cambron regarding her medical debt of $175.00 for services allegedly rendered at Flowers
Hospital on August 27, 2003.  (Pl's Ex. B).

Both letters contained the same opening paragraph:

Medical Revenue Service is a collection agency, retained to represent the below
named creditor. Since you have failed to pay this obligation in full, we now must
determine your ability to repay this debt. The information we may be seeking, if
available, to determine what further collection effort to take is:
1.) Real estate ownership/equity          4.) Your source of income
2.) Personal property assets              5.) Automobile ownership
3.) Saving, checking balances             6.) Verification of employment

(Pl.'s Exs. A, B).[1]

The sole issue decided today is whether this language violates the Fair Debt Collection Practices Act ("FDCPA"), which prohibits, *inter alia*, the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e then enumerates an expressly non-exhaustive list of examples, including "[t]he threat to take any action that cannot be legally taken or that is not intended to be taken," § 1692e(5), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." § 1692e(10). Plaintiff contends that the language violates subsections 1692e(5) and e(10), and therefore, as to each debtor, plaintiff seeks statutory damages in the amount of $1,000.00, plus attorney's fees and costs, for each violation. § 1692k.

The Report and Recommendation found that the letters deceptively implied to the "least sophisticated consumer" that "the debtors' assets and wages may be in jeopardy" and therefore they violated § 1692e(10). *R&R* at 7-8. It found as a fact the defendants intended to take no action other than telephone calls to the Cambrons. It further found that the same language suggested action which could not lawfully be taken, which constituted a threat violating § 1692e(5). *Id.* at 9-10 (*citing Mailloux v. Arrow Fin. Servs., LLC*, 204 F.R.D. 38, 41-42 (E.D.N.Y. 2001)).

The Defendant filed timely Objections to the Report and Recommendation, to which the Plaintiff timely responded. FED. R. BANKR. PRO. 9003(b). The Defendant then filed a Reply to the Plaintiff's Response to the Defendant's Objections (hereinafter "Defendant's Reply") at which time the Plaintiff asked for leave to respond to the Defendant's Reply. Rather than strike Defendant's Reply for exceeding the number of filings provided for under Rule 9003(b), the court accepted the

---

[1]The complete letters are attached as an Appendix to this Memorandum Opinion and Order.

3

Defendant's Reply and granted Plaintiff leave to file its second response (hereinafter "Plaintiff's

Surreply"). Defendant's motion for leave to file an additional response to the Plaintiff's Surreply

was denied.

For the reasons stated below, upon an independent evaluation and *de novo* review, the court

finds that the bankruptcy judge's Recommendation is due to be adopted as modified herein.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 157(c)(1), "any final order or judgment shall be entered by the

district judge after considering the bankruptcy judge's proposed findings and conclusions and after

reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C.

§ 157(c)(1); *see also Williford v. Funderburk (In re Williford)*, 22 Fed. Appx. 843, 844 (11th Cir.

Mar. 13, 2007) (per curiam).

## III. DISCUSSION

### A. Legal Background and Applicable Standards

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt

collectors," 15 U.S.C. § 1692(e), noting that "[a]busive debt collection practices contribute to the

number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of

individual privacy." § 1692(a); *see also Jeter v. Credit Bureau, Inc.*, 760 F. 2d 1168, 1173-74

(11th Cir. 1985); *Ferguson v. Credit Management Control, Inc.*, 140 F. Supp. 2d 1293, 1297

(M.D. Fla. 2001). The FDCPA is a strict liability statute. *Ferguson*, 140 F. Supp. 2d at 1297;

*Kaplan v. Assetcare, Inc.* 88 F. Supp. 2d 1355, 1361-62 (S.D. Fla. 2000); *Bentley v. Great Lakes

Collection Bureau*, 6 F.3d 60, 63 (2d Cir. 1993). Further, a single violation of § 1692e is

sufficient to establish civil liability. *See 15 U.S.C. § 1692k(a)*.

4

Plaintiff alleges that the identical language in defendant's debt collection letters violates both 15 U.S.C. § 1692e(5) ("e(5) violation") and 15 U.S.C. § 1692e(10) ("e(10) violation").  As noted earlier, subsection e(5) prohibits "[t]he threat to take any action that cannot legally be taken *or* that is not intended to be taken," whereas subsection e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(5) (emphasis added), 1692e(10) respectively.

