IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CYNTHIA F. TONEY, ) | |
| a/k/a CYNTHIA F. PASSMORE, ) | |
| ) | |
| Plaintiff, ) | CASE NUMBER: 2:06-CV-949 |
| ) | |
| vs. ) | |
| ) | |
| MEDICAL DATA SYSTEMS, INC., ) | |
| d/b/a MEDICAL REVENUE SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

The central focus of the Plaintiff's complaint is that the Defendant's PL1 debt collection letter violates the FDCPA. The PL1 letter was attached to the Plaintiff's brief in support of her Motion for Summary Judgment as Exhibit "1." Because the Plaintiff asserts the PL1 letter violates the FDCPA, the analysis begins with a review of the letter. Certainly there is extrinsic evidence in the form of trial and deposition testimony along with documents provided during discovery. Be that as it may, the content of the PL1 letter is the basis for the complaint. The deposition and trial testimony only serves to reinforce the Defendant's FDCPA violations. In addition, the Defendant's collection procedures stand in sharp contrast to the information conveyed in the PL1 letter.

A. <u>Threats may be express or implied.</u>

The Defendant argues that the PL1 letter is non threatening. The Defendant's argument is shortsighted, however, in that it merely seeks to focus on the word "may." Conversely, the overall tone of the letter, at worst, is an implied threat. <u>Pipiles v. Credit Bureau of Lockport, Inc.</u>, 886 F.2d 22, 25-26 (2d Cir. 1989)(Court looked to the overall tone of the letter.) The Plaintiff contends that

the PL1 letter contains several express threats. How else can the Defendant explain the phrase "we now must determine your ability to repay." The Defendant is clear that the action will occur instantaneous and that the action is mandatory. To solidify its direction, the Defendant lists a host of assets subject to further collection effort. The FTC even recognizes that threats may be implied. 53 Fed. Reg. 50104, § 806(1) (implied threats); § 807(2) ¶ 1("A debt collector may not falsely imply that legal action has begun."); § 807(4)(falsely implying that nonpayment will result in . . . the seizure, garnishment, attachment or sale of any property or wages . . . ."); 53 Fed. Reg. 50106, § 807(5) ¶ 3(implied threat of illegal action). Further, Judge Albritton squarely addressed this argument in holding that the Defendant's PL1 letter contained an implied threat. <u>Carn v. Medical Data Sys.</u> (In re Cambron), 2007 U.S. Dist. LEXIS 89615, 12-14 (D. Ala. 2007). In fact, Judge Albritton found the letter as containing an implied threat on its face.

The PL1 letter highlights eight possible outcomes because the Plaintiff "has failed to satisfy this obligation in full. . . ." The first possible outcome is that the Defendant "may" seek information regarding the Plaintiff's real estate ownership. Following closely behind is that the Defendant "may" seek information about the Plaintiff's real estate equity. The third possibility is a threat to search for personal property assets. Fourthly, the Defendant "may" search for the Plaintiff's savings. Fifth, the Defendant "may" inquire about the Plaintiff's checking account balance. Sixth, the Defendant expresses its intent to possibly explore the Plaintiff's source of income. Next, the Defendant "may" explore the Plaintiff's automobile ownership. Finally, the Defendant "may" contact the Plaintiff's employer to verify employment.

B. <u>The "least sophisticated consumer" standard, not the intent of the Defendant's PL1 letter, is controlling under the FDCPA.</u>

The Defendant goes to great pains in attempting to provide this Honorable Court with its explanation of the letter's intent. The Defendant's attempt to rationalize the letter is certainly

plausible for reasonable legal minds. This Honorable Court, however, should not lose sight of the applicable standard the "least sophisticated consumer." Even in giving lip service to the least sophisticated consumer, the Defendant offers several possibilities regarding the Defendant's collection practice saying that "each debt account handled by MDS involves different debt amounts, the use of different collection strategies, and yields different results." Def. Brf. at 3. This single statement sums up the Defendant's total argument. That is that the debt collectors all handle things differently depending on the account. However, it is clear that the first action after sending the letter is to attempt a phone call or a series of phone calls.[1] Def. Brf. at 4. In fact the Defendant goes to great lengths to point out that its collection practices vary "given [the] debtors' particular circumstances and financial situation." Id. The Defendant, however, neglects to consider the plain language of the PL1 letter. There is no variance in the letter's tone. Each consumer recipient is informed that the Defendant "now must determine your ability to repay [the] debt" and the source of that repayment is 1.) Real estate ownership/equity; 2.) Personal property assets; 3.) Savings, checking balances; 4.) Your source of income; 5.) Automobile ownership; 6.) Verification of employment.