In *Jeter*, the Eleventh Circuit adopted the "least sophisticated consumer" standard for determining "deception" under the FDCPA, including e(10) and one of two enumerated e(5) violations. 760 F.2d at 1175.  In other words, courts should make FDCPA determinations in accordance with its purpose, "made [not] for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking and the credulous." *Id.* at 1172-73 (internal citations omitted).  The lens of the "least sophisticated consumer" still "preserve[s] the concept of reasonableness" for an individual who can "possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993).  Nevertheless, the fact that "a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Jeter* at 1173 (internal citations and quotations omitted).

The *Jeter* court carved an exception from the "least sophisticated consumer" standard for the second "unintended action" prong of e(5):

> The . . . issue is simply whether or not [defendant] *intended* to take the action threatened . . . requir[ing] proof of a fact which amounts to a *per se* violation of § 1692e. The sophistication, or lack thereof, of the consumer is [therefore] irrelevant

>       to whether [defendant] 'threat[ened] to take any action . . . that [was] not intended to
>       be taken.'

*Id.* at 1175.

District courts within the Eleventh Circuit have confirmed the application of the "least

sophisticated consumer standard" to the first ("illegal threats") but not second ("unintended

threats") prong of § 1692e(5). *Compare Ferguson,* 140 F. Supp. 2d at 1299 (applying standard to

threats which "could not legally be taken") *with Rivera v. Amalgamated Debt Collection Servs.,*

462 F. Supp. 2d 1223, 1227 (S.D. Fla. 2006) (noting application of standard for e(10) violations

but citing *Jeter* for "unintended action" threats exception). In the Eleventh Circuit, therefore, the

"least sophisticated consumer" standard shall be applied when determining violations of e(10)

and threats of illegal action under e(5), but not threats of unintended action under e(5), because

the existence of the intent to perform the action threatened is a question of fact, and threatening

action with no intent to take it is a *per se* violation.

    One final dispute with respect to standards involves the interrelationship between §

1692e(5) and § 1692e(10). Defendant MDS claims that e(10) is dependent on e(5), such that

finding no illegal or unintended threat under e(5) precludes the possibility of finding deception

under e(10). *See Obj. to R&R* at 3 (*citing Robinson v. Transworld Systems, Inc.,* 876 F. Supp.

385, 393 (N.D.N.Y. 1995) ("We already have ruled that there are no Section 1692e(5) violations

because [defendant] has not threatened action that it did not intend to take. Therefore, these same

statements cannot violate Section 1692e(10) as false representations or deceptive practices.").

The holding of *Robinson,* however, is more limited. The facts and circumstances of *Robinson*

rendered e(10) dependent on e(5) because the court found that the defendant had clearly

threatened both legal and intended action, and the plaintiff's basis for deception under e(10) was

that the same statement threatened action it did not intend to take. *Id.* Because the same action was legal, intended, and indeed clearly threatened, the *Robinson* court was quickly noting in shorthand that there was no possibility of misleading, and thus no need for discussion of e(10). *Id.*

This holding does not, however, render e(10) dependent on e(5) in every situation, and they should be evaluated separately and independently. One could conceivably use "deceptive means to collect or attempt to collect any debt" under e(10) without making any threats under e(5), or any threats whatsoever. That the Eleventh Circuit applies a different standard, discussed *supra*, for e(10) and half of e(5) only bolsters this conclusion. So does the fact that many other cases evaluate the two claims separately and distinctly. *See United States v. Nat'l Financial Services, Inc.* 98 F.3d 131, 135-39 (4th Cir. 1996); *Withers v. Eveland*, 988 F. Supp. 942, 946-47 (E.D.Va. 1997); *Davis v. Commercial Check Control, Inc.*, No. 98 C 631, 1999 WL 89556, at *3-4 (N.D. Ill. 1996); *Raimondi v. McAllister & Associates, Inc.*, 50 F. Supp. 2d 825, 827 (N.D. Ill. Feb. 16, 1999); *Ferguson*, 140 F. Supp. 2d at 1299-1303 (M.D. Fla. 2001). Finally, further evidence of the separate nature of the two claims lies in the FTC commentary, which states that § 1692e(10) is "particularly broad and encompasses virtually every violation, including those not covered by the other subsections." Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50105 (December 13, 1988). Although the two subsections therefore warrant independent analyses under different standards, this court adopts the bankruptcy judge's findings of violations of both e(5) and e(10), as modified herein.