C.  <u>A closer examination of the PL1 letter sub-parts reveals the actual falsity and deceptiveness of the letter</u>.

The consumer is advised that he has "[f]ailed to pay this obligation in full[.]" Immediately following, the consumer is informed of immediate mandatory action when the Defendant states that it "now must" conduct some act. The action referred to is "determin[ing] your ability to repay [the] debt." The big question is what action will the Defendant take? The PL1 letter quickly follows by describing the "information [they] may be seeking, if available, to determine its "further collection effort." Then to drive the message home, the Defendant lists the following:

---

[1] "Gary Ball, the COO and CFO of MDS, previously testified that it is MDS' policy and preferred method of debt collection to attempt to seek the information described in its collection letter primarily through telephone contact with the debtor on the account."

"1.) Real estate ownership/equity    4.) Your source of income
2.) Personal property assets          5.) Automobile ownership
3.) Savings, checking balances        6.) Verification of employment"

The Second Circuit Court of Appeals faced with a debt collection dun also looked to the overall language of the debt collection notice. Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 25-26 (2d Cir. 1989)("The clear import of the language, taken as a whole, is that some type of legal action has already been or is about to be initiated and can be averted from running its course only by payment. The only "action" underway was the dispatching of the Notice itself, and the only prospective future "action" for this indebtedness was an attempt at telephone contact.") The same could be said of the PL1 debt collection letter. When taken as a whole, there was clearly an implied threat of some form of action against the Plaintiff's assets. After all, why mention the assets if all that would possibly occur was a telephone call? In fact, the instant case bears a remarkable resemblance to the Pipiles case in so much as the court in Pipiles found that the language when read in total constituted a threat. And in fact, the only action the Defendant in Pipiles intended was the mailing of a dun and future telephone calls. Pipiles 886 F.2d at 25-26.

To be sure, the threat occurs when the Defendant states that it "now must determine your ability to repay . . . ." The benign reference to the information the Defendant "may" seek is obscured on both the front end phrase "we now must determine your ability to repay" and the back end listing of assets to satisfy the repayment. The Defendant, however, does not consider the PL1 letter in total. Instead, the Defendant isolates one phrase, "may," and then attempts to draw this Court's attention to its telephone collection tactics where it merely intends to procure a repayment plan. The PL1 letter, however, stands is stark contrast to the Defendant's alleged intent. In fact, the PL1 letter and the Defendant's intent to telephone the Plaintiff can be viewed as a Dr. Jekyll and Mr. Hyde.

In reality, the Defendant's intent is irrelevant for purposes of this summary judgment motion. The Defendant argues that "the issue of intent is one of fact, to be resolved by weighing the conflicting evidence (citations omitted)." Def. Brf. at 15. In a case directly on point, a district court held that intent was not an essential element for causes of action under 15 U.S.C. §§ 1692e; e(5) or e(10). Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1362 (S.D. Fla. 2000)(The strict liability view of the Act is supported by a closer examination of the FDCPA itself. Nowhere in the language of the statute on which this cause of action is based -- §§ 1692e, . . . 1692e(5), 1692e(10), . . . -- is there any mention of an element of knowledge or intent.") The Kaplan Court went on to apply the very basic rule of statutory construction citing the Supreme Court's rationale and holding "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion of exclusion." Id. at 362 (citing Gozlon-Peretz v. United States, 498 U.S. 395, 404, 111 S. Ct. 840, 846-47, 112 L. Ed. 2d 919 (1991) (quoting Russello v. United States, 464 U.S. 16, 23, 104 S. Ct. 296, 300-01, 78 L. Ed. 2d 17 (1983)) (internal quotation marks omitted).