**B. 15 U.S.C. § 1692e(5) violation**

7

MDS argues that its letters did not constitute "threats." The FDCPA does not define a "threat" for purposes of § 1692e(5). The court in *Ferguson* notes its definition as "a communicated intent to inflict harm or loss on another or on another's property . . . [or] an indication of an approaching menace [such as] the threat of bankruptcy." 140 F. Supp. 2d at 1293 n.11 (*quoting* Black's Law Dictionary 1289-90 (7th ed. 1999)). It then lists several examples of communications that courts have found to be "threatening communications" under the statute, including among them (1) threats to sue, (2) threats to garnish wages and/or seize assets, (3) threats to contact the debtor's neighbors and/or employer, and (4) threats to investigate the debtor's employment. *See id.* at 1299-1300 (internal citations omitted).

The bankruptcy judge, while noting that the letters "do not, strictly speaking, threaten anything," correctly noted that "the overarching problem . . . is one of deception and not of *express* threats to take action." *R&R* at 9 (emphasis added). While e(10) may prohibit general deception, e(5) more specifically prohibits threats, express or implied, of illegal or unintended action. In *Nance v. Friedman*, for example, the Northern District of Illinois denied summary judgment for the defendant under e(5), holding that even if the letter correctly indicated that the attorney was authorized to sue, and did not expressly threaten litigation, the letters falsely suggested that litigation was imminent, and that an "unsophisticated consumer – indeed even a sophisticated one – would regard this letter [as an implication] both that the attorney had been authorized to file a lawsuit and as actually threatening imminent litigation." No. 98 C 6720, 2000 WL 1700156, at *2 (N.D. Ill. Nov. 8, 2000); *see also Newman v. Checkrite California, Inc.*, 912 F. Supp. 1354, 1380 (E.D. Cal. 1995) (letter *suggesting* that suit was imminent violated § 1692e(5) because sender was not in position to file suit imminently).

8

The defendant's citation of *Robinson* for the proposition that "[g]enerally the threat to take an action that will not or cannot be taken must be explicit" is both unpersuasive and an overstatement. *Obj. to R&R* at 4. (*citing Robinson*, 876 F. Supp. at 392). *Robinson* quoted a series of letters[2], holding that "[n]one of these statements threatens action that could not be taken legally." *Robinson*, 876 F. Supp. at 392. "Thus, it is necessary to examine whether they threaten action which [defendant] did not intend to take." *Id.* The *Robinson* court distinguished its decision from *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22 (2d Cir. 1989), in that the language in *Pipiles* clearly stated that the item "had been referred for collection action" when the defendant had conceded that legal action was not taken for such small accounts. *Id.* at 392-93. In contrast, the language in the *Robinson* letters did "not contain[] a *clear* threat similar to that found in *Pipiles*" and the *Robinson* defendant testified that they do indeed recommend legal action depending on the individual facts and circumstances of the case. *Id.* at 393 (emphasis added). The *Robinson* court therefore granted summary judgment because the "record [was] entirely devoid of proof that [defendant] threatened to initiate a lawsuit or that it did not intend to commence a lawsuit." *Id.* To read the *Robinson* holding as requiring an "express" threat, as opposed to a clearly implied one, thus misinterprets the circumstances of the case.

The defendant cites *Wade v. Regional Credit Assoc.*, in which the Ninth Circuit held that "[i]f a letter does not contain any threatening language, it is deemed merely informative and therefore, cannot violate § 1692e(5) of the FDCPA." 87 F.3d 1098, 1099 (9th Cir. 1996)(finding no violation)). To read *Wade* as requiring expressly threatening language, however, would create

---

[2]The letters warned of a "PROTRACTED AND UNPLEASANT COLLECTION EFFORT"due to the "PROBLEMS AND POSSIBLE CONSEQUENCES CONNECTED WITH NON-PAYMENT OF A LEGITIMATE DEBT." *Robinson*, 876 F. Supp. at 392.

a mere exercise in circular logic, stating that "if it doesn't threaten, it doesn't violate the prohibition against threatening," and ignores the very real possibility that some threats can be implicit.[3] The language in *Wade* merely noted that "failure to pay could adversely affect [plaintiff's] credit reputation," devoid of any threat to sue, garnish wages, or seize assets. In contrast, MDS's letter implied that it would seek any available information on practically all of debtor's assets to "determine what further collection effort to take," if the debt was not paid. The court therefore interprets *Wade* as allowing for the possibility that contents of a debt collection notice, in context, may impose a threat even when the express language does not.