The FDCPA requires this Honorable Court look to the content of the letter. The PL1 letter states a current mandatory purpose, which is to perform some action. The letter is false because, in reality, there is no urgency. The Defendant has no immediate mandatory obligation to search for assets. As the evidence shows, with no dispute of material fact, the Defendant's future intent, not present responsibility, is to attempt to reach the recipient by telephone. As the Defendant pointed out in the Cambron/Carn case, the Defendant had Mr. Cambron's account for five (5) years and never even reached Mr. Cambron on the telephone. As such, the Defendant never, not once, made an inquiry into Cambron's assets. Indeed, the content of the letter is contrary to the Defendant's intent. Furthermore, the Defendant's intent is irrelevant.

The PL1 letter is much more than an implied threat, however, in that every conceivable asset a Plaintiff may own is accounted for. Real estate ownership/equity covers not only the homestead but also encompasses heir property or investment property. After all, the Plaintiff is warned that the Defendant will inquire about the Plaintiff's equity. To go one step further, personal property is also subject to the Defendant's search. The Plaintiff's bank accounts are equally subject to the Defendant's inquiry. What about the Plaintiff who is on Social Security or only receives a pension. That too is subject to the Defendant's search. Why? Because it is mentioned separate and apart from the Defendant's employment verification. Even the Plaintiff's mode of transportation is subject to the Defendant's probe. Potentially, no asset is sacred. To make the threat even more real, there is no mention of the exemptions available under Alabama law. The Defendant says it "now must" determine your ability to repay. The Plaintiff, because she "has refused to repay this obligation in full" must now suffer the consequences of "failing to repay." Those consequences constitute a threat to every conceivable asset the Plaintiff may own.

D.  <u>A plain language reading shows that the Defendant's PL1 letter violates both prongs of § 1692e(5)</u>.

At this point, the Defendant runs afoul of the FDCPA on two additional fronts. Under the first alternative prong of § 1692e(5), the PL1 letter threatens illegal action. Under asset headings 2.) Personal property assets; 3) Savings, checking balances; 4.) Source of income; and 6.) Verification of employment, the Defendant threatens illegal third party contact. Under the "least sophisticated consumer" standard, the Plaintiff is presented with this laundry list of assets of which the Defendant intends to inquire. Nowhere does the PL1 letter state the Defendant's intent to discuss these assets with the debtor by telephone. As such, the "least sophisticated consumer" could reasonably believe that the Defendant intends to make third party contact to determine the Plaintiff's ownership in such assets. The conduct is illegal because 15 U.S.C. § 1692c(b) only allows third party contact in the limited context of obtaining location information. At best, a

reasonable reading of the PL1 letter could lead to the conclusion that third party contacts were imminent or at least possible. To be sure, even if the Defendant inquired into every asset, it may still run afoul of the FDCPA because such contacts would be illegal. Nonetheless, the Defendant is liable on this prong merely by threatening such third party contacts.

Under the second alternative prong, because the Defendant does not initially search for assets, the defendant's business model is flawed thereby rendering the PL1 letter in violation of the act. To be sure, the recipient of the PL1 letter is first advised of its failure to pay the debt in full. Next, the Defendant tells the consumer that it "now must determine your ability to repay this debt." Finally the consumer is warned of "further collection effort[s] the Defendant intends to immediately take. To the contrary, the Defendant's debt collector is assigned the account and is instructed to attempt telephone communication with a potential debtor. If and only if the debt collector makes telephone contact with a recipient will the debt collector possibly discuss a repayment plan, taking into account the debtor's house payment and car payment. Then, if a debt collector reaches a debtor and the debtor is obstinate or the debt collector believes the debtor is untruthful, a small portion of the debt collectors might call the county tax office to determine real property ownership. The Defendant's PL1 debt collection letter therefore contains an implied threat of asset investigation which the Defendant does not intend to undertake. That is, the Defendant does not search every asset noted on its PL1 debt collection letter and, in reality, only rarely makes a limited inquiry about deferring house payments or car payments. As it pertains to savings and checking balances, the Defendant is only concerned whether a debtor can make an electronic check payment over the telephone. At no time does the Defendant verify employment other than for the sole purpose of speaking with a debtor. For these reasons, the PL1 letter contains an implied threat of unintended action.