MDS's reliance on the *Bieber* case is distinguishable. *Bieber v. Assoc. Collection Servs.*, 631 F. Supp. 1410, 1416 (D. Kan. 1986). The plaintiffs in *Bieber* claimed "illegal" threats based on the indication that "defendant had the authority to take legal action." *Id.* The language, however, indicated only that legal action "may be filed against you," and that legal action would be "recommended." *Id.* Legal action was, in fact recommended and the creditor sued; these were not illegal or unintended threats because they truly occurred. *Id.*

Here, MDS held on to the account for four years, and its chief operating and financial officer testified that they intended to do so indefinitely, without ever meaningfully returning the account to creditor Flowers Hospital. (Test. of Gary Ball 12:12-13:11; 22:7-9). During those four years, they never so much as ran a credit report, deeming it unprofitable to do so. (*Id.* at 22:16-20; 24:7-12; 47:15-20). Gary Ball testified that MDS had no intentions of taking legal action against the Cambrons. (*Id.* at 18:2-6; 28:18-29:10; *see also R&R* at 3 (stating that with

---

[3]For instance, if a debtor owed money to one of the more illegal and unsavory types of debt collectors, such as a bookie or mobster, who then sent one of his goons over to tell him, "I sure hope your automobile takes you safely home tonight," the lack of an express threat in such a statement should not prevent the debtor from considering hailing a cab.

respect to the non-time barred debt, "the evidence showed that Medical Data had no intention to take that action."); *id.* ("[MDS's] efforts to collect debts appear to consist of two things. First, it sends a letter and then it follows up with telephone calls." )). Therefore, the letter's implication that assets might be seized, possible only through legally obtaining a judgment lien, was false and misleading, since MDS had no intention of even *investigating* their assets.

MDS insists that its "letter did not contain any threats to commence legal action or that Cambron's account would be referred to an attorney if they did not pay their debts in full, unlike the letters at issue in both *Pipiles* and *National Financial Servs., Inc.*" *Obj.* at 8. This may be true, but it misses the point. MDS's comparison to several cases to show stronger language specifically threatening legal action is of only limited comparative value, since e(5) is not limited to threats of legal action specifically, but more broadly prohibits threats "to take *any* action that . . . is not intended to be taken." § 1692e(5) (emphasis added). If MDS's letter sufficiently suggests that *some* type of action will be taken against plaintiff's assets when there is no intention of taking *any* action, it makes little difference that stronger language specifically implying *legal* action was found not violative in other cases.

Finally, MDS argues that the bankruptcy court erred in relying on *Mailloux v. Arrow Financial Services,, LLC*, 204 F.R.D. 38, 41-42 (E.D.N.Y. 2001), claiming it to be distinguishable and of little merit to the case because the *Mailloux* court had found an e(5) violation in order to satisfy the typicality requirement of class certification. (*Obj.* at 2.) The bankruptcy judge cited *Mailloux* for the proposition that it violates e(5) to imply that certain action would be taken, when such action could not lawfully be taken. This would apply to the first prong of e(5). This court, however, finds it unnecessary to consider whether the first prong was violated by threatening either suit or other action on a debt as to which the statute of

11

limitations had run.  To the extent that the Report and Recommendation would hold that either suit or collection efforts short of suit on a time-barred debt in Alabama would constitute a *per se* violation of the FDCPA, this court does not adopt it, as the court finds a violation of the second prong.