E.  <u>In addition to violating § 1692e(5), the Defendant's PL1 debt collection letter also violates the FDCPA in other ways.</u>

The Defendant's attempt at explaining its business model and collection techniques only serves to buttress the Plaintiff's claims. No collector is trained to search for all of the listed assets. Indeed, short of voluntary consumer disclosure, there are multiple assets the Defendant simply could not discover short of further violating the law. As the FTC states under the heading *'Debt collector's statement of his own definite action*[:] "[a] debt collector may not state that he will take any action unless he intends to take the action when the statement is made, or ordinarily takes the action in similar circumstances." 53 Fed. Reg. 50106. There can be no doubt that the PL1 letter contains a statement of the Defendant's "own definite action" when the PL1 letter plainly states "we now must determine your ability to repay this debt." The phrase "now must" contains not only a definite action but also an immediate action.

According the FTC commentary, the Defendant's statement is false because, as the Defendant's representative testified, and as stated in its brief, the "preferred method of debt collection" is by telephoning the consumer. Def's Brf. at 5; <u>see also</u> [Cambron/Carn, Trial Tr. 18:23-24] ("[a]ll of our business is done on the phone, not by letters, for all intents and purposes."); [Trial Tr. 19:2-3] ("[t]he vast, vast majority of the money that we collect is money that we collect by talking to the guarantor."); [Trial Tr. 28:21-23, 29:5-6.] ( "we would continue making phone calls, . . . we will continue to make phone calls. . . we are just going to keep on trying to call them.") To clarify, Plaintiff's counsel asked the Defendant's representative: "Your further collection efforts, from what you're testifying to, simply means more calls, more letters?" The Defendant's representative responded: "[y]es unless something extenuating was to happen, yeah." [Trial Tr. 29:7-9.] Again, the letter mentions nothing about phone calls or "more phone calls." To the contrary, assets are listed along with employment verification.

In the PL1 letter, the Defendant announces its intent by stating "we now must determine your ability to repay." "Now" denotes a present intent with no delay. "Must" denotes a mandatory requirement to proceed. The Defendant after stating that it "now must" do something advises the recipient that there will be no delay because it is mandatory that it "determine your ability to repay" the debt. The PL1 letter then goes on to specify how it plans to immediately determine the ability of the Plaintiff to repay and that is through some sort of asset investigation. There is no mention of a telephone call. Indeed, the Plaintiff is advised that the process of asset investigation is both imminent and mandatory.

In yet another admission of liability, the Defendant states "[w]hat MDS collectors do with respect to their individual attempts to collect on one debt account often is entirely inappropriate and/or ineffective with respect to another debt account, given that debtor's particular circumstances and financial situation." Def. Brf. at 4. The PL1 letter is completely void of alternative collection techniques based on the individual collector. The Defendant "now must determine [the debtor's] ability to repay." When is the Defendant going to do this? Now. Why? Because it must. As if this is not enough, the Defendant lists a host of assets at its disposal "to determine what further collection effort to take." If the Defendant's collectors truly mirrored the Defendant's explanation for the PL1 letter, the collectors would not first seek payment of the debt, the collector would first determine whether a consumer recipient had the ability to repay. The explanation presents an absurd result. The Defendant is a debt collector. By definition, it collects debts. It is not in the business of determining whether a consumer can afford to pay. The Defendant wants its money.

The Defendant's brief in opposition to the summary judgment even bolsters the Plaintiff's assertions in her complaint. The Defendant points out that the letter advises the Plaintiff that she can dispute the debt. Such assertion points out the futility of the Defendant's argument. The letter is misleading based solely on this point alone. That is, threat of asset investigation contradicts the Plaintiff's dispute rights. On one hand the Plaintiff is informed that the Defendant must now

determine your ability to repay and on the other hand, two paragraphs later, the Defendant advises the Plaintiff that she has thirty days to dispute the debt. Such argument merely emphasizes the confusing nature of the letter. The Defendant evidences its intent to investigate assets yet still allows the Plaintiff to dispute the debt. This begs the question of whether such dispute will stop the asset search?