In sum, the language in MDS's debt collection letter implied that, due to plaintiff's failure to "pay this obligation in full," MDS would now begin seeking available information to determine which specific assets to go after.  Contrary to MDS's attempts to paint the language in the following way, it never said: "what further collection effort, *if any*, to take."  Instead, it said that it "*may* be seeking [information], *if available*, to determine what further collection effort to take." *Id.*  The implications of the two phrases are quite different.  Without deciding whether the former phrasing would have violated e(5) or not, it is clear that the latter phrasing, taken from the letter itself, implies that collection is certain, while the type of collection and the particular assets to be surely seized depend on the information available.  This violates § 1692e(5) precisely because MDS suggested that investigation into available sources in order to locate assets would be undertaken, and that collection efforts against assets would be taken, unless the Cambrons paid the debts, when MDS had no intention of doing so.  While the letter may not necessarily refer to the same kinds of legal actions that the cited cases do, it just as strongly implies what the statute plainly prohibits: "the threat to take *any* action . . . that is not intended to be taken." 15 U.S.C. § 1692e(5) (emphasis added).

This court finds from the record that the defendant's letter impliedly threatened to investigate the debtor's employment, contact others to find assets, garnish wages or seize assets, or take further collection efforts other than contacting the debtors, if they did not pay the debts, none of which it had any intention of doing.  Accordingly, this court adopts the bankruptcy

12

judge's Recommendation to find a violation of § 1692e(5), but does so on that basis and not on the basis that the letter threatened to take action that cannot legally be taken.[4] The court makes no finding as to whether the letter threatened to take action that cannot legally be taken, it being unnecessary to do so.

## C. 15 U.S.C. § 1692e(10) violation

Subsection (10) of 15 U.S.C. § 1692e prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10) (2006). MDS claims it did not violate e(10) because it did not threaten legal action. Evaluating the letter independently from any e(5) analysis, as discussed *supra*, this court finds the letter to violate e(10) as well.

As discussed in the e(5) analysis, the letter need not threaten legal action to constitute a threat under e(5); simply threatening an unintended action is sufficient. Similarly, one need not threaten anything to constitute an e(10) violation; mere deception, intentional or unintentional,

---

[4]This finding by the court is consistent with the Federal Trade Commission's "Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act," 53 Fed. Reg. 50097, 50106 (December 13, 1988):

> Section 807(5) prohibits the "threat to take any action . . . that is not intended to be taken."
>
> . . . .
>
> (3). *Statement of possible action.* A debt collector may not . . . imply that he or any third party may take any action unless . . . there is a reasonable likelihood, at the time the statement is made, that such action will be taken. A debt collector may state that certain action is possible, if it is true that such action . . . is frequently taken by the collector or creditor with respect to similar debts; however, if the debt collector has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading.

While not binding, it has been held that the FTC's construction and interpretation of the FDCPA "should be accorded considerable weight." *Hawthorn v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1372 n.2 (11th Cir. 1998) (citing *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 2782-83 (1984)).

"to collect or attempt to collect any debt *or* to obtain information concerning a consumer" is sufficient to constitute a violation. § 1692e(10) (emphasis added). For purposes of argument, the court can assume, even though the letter did not ask the Cambrons to furnish any information about assets, but only asked for payment, that MDS's sole purpose in sending the letters was merely to obtain information about the Cambrons' assets in order to assess their likelihood of voluntary repayment, and consequently whether more phone calls and other non-legal actions were necessary. Their purpose is irrelevant – the language of the letter would still lead "the least sophisticated consumer" to believe that their assets were endangered due to some type of impending collection action. This deception alone constitutes a violation of e(10) under the strict liability of the FDCPA. *See Ferguson* at 1297; *Kaplan* at 1361-62; *Bentley* at 63.

MDS goes to great lengths over several pages to argue that the bankruptcy court failed to properly analyze and apply *Kimber v. Fed'l Financial Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987). *See Obj.* at 12-17. Specifically, MDS argues that the bankruptcy court improperly relied on *Kimber* for the proposition that *any* attempt to collect on time-barred debt was deceptive under the FDCPA. *Id.* It argues that *Kimber* has been clearly limited, in states such as Alabama which interpret statutes of limitation as barring judicial remedies instead of extinguishing debts, to prohibit only legal actions, and not "any and all" collection efforts. Therefore, MDS claims, "it is significant that few courts interpret *Kimber* as the bankruptcy court did in its Proposed Order as barring any and all attempts to collect upon a time-barred debt." *Obj.* at 13.