The Defendant raises an interesting point. At first the Defendant denies that the letter creates sense of imminent action. Def. Brf. at p. 2. Then the Defendant relies on its mandatory § 1692g(a) notice as "negat[ing] any sense of imminency of any further action against Plaintiff." What the Defendant doesn't mention is that it is also a violation of the FDCPA to overshadow or contradict the validation notice as required by 15 U.S.C. § 1692g. Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996)("A notice is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights."); Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991)("the [validation] notice must not be overshadowed or contradicted by accompanying messages from the debt collector."). Even taking the Defendant's argument to its natural conclusion, the Defendant is aware that its PL1 phraseology regarding assets might create urgency or imminency, but that it is negated by the validation notice. Unfortunately for the Defendant, the contradiction or overshadowing also violates 15 U.S.C. § 1692e(10). Swanson v. Mid Am, Inc., 1999 U.S. Dist. LEXIS 14302 (M.D. Fla. 1999)("It appears, however, that a notice that is "reasonably susceptible to an inaccurate reading" is also deceptive under e(10) (citations omitted)). In Swanson the Plaintiff alleged that the Defendant's debt collection validation overshadowed or contradicted the other information in the debt collection letter. The Plaintiff sought redress under 15 U.S.C. §§ 1692e(10) & (g). In finding a violation of § 1692g, the court also granted summary judgment in favor of the Plaintiff under § 1692e.

F.  <u>The inclusion of the word "may" in the Defendant's PL1 letter does not afford the Defendant no shelter from FDCPA liability.</u>

The use of the word "may" is not sufficient to relieve the Defendant of liability. Prior to stating what it "may" do, the Defendant states "we now must determine your ability to repay this debt." In reality, the primary collection tactic, outside of mailing the PL1 letter, was to reach the Plaintiff on the telephone. If the Defendant never reached the Plaintiff by telephone, the only further action would be more letters. The PL1 letter, however, stands is sharp contrast. Based on the letter, there can be no doubt that the Defendant must do something immediately. The PL1 letter says so. There is no wiggle room in the statement "we now must determine your ability to repay this debt." The fact that the Defendant "may" search for some or all of the assets is of little consequence. The letter is both a threat to take an unintended action and a deceptive collection tactic. The Defendant only intends to call or write more letters. Only in the case of the obstinate debtor will the Defendant possibly call the county and ask about home ownership or refer the case to legal. This possibility, however, is only contingent upon reaching the Plaintiff by phone and then only if the Plaintiff fails to establish a repayment plan. Again, the reality is completely opposite to the threats in the PL1 letter.

The Defendant asks this Court literally interpret the PL1 letter as not containing a threat. Even if this Court engages in a literal reading of the PL1 letter, the Defendant's PL1 still violates the FDCPA because the letter is false on its face. A literal reading of the letter leads one to believe that the first thing the debt collector does is to determine whether the consumer has the ability repay the debt. The Defendant states "we now must determine your ability to repay this debt." It is illogical to conclude that the Defendant is so much concerned about the consumer's ability to repay. If that were the case, the collectors would be trained to ask whether the consumer could pay and if not, then move on to another delinquent account. To the contrary, the collectors are trained to seek "payment in full (PIF)." The Defendant's collection manual, portions of which are

attached hereto as Exhibit "1," provides a clear picture of the initial contact between the Defendant a potential consumer. Under the procedure identified as "The Medical Data Systems, Inc. Collection Process," after identifying the consumer and the caller, the debt collector is instructed to "request payment in full." See Ex. 1, ¶ 3. Indeed, even in the script, otherwise known as a "talk off," the debt collector is shown to request payment in full. Exhibit "2," "Opening Talk Off." To be sure, there is nothing per se illegal about collecting delinquent accounts. But, the genesis of this lawsuit is that the PL1 letter violates the FDCPA. The Defendant's own manual provides evidence that the collectors do not first determine the consumer's ability to repay. As such, if there were a literal reading of the PL1 letter, the Defendant violates the FDCPA because the letter is false.

**CONCLUSION**

For the reasons set forth above, as well as those set out in the Plaintiff's previous Brief in Support of its Motion For Summary Judgment, the Defendant's PL1 form debt collection letter violates 15 U.S.C. §§ 1692e; e(4); e(5) and (10) by using false, misleading, and deceptive means in its attempt to collect the debt.

WHEREFORE, the Plaintiff respectfully requests that she be granted summary judgment on liability.

Respectfully submitted this **12th** day of February, 2008.