The bankruptcy court never relied on *Kimber,* but instead cited it as a *see also* cite while discussing the well-supported "least sophisticated consumer standard." *R&R* at 7. Moreover, this court finds *Kimber* to be just as unnecessary to its e(10) determination, if not more so, than

14

*Mailloux* is to its e(5) determination.[5]  To the extent that MDS, or anyone else, should interpret

the bankruptcy judge's Report and Recommendation to hold that any and all attempts to collect a

debt in Alabama which would be barred by the statutes of limitations to be *per se* violations of

the FDCPA, this court does not adopt such an interpretation, it being unnecessary to consider

such issue.

Finally, MDS asserts that "the bankruptcy court expressly acknowledged there was

nothing deceptive or misleading in MDS's letter." *Def's Reply* at 2.  "Therefore," MDS argues,

"the Bankruptcy Court [erroneously] focused on the purpose of MDS's letter, which it

determined was unlawfully to coerce payment of a time-barred debt." *Id.* at 11.  These two

mischaracterizations take the judge's comments out of context.  The bankruptcy judge did state

that "[t]here is nothing in the letters that is demonstrably false." *R&R* at 4; *Def's Reply* at 11.

The judge also stated that "it strains credibility to believe that the true purpose of the language in

question is to obtain accurate information on a debtors' assets and wages," and that "it appears

that the purpose, and surely the effect of these letters is to coerce payment by giving a false

impression that the debtor's wages and assets are in jeopardy." *R&R* at 4.  As the bankruptcy

judge continues to explain, however, "the issue here is whether the letters in question are

deceptive." *Id.* at 7.  Although they may not have been "demonstrably false," the bankruptcy

judge found the letters to be deceptive in their implications to the "least sophisticated consumer,"

and therefore a violation of § 1692e(10).  No more evaluation of MDS's purpose is necessary.

The statute of limitations and the proper extension of *Kimber* have nothing to do with any

---

[5]If this court had found that MDS had violated e(5) by making an "illegal" threat, then the
proper interpretation of *Kimber* with respect to the appropriate pursuit of time-barred debt would
be relevant. Because the court finds that MDS violated e(5) by making an unintended threat,
however, any address of this issue would be dicta.

dispositive issues as far as this court is concerned. The FDCPA is a strict liability statute. If MDS truly intended, as it claims, merely to elicit information from the debtors about their assets in order to decide whether to make more phone calls or mail more letters, it should have been more clear and less deceptive in the way it made this request to the debtor.

## IV. CONCLUSION

As to the specific objections made by the defendant, the court finds as follows:

1. As to defendant's objection to the bankruptcy judge's characterization of the letters as "demanding payment," the objection is due to be overruled. A reasonable recipient of the letter, and certainly the "least sophisticated consumer," would understand the letter to demand payment in order to avoid an investigation into the debtor's assets and employment, and collection efforts which could jeopardize either or both.

2. As to defendant's objection to the bankruptcy judge's factual finding that MDS's letters sought to deceive the Cambrons into believing that their wages and property were in jeopardy, the objection is due to be overruled, for the reasons previously discussed in this opinion.

3. Defendant's objections to the conclusions of the bankruptcy judge are overruled for the reasons previously discussed in this opinion, and as modified by the opinion.

16

## V. **ORDER**

For the reasons discussed, it is hereby ORDERED as follows:

1. The Defendant's Objections to the Report and Recommendation of the bankruptcy judge are OVERRULED.

2. Pursuant to the authority granted to this court by 28 U.S.C. § 157(c)(1), the Report and Recommendation of the Bankruptcy Judge is ADOPTED as Modified by this Opinion, and damages are assessed at $1,000, plus costs and attorney's fees, for the plaintiff in each case. Judgment will be entered accordingly.

Done this 4th day of December, 2007.