BROCK & STOUT

David G. Poston, Esq.
Walter A. Blakeney, Esq.
Michael D. Brock, Esq.
Gary W. Stout, Esq.
Post Office Drawer 311167
Enterprise, Alabama 36330
334-671-5555
334-671-2689 Facsimile
Email: christal@circlecitylaw.com

**CERTIFICATE OF SERVICE**

    I, the undersigned hereby certify that I have this date served a copy of the foregoing upon James C. Huckaby, Jr., Esq., J. Kirkman Garrett, Esq., John G. Parker, Esq., and Stefanie Jackman, Esq., via electronic mail at jch@hsdpc.com, jkgarrett@csattorneys.com, johnparker@paulhastings.com, and stefaniejackman@paulhastings.com, this **12th** day of February, 2008.

                                                     David G. Poston, Esq.

**EXHIBIT "1"**

# The Medical Data Systems, Inc. Collection Process

The telephone is key to success, and following these steps will enable you to be the best you can be on each and every call.

1. **Identify the debtor.** *(Verify you are speaking to the debtor.)*

2. **Identify yourself** *(This is the time for the Mini Miranda)*

3. **Request payment in full**

4. **Psychological pause** *(He who speaks first has lost control of the conversation)*

5. **Determine problem** *(Why PIF cannot be made.)*

6. **Find a solution** *(What other sources of money are available, relatives, etc.. Payment arrangements as a last resort.)*

7. **Close the deal.** *(Get mode of payment, date of payment, verify our mailing address if debtor refuses check by phone/credit card payment option, repeat the arrangement just made.)*

8. **Update the debtor's file** *(Make sure we have a good address, phone number, alternate phone number, and POE info.)*

## *To insure adherence*:

- 120 minimum outgoing calls per day.

- 10 to 30 incoming calls per day.

- Daily review of the telephone log to check time on the phone, gaps in calls, and to monitor collector activity.

- $2000.00 per week in checks by phone or credit card payments.

- Limited usage of director assistance as well as personal calls.

- Log payments made to agency for each team and each team member.

- Regular meetings with Team Leader to monitor progress with performance reports.

Rev. 05-25-06 • rh

**EXHIBIT "2"**

## Opening Talk Off

| | |
|---|---|
| *Debbie Debtor:* | *Hello* |
| Collector: | Hello, can I speak to Debbie |
| *Debbie Debtor:* | *This is Debbie.* |
| Collector: | Ms. Debtor, my name is *******, with Medical Data Systems. I am calling on behalf of (name of hospital) For security purposes and to make sure that I have reached the correct Debbie Debtor, is the last four digits of your SS# XXXX? (or you can use the birth date) |
| *Debbie Debtor:* | *Yes, that is correct.* |
| Collector: | Ms. Debtor, (name of hospital) has placed with us an outstanding balance of $$$$$$$, and that balance is due in full today. This is an attempt to collect a debt, and any information obtained will be used for that purpose. Before we discuss payment, I need to update the hospitals records. What is your correct address, what is your home phone number, what is your work phone number? (update information as you go) Thank you. Now, as I stated, the balance of $$$$$$$$$ is due in full today, will you be paying that with a check or credit card |
| *Debbie Debtor:* | *I don't have that amount of money right now.* |
| Collector: | Ms. Debtor, the hospital was there when you needed them, now it's your turn to do the right thing and pay what you owe. Where do you think you can get the money? |
| | Do you have a checking account, and what is the balance in the account? |
| | Do you have a credit card you could put this on, and what is the available credit on the card? |
| | Do you have any outstanding loans that you could refinance? |
| | Do you have a savings account, and what is the balance in the account? |
| | Do you have a Christmas club account, and what is the balance in the account? |
| | Do you have family that could help you? |
| | Does your employer offer employee loans? |

Depending on what the debtor says will determine what the next step is. If the debtor is cooperative and needs some time to explore PIF options, then attempt to get a Good Faith Payment that is good now, while they try to get the balance in full

**If at this time you believe that the debtor does not have the balance in full, you can begin to negotiate.**

| | |
|---|---|
| Collector: | Ms Debtor, how short are you from having the balance in full? |
| *Debbie Debtor (option 1)* | *I only have half (get the half).* |
| Collector: | How much time do you need to pay the balance? (make the necessary arrangements to finish up the balance) |
| *Debbie Debtor: (option 2)* | *I'm short all of it.* |
| Collector: | How much time do you need to pay the balance in full? |