/s/ W. Harold Albritton _____
W. HAROLD ALBRITTON, III
SENIOR UNITED STATES DISTRICT JUDGE

17

Dbt f !2;18.dw 1147: .X I B!!!!!Epdvn f ou32.3!!!!!!Gjme!230!6031181!!!Qbhf !29!pg2:

**Medical Revenue Services** –
P.O. Box 1149
Sebring FL 33871

| | |
|---|---|
| Reference | Total Amount Due |
| F9708100109 | $1874.59 |
| Toll Free Number | |
| (800) 315-6050 | |

RETURN SERVICE REQUESTED
04/19/2005

CHECK CARD USERS FOR PAYMENT

CARD NUMBER

AMOUNT                    EXP. DATE

SIGNATURE

asd1exA12PP0A107KE.054004
JAMES R CAMBRON
PO Box 464
DALEVILLE AL 36322-0464

MEASE CHECK PAYABLE AND MAIL TO:

Medical Revenue Services
PO BOX 1149
SEBRING FL 33871-1149



|ılıllılıllıllıllıllıllıllıllıllıl|

CHECK HERE IF ADDRESS OR INSURANCE INFORMATION IS
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE

Page 1 of 1
DETACH HERE AND RETURN TOP PORTION WITH YOUR PAYMENT

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:

    1.) Real estate ownership/equity       4.) Your source of income
    2.) Personal property assets          5.) Automobile ownership
    3.) Savings, checking balances      6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to your account, include the reference number with your payment. We also accept "check by telephone" for your convenience. If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb

| Account # | Client Name | Service Date | Balance | Patient Name |
|---|---|---|---|---|
| F9708500163 | Flowers Hospital | 03/26/1997 | 307.68 | Lehr, Timmy J |
| F9708100109 | Flowers Hospital | 03/22/1997 | 1386.55 | Lehr, Timmy J |
| F0307000645 | Flowers Hospital | 03/13/2003 | 58.77 | Cambron, James R |
| F0402500112 | Flowers Hospital | 01/25/2004 | 55.74 | Cambron, James R |
| F0402400129 | Flowers Hospital | 01/24/2004 | 65.85 | Cambron, James R |

TOTAL BALANCE: $1874.59

PL1

**Medical Revenue Services**
P.O. Box 1149
Sebring FL 33871

Reference
F0323900637

Total Amount Due
$175.00

Toll Free Number
(800) 315-8060

RETURN SERVICE REQUESTED
05/24/2005

CHECK CARD USING FOR PAYMENT



CARD NUMBER

AMOUNT                    EXP. DATE

SIGNATURE

usd9axA136XCA10JJV.007736

WENDY L CAMBRON
PO BOX 464
DALEVILLE AL 36322-0464

MAKE CHECK PAYABLE AND REMIT TO

Medical Revenue Services
PO BOX 1149
SEBRING FL 33871-1149

Page 1 of 1

CHECK HERE IF THE ABOVE INFORMATION IS
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE

DETACH HERE AND RETURN TOP PORTION WITH YOUR PAYMENT

Medical Revenue Service is a collection agency, retained to represent the below named creditor.  Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt.  The information we may be seeking, if available, to determine what further collection effort to take is:

1.) Real estate ownership/equity
2.) Personal property assets
3.) Savings, checking balances
4.) Your source of income
5.) Automobile ownership
6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service.  In order to assure proper credit to your account, include the reference number with your payment.  We also accept "check by telephone" for your convenience.  If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb



| Account # | Client Name | Service Date | Balance | Patient Name |
|-----------|-------------|--------------|---------|--------------|
| F0323900637 | Flowers Hospital | 08/27/2003 | 175.00 | Cambron, Wendy L |

TOTAL BALANCE: $175.00



PL1

**EXHIBIT "4"**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | 1:07-cv-00369-WHA |
| JAMES R. CAMBRON and | ) | |
| WENDY L. CAMBRON | ) | Case No. 05-11879 |
| | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| ------------------------------------------------ ) | | |
| WILLIAM C. CARN, III, | ) | |
| BANKRUPTCY TRUSTEE, | ) | Adv. Pro. 06-1057 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MEDICAL DATA SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ------------------------------------------------ ) | | |

### JUDGMENT

In accordance with the Memorandum Opinion and Order entered this day in these two

cases,

Judgment is hereby entered in favor of the Plaintiff, William C. Carn, III, Bankruptcy

Trustee, and against the Defendant, Medical Data Systems, Inc., in the amount of $1,000 in each

case, or a total of $2,000, together with costs of court and attorney's fees.

DONE this 4th day of December, 2007.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE